IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

---

MICHAEL FEHRENBACHER, individually, and
on behalf of all others similarly situated,

Plaintiff,

-against-

XYBERNAUT CORPORATION, EDWARD G.
NEWMAN, STEVEN A. NEWMAN, M.D., AND
THOMAS D. DAVIS,

Defendants.

Civil Action No.  05-256-SLR

---

[Additional Captions on the following pages]

**AFFIDAVIT OF ROBERT R. DAVIS IN SUPPORT OF SUPPORT OF
THE MOTION OF THE FEHRENBACHER SHAREHOLDER GROUP FOR
CONSOLIDATION OF ALL RELATED ACTIONS, APPOINTMENT OF LEAD
COUNSEL, AND APPROVAL OF PROPOSED LEAD PLAINTIFFS' SELECTION OF
LEAD COUNSEL**

ROBERT H. AYLOR, JR., On Behalf Of          :
Himself and All Others Similarly Situated,   :
                                             :          C.A. No. 05-222-SLR
                              Plaintiff,      :
                                             :
                                             :
                -against-                     :
                                             :
                                             :
XYBERNAUT CORPORATION, EDWARD G.             :
NEWMAN, STEVEN A. NEWMAN, M.D., and          :
THOMAS D. DAIVS                              :
                              Defendants.     :

MOSHE TAL, Individually and On Behalf Of     :
All Others Similarly Situated,               :
                                             :          C.A. No. 05-242-SLR
                              Plaintiff,      :
                                             :
                -against-                     :
                                             :
                                             :
XYBERNAUT CORPORATION, EDWARD G.             :
NEWMAN, STEVEN A. NEWMAN, M.D., and          :
THOMAS D. DAVIS,                             :
                                             :
                              Defendants.     :

JEFFREY M. JASKOL AND STACEY J.                :
JASKOL, Individually and On Behalf Of All      :
Others Similarly Situated,                     :
                                               :        C.A. No. 05-268-SLR
                              Plaintiff,        :
                                               :
                    -against-                  :
                                               :
                                               :
XYBERNAUT CORPORATION, EDWARD G.               :
NEWMAN, STEVEN A. NEWMAN, M.D.,                :
THOMAS D. DAVIS, BRUCE C. HAYDEN and           :
GRANT THORNTON, LLP,                           :
                              Defendants.       :


JOSEPH DANIEL WAUHOP, On Behalf Of             :
Himself and All Others Similarly Situated,     :
                                               :        C.A. No. 05-310-SLR
                              Plaintiff,        :
                                               :
                    -against-                  :
                                               :
                                               :
XYBERNAUT CORPORATION, EDWARD G.               :
NEWMAN, STEVEN A. NEWMAN, M.D.,                :
THOMAS D. DAVIS, JOHN F. MOYNAHAN and          :
GRANT THORNTON, LLP,                           :
                              Defendants.       :

CHRISTINA W. DONNELLY, JOHN                   :
DONNELLY, JAMES G. WILLIAMSON and             :
RICHARD W. DEARBORN, Individually and On      :
Behalf Of All Others Similarly Situated,      :
                                              :          C.A. No. 05-334-JJF
                        Plaintiff,            :
                                              :
            -against-                         :
                                              :
                                              :
XYBERNAUT CORPORATION, EDWARD G.              :
NEWMAN, STEVEN A. NEWMAN, M.D.,               :
THOMAS D. DAVIS, BRUCE C. HAYDEN and          :
GRANT THORNTON, LLP,                          :
                        Defendants.           :

CHARLES W. SMITH, Individually and On         :
Behalf Of All Others Similarly Situated,      :
                                              :          C.A. No. 05-354-SLR
                        Plaintiff,            :
                                              :
            -against-                         :
                                              :
                                              :
XYBERNAUT CORPORATION, EDWARD G.              :
NEWMAN, STEVEN A. NEWMAN, M.D.,               :
THOMAS D. DAVIS, BRUCE C. HAYDEN and          :
GRANT THORNTON, LLP,                          :
                        Defendants.           :

I, Robert R. Davis, hereby declare as follows:

1.    I am counsel for Michael Fehrenbacher, Anandamoy Sahoo, Hamed Hashem Alsabbagh, Ghaith Hashem Alsabbagh, and Rabab Hamed Naji ("Movants" herein) in the above captioned matter.

2.    Movants seek appointment as Lead Plaintiffs pursuant to Section 21D of the Securities Exchange Act of 1934 (the "Exchange Act") in the above-captioned action (the "Action").

3.    I submit this Affidavit, together with the attached exhibits, in support of the Motion of Movants to, inter alia, appoint them to serve as Lead Plaintiff on behalf of the class in the Action and to approve their choice Chimicles & Tikellis LLP and Sarraf Gentile LLP as Lead Counsel. I am fully familiar with the facts set forth herein.

4.    Attached hereto as the exhibits indicated are true and correct copies of the following:

Exhibit A:    April 15, 2005 Notice

Exhibit B:    Certifications of Michael Fehrenbacher, Anandamoy Sahoo, Hamed Hashem Alsabbagh, Ghaith Hashem Alsabbagh, and Rabab Hamed Naji

Exhibit C:    Charts of Losses for Movants

Exhibit D:    Charts of Closing Value for Xybernaut Stock with Average Closing Price

Exhibit E:    Chimicles & Tikellis LLP Firm Resume

Exhibit F:    Sarraf Gentile LLP Firm Resume

I declare under penalty of perjury under the laws of the United States that the foregoing facts are true and correct. Executed this 14th day of June, 2005, at Wilmington, Delaware.



SWORN TO AND SUBSCRIBED before me this 14th day of June , 2005.

_Catherine H. Emmett_

CATHERINE H. EMMETT
NOTARY PUBLIC
STATE OF DELAWARE
My Commission Expires Jan. 26, 2007

# Exhibit A

Yahoo!  My Yahoo!  Mail

**YAHOO!** FINANCE  Sign In
New User? Sign Up

Search the Web [          ]  Search

Finance Home - Help

PR Newswire

Welcome [Sign In]                                    To track stocks & more, Register

## Financial News

Enter symbol(s) [          ] | Basic | ▼ | Get |  Symbol Lookup

Press Release                                    Source: Shepherd, Finkelman, Miller & Shah, LLC

# Shepherd, Finkelman, Miller & Shah, LLC Files Class Action Lawsuit Against Xybernaut Corporation -- XYBRE

Friday April 15, 12:23 pm ET

HARTFORD, Conn., April 15 /PRNewswire-FirstCall/ -- Shepherd, Finkelman, Miller & Shah, LLC ( http://www.classactioncounsel.com; e-mail: jmiller@classactioncounsel.com ), a law firm with offices in Connecticut, Pennsylvania, New Jersey and Florida, announces that it has filed a lawsuit seeking class action status in the United States District Court for the District of Delaware on behalf of all persons (the "Class") who purchased the securities of Xybernaut Corporation (Nasdaq: XYBR - News; "Xybernaut" or the "Company") during the period March 27, 2003 and April 8, 2005 (the "Class Period"). A copy of the Complaint may be obtained from the Court, or you can call our offices toll free at either 866/540-5505 or 877/891-9880 to speak with an attorney regarding this matter and we will send you a copy of the Complaint.

The Complaint charges Xybernaut, Edward G. Newman, Steven A. Newman, M.D., and Thomas D. Davis with violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. More specifically, the Complaint alleges that the Company omitted or misrepresented material facts about its financial condition, business prospects, revenue expectations and internal controls during the Class Period.

On March 14, 2005, Xybernaut announced that it was seeking an extension of time within which to file its annual report with the Securities and Exchange Commission ("SEC"). On March 31, 2005, after the close of trading, Xybernaut belatedly revealed that it was in dire financial and regulatory straits. The Company issued a press release that day, which stated, in part: "Xybernaut Corporation (Nasdaq: XYBR - News) announced today that the filing of its Form 10-K and other related reports for the year ended December 31, 2004, anticipated to occur today, will be further delayed, pending completion of an internal investigation undertaken by its Audit Committee." The press release stated that independent counsel had been engaged to assist in an internal investigation of, "among other things, concerns brought to the Audit Committee's attention relating to the internal control environment of the Company, the propriety of certain expenditures and the documentation of certain expenses of the Chairman and CEO of the Company, the Company's transparency and public disclosure process, the accuracy of certain public disclosures, management's conduct in response to the investigation, and the propriety of certain major transactions." The press release further stated that the Company had received a subpoena from the Northeast Regional Office of the SEC seeking "documents and other information relating to the sale of Company securities by any person identified as a selling shareholder in any Company registration statement or other public filing."

On this news, the Company's share price, which at one time had traded as high as $2.23 per share due to the Company's positive press releases and false and misleading representations during the Class Period, closed at $0.42 per share on March 31, 2005, and then dropped further by almost fifty percent (50%), to close at $0.24 per share on April 1, 2005.

On April 8, 2005, after the close of trading, Xybernaut announced in a press release that "investors and others should refrain from relying upon the Company's historical financial statements... for the years ended December 31, 2002 and 2003, and interim quarterly reports for the quarters ended March 31, 2003, June 30, 2003, September 30, 2003, March 31, 2004, June 30, 2004 and September 30, 2004." On the heels of this shocking news, trading was again heavy and the Company's price per share fell to $0.13 per share.

If you purchased Xybernaut securities between March 27, 2003 and April 8, 2005 (inclusive), you may qualify to serve as lead plaintiff on behalf of the Class. All motions for appointment as lead plaintiff must be filed with the Court

no later than June 14, 2005. Any member of the proposed Class may move the Court to serve as lead plaintiff in this action through counsel of his or her choice, or may remain an absent class member. There are certain legal requirements to serve as lead plaintiff, which we would be pleased to discuss with you. Please contact James E. Miller, Esquire (866/540-5505; jmiller@classactioncounsel.com ), or James C. Shah, Esquire (877/891-9880; jshah@classactioncounsel.com ), if you would like to discuss this action or have any question regarding this notice or your rights.

Shepherd, Finkelman, Miller & Shah, LLC ( http://www.classactioncounsel.com ) is a national law firm that represents investors, including institutions and individuals, as well as consumers, in class action and other complex litigation, and maintains offices in Connecticut, Florida, New Jersey and Pennsylvania. The firm's attorneys have appeared in matters on behalf of our clients throughout the United States and have been appointed lead counsel in a number of class actions and corporate governance matters.

---

Source: Shepherd, Finkelman, Miller & Shah, LLC

---

Copyright © 2005 Yahoo! Inc. All rights reserved. Privacy Policy - Terms of Service - Copyright Policy - Ad Feedback
Copyright © 2005 PR Newswire. All rights reserved. Republication or redistribution of PRNewswire content is expressly prohibited without the prior written consent of PRNewswire. PRNewswire shall not be liable for any errors or delays in the content, or for any actions taken in reliance thereon.

# Exhibit B

## CERTIFICATION OF NAMED PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, Michael Fehrenbacher, declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed the Complaint and authorized its filing.

2.    I did not purchase any securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    I am willing to serve as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in the securities of Xybernaut Corporation during the Class Period are as described in the attached schedule.

5.    During the three years prior to the date of this Certification, I have never served, nor sought to serve, as a class representative in any action under the federal securities laws.

6.    I will not accept any payment for serving as a representative party on behalf of the class beyond any pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 28th day of April, 2005, at Batavia, Illinois.

Mike Fehrenbacher
**Midwest Funding Bancorp**
11 E. Wilson Street
Batavia, IL 60510
630-406-0205

_____          _____
Signature                                          Print Name

## SCHEDULE OF TRANSACTIONS

| No. of Shares | Stock Symbol | Buy/Sell | Date | Price Per Share |
|---|---|---|---|---|
| 2,000 | XYBRE | Buy | 01/26/2004 | $1.95 |
| 100 | XYBRE | Buy | 01/26/2004 | $1.95 |
| 17,900 | XYBRE | Buy | 01/26/2004 | $1.96 |
| 2,000 | XYBRE | Buy | 01/27/2004 | $1.93 |
| 5,000 | XYBRE | Buy | 01/27/2004 | $1.33 |
| 2,000 | XYBRE | Buy | 01/29/2004 | $1.77 |
| 5,800 | XYBRE | Buy | 01/29/2004 | $1.77 |
| 1,800 | XYBRE | Buy | 02/02/2004 | $1.79 |
| 2,000 | XYBRE | Buy | 03/02/2004 | $1.74 |
| 3,200 | XYBRE | Buy | 03/02/2004 | $1.74 |
| 2,000 | XYBRE | Buy | 03/18/2004 | $1.42 |
| 100 | XYBRE | Buy | 03/18/2004 | $1.42 |
| 1,760 | XYBRE | Buy | 04/05/2004 | $1.16 |
| 500 | XYBRE | Buy | 06/28/2004 | $1.70 |
| 2,000 | XYBRE | Buy | 06/28/2004 | $1.66 |
| 300 | XYBRE | Buy | 06/28/2004 | $1.66 |
| 2,000 | XYBRE | Buy | 07/13/2004 | $1.52 |
| 2,000 | XYBRE | Buy | 07/13/2004 | $1.51 |
| 1,390 | XYBRE | Buy | 07/19/2004 | $1.41 |
| 400 | XYBRE | Buy | 07/20/2004 | $1.44 |
| 2,000 | XYBRE | Buy | 07/20/2004 | $1.44 |
| 200 | XYBRE | Buy | 07/20/2004 | $1.44 |
| 2,000 | XYBRE | Buy | 08/02/2004 | $1.32 |
| 2,500 | XYBRE | Buy | 08/02/2004 | $1.32 |
| 150 | XYBRE | Buy | 08/02/2004 | $1.32 |
| 160 | XYBRE | Buy | 08/02/2004 | $1.32 |
| 2,000 | XYBRE | Buy | 08/03/2004 | $1.33 |
| 1,100 | XYBRE | Buy | 08/03/2004 | $1.33 |
| 2,000 | XYBRE | Buy | 10/04/2004 | $1.12 |
| 1,500 | XYBRE | Buy | 10/04/2005 | $1.12 |
| 2,000 | XYBRE | Buy | 02/24/2005 | $0.88 |
| 1,410 | XYBRE | Buy | 02/24/2005 | $0.88 |
| 2,000 | XYBRE | Buy | 03/21/2005 | $0.61 |
| 3,000 | XYBRE | Buy | 03/21/2005 | $0.61 |
| 5,000 | XYBRE | Buy | 04/14/2005 | $0.30 |
| 6,000 | XYBRE | Buy | 04/14/2005 | $0.30 |
| 800 | XYBRE | BUY | 5-6/28/2005 @ 1.66 | |

78,070

Plaintiff's Signature

Michael Fallerto Carty
Print Name

4/28/2005

## CERTIFICATION OF PLAINTIFF PURSUANT TO FEDERAL SECURITIES LAWS

I, ANANDAMOY SAHOO make this declaration pursuant to Section 21D(a)(2) of the Securities Exchange Act of 1934.

1.    I seek to serve as plaintiff in the foregoing complaint (the "Complaint").

2.    I have reviewed the Complaint and authorize its filing.

3.    I did not purchase stock in Xybernaut Corporation ("Xybernaut" or the "Company") at the direction of my counsel in order to participate in any private action arising under Title I of the Securities Exchange Act of 1934.

4.    I am willing to serve as a lead plaintiff either individually or as a group. A lead plaintiff is a representative party who acts on behalf of other class members in directing the action, and whose duties may include testifying at deposition and trial, if necessary.

5.    During the three year period preceding the date of my signing this Certification, I have not served nor sought to serve as a representative party on behalf of a class, except (if any):

6.    My transactions in Xybernaut stock are as follows:

| Trade Date | No. of Shares | Price Per Share | Buy or Sell |
|------------|---------------|-----------------|-------------|
| 11/05/2003 | 3900 | 2.349 | Buy |
| 11/05/2003 | 11100 | 2.35 | Buy |
| 09/19/2003 | 1300 | 2.17 | Buy |
| 03/02/2004 | 800 | 1.68 | Buy |
| 03/09/2004 | 4200 | 1.68 | Buy |

Please attach additional pages if necessary.

7.    I will not accept any payment for serving as a representative party on behalf of the class beyond the pro rata share of any possible recovery, plus reasonable costs and expenses (including lost wages) directly relating to the representation of the class, as approved by the Court.

I declare under penalty of perjury this _26_ day of April 2005; that the foregoing is true and correct.

_____
Signature

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, *Hamed Hashem Alsabbagh* declare, as to the claims asserted under the federal securities laws, that:

1.    I have reviewed the complaint prepared against Xybernaut Corporation alleging violations of federal securities law and have authorized the filing of a Motion for Lead Plaintiff on my behalf.

2.    I did not purchase any securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3.    I am willing to serve as a Lead Plaintiff in the matter and as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4.    My transactions in the securities of Xybernaut Corporation during the Class Period are as follows:

| NO. OF SHARES/ TYPE OF SECURITY (common stock, call option, etc.) | BUY/SELL | DATE | PRICE PER SHARE/UNIT |
|---|---|---|---|
| 5,000 | Buy | 1-Oct-2003 | 1.880 |
| 10,000 | Buy | 16-Dec-2003 | 1.553 |
| 10,000 | Buy | 19-9-2003 | 2.1 |
| | | | |
| | | | |
| | | | |

(List additional transactions, if any, on separate sheet and attach)

5.    During the three years prior to the date of this Certification, I have never served, nor sought to serve, as a Lead Plaintiff or class representative in any action under the federal securities

laws. [if proposed lead plaintiff has served or sought to be appointed as Lead Plaintiff, replace with

the following language, as appropriate:

- During the three years prior to the date of this Certification, I have served as a lead plaintiff or class representative in the following actions brought under the federal securities laws:

- I have sought to serve as lead plaintiff in the following actions filed under the federal securities law during the three years preceding the date of this Certification. However, I was not appointed lead plaintiff in these cases (other investors with larger losses were) and I no longer have any involvement in them:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. I withdrew my motion for appointment of lead plaintiff in this case as another investor with larger losses sought appointment:

- I filed a complaint in the following action filed under the federal securities law during the three years preceding the date of this Certification. I did not seek to be appointed lead plaintiff in this case:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. The appointment of lead plaintiff is currently pending in this action:]

6.    I will not accept any payment for serving as a Lead Plaintiff or representative party on behalf of the class beyond any pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9_ day of _June_, 2005, at ___Doha, Qatar___ (city, state).


_Hamed Hasham ALsabbagh_
[NAME OF PLAINTIFF]

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, _Ghaith Hashem Alsabhagh_, declare, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint prepared against Xybernaut Corporation alleging violations of federal securities law and have authorized the filing of a Motion for Lead Plaintiff on my behalf.

2. I did not purchase any securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. I am willing to serve as a Lead Plaintiff in the matter and as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transactions in the securities of Xybernaut Corporation during the Class Period are as follows:

| NO. OF SHARES/ TYPE OF SECURITY (common stock, call option, etc.) | BUY/SELL | DATE | PRICE PER SHARE/UNIT |
|---|---|---|---|
| 10,000 | Buy | 16-Mar-2004 | 1.36 |
| 6,000 | Buy | 25-Jun-2004 | 1.58 |
| 10,000 | Buy | 4-Feb-2004 | 1.06 |
| 20,000 | Buy | 19-Nov-2003 | 1.978 |
|  |  |  |  |
|  |  |  |  |

(List additional transactions, if any, on separate sheet and attach)

5. During the three years prior to the date of this Certification, I have never served, nor sought to serve, as a Lead Plaintiff or class representative in any action under the federal securities

laws. [if proposed lead plaintiff has served or sought to be appointed as Lead Plaintiff, replace with the following language, as appropriate:

- During the three years prior to the date of this Certification, I have served as a lead plaintiff or class representative in the following actions brought under the federal securities laws:

- I have sought to serve as lead plaintiff in the following actions filed under the federal securities law during the three years preceding the date of this Certification. However, I was not appointed lead plaintiff in these cases (other investors with larger losses were) and I no longer have any involvement in them:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. I withdrew my motion for appointment of lead plaintiff in this case as another investor with larger losses sought appointment:

- I filed a complaint in the following action filed under the federal securities law during the three years preceding the date of this Certification. I did not seek to be appointed lead plaintiff in this case:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. The appointment of lead plaintiff is currently pending in this action:]

6.    I will not accept any payment for serving as a Lead Plaintiff or representative party on behalf of the class beyond any pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this _9_ day of _June_, 2005, at _Doha, Qatar_ (city, state).


Ghaith Hashem AlSabbagh
[NAME OF PLAINTIFF]

## CERTIFICATION OF PLAINTIFF
## PURSUANT TO FEDERAL SECURITIES LAWS

I, __Rabab Hamied Naji__, declare, as to the claims asserted under the federal securities laws, that:

1. I have reviewed the complaint prepared against Xybernaut Corporation alleging violations of federal securities law and have authorized the filing of a Motion for Lead Plaintiff on my behalf.

2. I did not purchase any securities that are the subject of this action at the direction of Plaintiff's counsel or in order to participate in any private action.

3. I am willing to serve as a Lead Plaintiff in the matter and as a representative party on behalf of the class, including providing testimony at deposition and trial, if necessary.

4. My transactions in the securities of Xybernaut Corporation during the Class Period are as follows:

| NO. OF SHARES/ TYPE OF SECURITY (common stock, call option, etc.) | BUY/SELL | DATE | PRICE PER SHARE/UNIT |
|---|---|---|---|
| 15,000 | Buy | 23-Sep-2003 | 2.196 |
| 15,000 | Buy | 23-Sep-2003 | 2.18 |
| 15,000 | Buy | 19-Sep-2003 | 1.54 |
| 5,000 | Buy | 24-Sep-2003 | 2.15 |
| 15,000 | Buy | 2-Mar-2004 | 1.7 |
| | | | |

(List additional transactions, if any, on separate sheet and attach)

5. During the three years prior to the date of this Certification, I have never served, nor sought to serve, as a Lead Plaintiff or class representative in any action under the federal securities

laws. [*if proposed lead plaintiff has served or sought to be appointed as Lead Plaintiff, replace with the following language, as appropriate:*

- During the three years prior to the date of this Certification, I have served as a lead plaintiff or class representative in the following actions brought under the federal securities laws:

- I have sought to serve as lead plaintiff in the following actions filed under the federal securities law during the three years preceding the date of this Certification. However, I was not appointed lead plaintiff in these cases (other investors with larger losses were) and I no longer have any involvement in them:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. I withdrew my motion for appointment of lead plaintiff in this case as another investor with larger losses sought appointment:

- I filed a complaint in the following action filed under the federal securities law during the three years preceding the date of this Certification. I did not seek to be appointed lead plaintiff in this case:

- I sought to serve as lead plaintiff in the following action filed under the federal securities law during the three years preceding the date of this Certification. The appointment of lead plaintiff is currently pending in this action]

6.   I will not accept any payment for serving as a Lead Plaintiff or representative party on behalf of the class beyond my pro rata share of any recovery, except such reasonable costs and expenses (including lost wages) directly relating to the representation of the class as ordered or approved by the Court.

I declare under penalty of perjury that the foregoing is true and correct.

Executed this 9 day of June, 2005, at ___Doha , Qatar___ (city, state).


_Rabab  Hameed  Naji_
[NAME OF PLAINTIFF]

# Exhibit C

**Movants Loss**
**Schedule I**

(March 27, 2003 to April 19, 2005 Class)

Base Value: 0.13

**Fehrenbacher**

| Date | Shares | Price | Share Value | | |
|---|---|---|---|---|---|
| 1/26/2004 | 2,000 | $1.95 | $3,900.00 | total shares: | 88,070 |
| 1/26/2004 | 100 | $1.95 | $195.00 | total value: | $122,291.50 |
| 1/26/2005 | 17,900 | $1.96 | $35,084.00 | base price | 11449.1 |
| 1/27/2004 | 2,000 | $1.93 | $3,860.00 | **total loss** | **$110,842.40** |
| 1/27/2004 | 5,000 | $1.33 | $6,650.00 | | |
| 1/29/2004 | 2,000 | $1.77 | $3,540.00 | | |
| 1/29/2004 | 5,800 | $1.77 | $10,266.00 | | |
| 2/2/2004 | 1,800 | $1.79 | $3,222.00 | | |
| 3/2/2004 | 2,000 | $1.74 | $3,480.00 | | |
| 3/2/2004 | 3,200 | $1.74 | $5,568.00 | | |
| 3/18/2004 | 2,000 | $1.42 | $2,840.00 | | |
| 3/18/2004 | 100 | $1.42 | $142.00 | | |
| 4/5/2004 | 1,760 | $1.16 | $2,041.60 | | |
| 6/28/2004 | 800 | $1.66 | $1,328.00 | | |
| 6/28/2004 | 500 | $1.70 | $850.00 | | |
| 6/28/2004 | 2,000 | $1.66 | $3,320.00 | | |
| 6/28/2004 | 300 | $1.66 | $498.00 | | |
| 7/13/2004 | 2,000 | $1.52 | $3,040.00 | | |
| 7/13/2004 | 2,000 | $1.51 | $3,020.00 | | |
| 7/19/2004 | 1,390 | $1.41 | $1,959.90 | | |
| 7/20/2004 | 400 | $1.44 | $576.00 | | |
| 7/20/2004 | 2,000 | $1.44 | $2,880.00 | | |
| 7/20/2004 | 200 | $1.44 | $288.00 | | |
| 8/2/2004 | 2,000 | $1.32 | $2,640.00 | | |
| 8/2/2004 | 2,500 | $1.32 | $3,300.00 | | |

| Date | Shares | Price | Share Value |
|---|---|---|---|
| 8/2/2004 | 150 | $1.32 | $198.00 |
| 8/2/2004 | 160 | $1.32 | $211.20 |
| 8/3/2004 | 2,000 | $1.33 | $2,660.00 |
| 8/3/2004 | 1,100 | $1.33 | $1,463.00 |
| 10/4/2004 | 2,000 | $1.12 | $2,240.00 |
| 10/4/2004 | 1,500 | $1.12 | $1,680.00 |
| 2/24/2005 | 2,000 | $0.88 | $1,760.00 |
| 2/24/2005 | 1,410 | $0.88 | $1,240.80 |
| 3/21/2005 | 2,000 | $0.61 | $1,220.00 |
| 3/21/2005 | 3,000 | $0.61 | $1,830.00 |
| 4/14/2005 | 5,000 | $0.30 | $1,500.00 |
| 4/14/2005 | 6,000 | $0.30 | $1,800.00 |

## Sahoo

| Date | Shares | Price | Share Value | | |
|---|---|---|---|---|---|
| 11/5/2003 | 3900 | 2.349 | $9,161.10 | total shares: | 21300 |
| 11/5/2005 | 11,100 | 2.35 | $26,085.00 | total value: | $46,467.10 |
| 9/19/2003 | 1300 | 2.17 | $2,821.00 | base price | 2769 |
| 3/2/2004 | 800 | 1.68 | $1,344.00 | total loss | **$43,698.10** |
| 3/9/2004 | 4200 | 1.68 | $7,056.00 | | |

## Hamed Hashem Alsabbagh

| Date | Shares | Price | Share Value | | |
|---|---|---|---|---|---|
| 10/1/2003 | 5,000 | 1.88 | $9,400.00 | total shares: | 25000 |
| 12/16/2003 | 10,000 | 1.553 | $15,530.00 | total value: | $45,930.00 |
| 9/19/2003 | 10,000 | 2.1 | $21,000.00 | base price | 3250 |
| | | | | total loss | **$42,680.00** |

## Ghaith Hashem Alsabbagh

| Date | Shares | Price | Share Value | | |
|---|---|---|---|---|---|
| 3/16/2004 | 10,000 | 1.36 | $13,600.00 | total shares: | 46,000 |
| 6/25/2004 | 6,000 | 1.58 | $9,480.00 | total value: | $73,240.00 |

| 2/4/2005 | 10,000 | 1.06 | $10,600.00 | base price | 5980 |
| 11/19/2003 | 20,000 | 1.978 | $39,560.00 | total loss | $67,260.00 |

## Rabab Hamed Naji

| 9/23/2003 | 15,000 | 2.196 | $32,940.00 | total shares: | 65,000 |
| 9/23/2003 | 15,000 | 2.18 | $32,700.00 | total value: | $124,990.00 |
| 9/19/2003 | 15,000 | 1.54 | $23,100.00 | base price | 8450 |
| 9/24/2003 | 5,000 | 2.15 | $10,750.00 | total loss | $116,540.00 |
| 3/2/2004 | 15,000 | 1.7 | $25,500.00 | | |

## Alsabbagh Family

| sum loss | $226,480.00 |
| sum shares | 136,000 |
| sum investment | $244,160.00 |

## Summary

| | Shares Purchased | Total Invested | Loss |
| --- | --- | --- | --- |
| Fehrenbacher | 88,070 | $122,291.50 | $110,842.40 |
| Sahoo | 21300 | $46,467.10 | $43,698.10 |
| Alsabbagh Family | 136000 | $244,160.00 | $226,480.00 |
| Total | 245,370 | $412,918.60 | $381,020.50 |

**Movants Loss**
**Schedule II**

(May 10, 2002 to April 8, 2005 Class)

General Base Value: 0.14

Fehrenbacher Base Value: 0.19

**Fehrenbacher**

| Date | Shares | Price | Share Value | | |
|---|---|---|---|---|---|
| 1/26/2004 | 2,000 | $1.95 | $3,900.00 | total shares: | 77,070 |
| 1/26/2004 | 100 | $1.95 | $195.00 | total value: | $118,991.50 |
| 1/26/2005 | 17,900 | $1.96 | $35,084.00 | base price | 14643.3 |
| 1/27/2004 | 2,000 | $1.93 | $3,860.00 | total loss | $104,348.20 |
| 1/27/2004 | 5,000 | $1.33 | $6,650.00 | | |
| 1/29/2004 | 2,000 | $1.77 | $3,540.00 | | |
| 1/29/2004 | 5,800 | $1.77 | $10,266.00 | | |
| 2/2/2004 | 1,800 | $1.79 | $3,222.00 | | |
| 3/2/2004 | 2,000 | $1.74 | $3,480.00 | | |
| 3/2/2004 | 3,200 | $1.74 | $5,568.00 | | |
| 3/18/2004 | 2,000 | $1.42 | $2,840.00 | | |
| 3/18/2004 | 100 | $1.42 | $142.00 | | |
| 4/5/2004 | 1,760 | $1.16 | $2,041.60 | | |
| 6/28/2004 | 800 | $1.66 | $1,328.00 | | |
| 6/28/2004 | 500 | $1.70 | $850.00 | | |
| 6/28/2004 | 2,000 | $1.66 | $3,320.00 | | |
| 6/28/2004 | 300 | $1.66 | $498.00 | | |
| 7/13/2004 | 2,000 | $1.52 | $3,040.00 | | |
| 7/13/2004 | 2,000 | $1.51 | $3,020.00 | | |
| 7/19/2004 | 1,390 | $1.41 | $1,959.90 | | |
| 7/20/2004 | 400 | $1.44 | $576.00 | | |
| 7/20/2004 | 2,000 | $1.44 | $2,880.00 | | |
| 7/20/2004 | 200 | $1.44 | $288.00 | | |
| 8/2/2004 | 2,000 | $1.32 | $2,640.00 | | |
| 8/2/2004 | 2,500 | $1.32 | $3,300.00 | | |

|  |  |  |  |  |  |  |
|---|---|---|---|---|---|---|
| 8/2/2004 | 150 | $1.32 | $198.00 |  |  |  |
| 8/2/2004 | 160 | $1.32 | $211.20 |  |  |  |
| 8/3/2004 | 2,000 | $1.33 | $2,660.00 |  |  |  |
| 8/3/2004 | 1,100 | $1.33 | $1,463.00 |  |  |  |
| 10/4/2004 | 2,000 | $1.12 | $2,240.00 |  |  |  |
| 10/4/2004 | 1,500 | $1.12 | $1,680.00 |  |  |  |
| 2/24/2005 | 2,000 | $0.88 | $1,760.00 |  |  |  |
| 2/24/2005 | 1,410 | $0.88 | $1,240.80 |  |  |  |
| 3/21/2005 | 2,000 | $0.61 | $1,220.00 |  |  |  |
| 3/21/2005 | 3,000 | $0.61 | $1,830.00 |  |  |  |
| 4/14/2005 |  |  |  | 21300 | total shares: |  |
| 4/14/2005 |  |  |  | $46,467.10 | total value: |  |
|  |  |  |  | 2982 | base price |  |
|  |  |  |  | **$43,485.10** | **total loss** |  |

## Sahoo

| Date | Shares | Price | Share Value |  |  |
|---|---|---|---|---|---|
| 11/5/2003 | 3900 | 2.349 | $9,161.10 | total shares: | 25000 |
| 11/5/2005 | 11,100 | 2.35 | $26,085.00 | total value: | $45,930.00 |
| 9/19/2003 | 1300 | 2.17 | $2,821.00 | base price | 3500 |
| 3/2/2004 | 800 | 1.68 | $1,344.00 | **total loss** | **$42,430.00** |
| 3/9/2004 | 4200 | 1.68 | $7,056.00 |  |  |

## Hamed Hashem Alsabbagh

| Date | Shares | Price | Share Value |  |  |
|---|---|---|---|---|---|
| 10/1/2003 | 5,000 | 1.88 | $9,400.00 | total shares: | 46,000 |
| 12/16/2003 | 10,000 | 1.553 | $15,530.00 | total value: | $73,240.00 |
| 9/19/2003 | 10,000 | 2.1 | $21,000.00 |  |  |

## Ghaith Hashem Alsabbagh

| Date | Shares | Price | Share Value |  |
|---|---|---|---|---|
| 3/16/2004 | 10,000 | 1.36 | $13,600.00 | total shares: |
| 6/25/2004 | 6,000 | 1.58 | $9,480.00 | total value: |

| | | | | |
|---|---|---|---|---|
| 2/4/2005 | 10,000 | 1.06 | $10,600.00 base price | 6440 |
| 11/19/2003 | 20,000 | 1.978 | $39,560.00 **total loss** | **$66,800.00** |

## Rabab Hamed Naji

| | | | | |
|---|---|---|---|---|
| 9/23/2003 | 15,000 | 2.196 | $32,940.00 total shares: | 65,000 |
| 9/23/2003 | 15,000 | 2.18 | $32,700.00 total value: | $124,990.00 |
| 9/19/2003 | 15,000 | 1.54 | $23,100.00 base price | 9100 |
| 9/24/2003 | 5,000 | 2.15 | $10,750.00 **total loss** | **$115,890.00** |
| 3/2/2004 | 15,000 | 1.7 | $25,500.00 | |

## Alsabbagh Family

| | |
|---|---|
| sum loss | $225,120.00 |
| sum shares | 136,000 |
| sum investment | $244,160.00 |

## Summary

| | Shares Purchased | Total Invested | Loss |
|---|---|---|---|
| Fehrenbacher | 77,070 | $118,991.50 | $104,348.20 |
| Sahoo | 21300 | $46,467.10 | $43,485.10 |
| Alsabbagh Family | 136000 | $244,160.00 | $225,120.00 |
| **Total** | **234,370** | **$409,618.60** | **$372,953.30** |

# Exhibit D



XYBR US $   C .05 -.005 V  .049/.053  50x50                    Equity GP
As of Jun13 DELAYED Vol 1,505,878 Op .052 V  Hi .053 V  Lo .049 V
                         Trade Line  XYBR US Equity              1/2
Range     4/19/05 - 6/13/05        Period  D Daily      Base Currency:  USD
Upper Chart: 3 Trade Line          Moving Averages
Lower Chart: N No additional graph(s) Moving Average          1) News

Comp/Close/Trade/USD
Last         0.05
High 04/20/05  0.27
Average      0.12516
Low 06/13/05  0.05

22        02        09        10        23        01        08
2005 Apr              2005 May                    2005 Jun

Australia 61 2 9777 8600    Brazil 5511 3048 4500    Europe 44 20 7330 7500    Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                                    G778-376-0 13-Jun-05 20:50:53

Bloomberg

XYBR US $    C .O5 -.005 V .049/.053  50x50                    Equity GP
As of Jun13 DELAYED Vol 1,505,878 Op .052 V  Hi .053 V  Lo .049 V
                    Trade Line  XYBR US Equity                  1/3
Range      4/ 8/05 - 6/13/05      Period D Daily    Base Currency:  USD
Upper Chart: 9 Trade Line              Moving Averages
Lower Chart: N No additional graph(s) Moving Average          1) News



Australia 61 2 9777 8600      Brazil 5511 3048 4500      Europe 44 20 7330 7500      Germany 49 69 920410
Hong Kong 852 2977 6000 Japan 81 3 3201 8900 Singapore 65 6212 1000 U.S. 1 212 318 2000 Copyright 2005 Bloomberg L.P.
                                                                        G778-376-0 13-Jun-05 20:50:43

Bloomberg



# Exhibit E

# *CHIMICLES & TIKELLIS LLP*

**CHIMICLES & TIKELLIS LLP** has law offices in Haverford, PA and Wilmington, DE. and concentrates in the area of complex litigation, with an emphasis on securities, antitrust, consumer, ERISA and environmental litigation. As a group, the Partners in Chimicles & Tikellis have significant substantive experience in the prosecution of class action and derivative litigation in state and federal trial and appellate courts across the country, including the United States Supreme Court and the highest courts of more than 20 states. The Firm is comprised of six Partners, three Of Counsel and eleven Associates. The Firm also works closely with a number of experts and consultants in the financial, forensic accounting and investigative fields.   The Firm's e-mail is MAIL@CHIMICLES.COM and its website is WWW.CHIMICLES.COM

**NICHOLAS E. CHIMICLES** is senior partner and Chairman of the Firm's Executive Committee. Mr. Chimicles is a 1970 graduate of the University of Pennsylvania, where he received a Bachelor of Arts Degree with Honors.   Mr. Chimicles graduated in 1973 from the University of Virginia School of Law, where he was a member of the Editorial Board of the University of Virginia Law Review and was the author of several published comments.  While attending law school, he co-authored a course and study guide entitled "Student's Course Outline on Securities Regulation," published by the University of Virginia School of Law.  Upon graduation from law school, Mr. Chimicles joined a major Philadelphia law firm where he practiced for eight years and specialized in litigation including complex commercial, antitrust and securities fraud cases and served as principal or assistant trial counsel in United States v. Pfizer, Inc., (Antibiotics Antitrust Litigation), Civil Action No. 78-1155 (E.D. Pa.); Penn Galvanizing Co. v. Lukens Steel Co., Civil Action No. 71-1777 (E.D. Pa.); Wolgin v. State Mutual Investors, 265 Pa. Super. 525, 402 A.2d 669 (1979); Beta Consultants & Administrators v. Centennial Life Ins. Co., unreported opinion by Judge Newcomer (E.D. Pa. 1980); and R. & M. Musselman, Inc., et al. v. Line Lexington Lumber & Millwork, Inc., C.A. 727458-02-1 (Bucks Co. 1981).

As a name partner in his own firm since 1981, Mr. Chimicles has actively prosecuted major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Most recently, Mr. Chimicles was lead trial counsel for a Class of investors in a six-week jury trial of a securities fraud/breach of fiduciary duty case that resulted in a $185 million verdict. In re Real Estate Associates Limited Partnerships Litigation, No. CV 98-7035 DDP, was tried in the federal district court in Los

Angeles before the Honorable Dean D. Pregerson. On November 15, 2002, the 10 member jury, after hearing testimony from more than 25 witnesses and viewing in excess of 500 exhibits, returned an unanimous verdict in favor of the Class (comprising investors in the eight REAL Partnerships) and against the REALs' managing general partner, National Partnership Investments Company ("NAPICO") and the four individual officers and directors of NAPICO. The jury awarded more than $25 million in damages against all five defendants on Count I, the Section 14(a), 1934 Act, proxy fraud claim and more than $67 million in damages against NAPICO on Count II for breach of fiduciary duty. On November 19, 2002, the jury returned a verdict of $92.5 million in punitive damages against NAPICO. This total verdict of $185 million was among the "Top 10" Verdicts of 2002, as reported by the National Law Journal (verdictsearch.com), and stands as the largest jury verdict in favor of plaintiffs in a case brought under the federal securities laws since their amendment in 1995. Mr. Chimicles was assisted at trial by associate Kimberly Donaldson. Other Firm professional staff members who provided invaluable assistance to the result in this landmark decision were Kathleen P. Chimicles, the Firm's financial specialist, who worked with and assisted plaintiffs' expert witnesses and consultants; and associates Candice L.H. Hegedus and M. Katherine Meermans. Following post-trial motions, the Court upheld in all respects the jury's verdict on liability as to both Count I and Count II, upheld in full the jury's award of $92.5 million in compensatory damages, upheld the Class's entitlement to punitive damages (but reduced those damages to $2.6 million based on the application of California law to NAPICO's financial condition), and awarded an additional $25 million in prejudgment interest. Based on the Court's decisions on the post-trial motions, the judgment entered in favor of the Class on April 28, 2003 totaled over $120 million, approximately $90 million on Count II and $30 million on Count I. The Real Estate Associates judgment was settled by an agreement approved by the Court in November 2003, providing for the payment of a total of $83 million, of which $48 million was paid immediately and the balance of $35 million will be paid in 5 equal annual installments of $7 million per year between 2004 and 2008.

In other federal securities fraud cases, he served as a Lead Counsel in the Hercules Securities Litigation, Civil Action No. 90-442 (RRM) (D. Del.) ($18 million recovery); Scott Paper Securities Litigation, Civil Action No. 90-6192 (E.D. Pa.) ($8 million recovery); Sunrise Savings & Loan Securities Litigation, MDL No. 655 (E.D. Pa.) ($15 million recovery); Storage Technology Corp. Securities Litigation, Master File No. 84-F-1981 (D. Colo.) ($18 million recovery); In re: Fiddler's Woods Bondholders Litigation, Civil Action No. 83-2340 (E.D. Pa.), a bondholders' class action arising out of a default on a $33 million industrial development bond issue (recovery of more than $7 million for the class); and Charter Securities Liti-

gation, Civil Action No. 84-448 Civ-J-12 (M.D. Fla.) (recovery of $7.75 million). He served as a Lead Counsel for the shareholder class in the <u>Continental Illinois Securities Litigation</u>, Civil Action No. 82 C 4712 (N.D. Ill.), one aspect of which involved a twenty-week jury trial conducted by Mr. Chimicles that concluded in July, 1987 (the class ultimately recovered nearly $40 million).

By virtue of the <u>Fiddler's Woods</u> litigation (in which Mr. Chimicles also represented the court-appointed Receiver), his representation of the Bondholders' Protection Committee for the Baptist Estates Life Care Facility (Doylestown, PA), a $15 million tax-exempt bond issue which defaulted, and his representation of bondholders in other litigation in Atlanta, Orlando and New Jersey arising from defaulted bond issues aggregating over $135 million, Mr. Chimicles established a national reputation for representing the interests of bondholders in default situations.

In another specialized area of securities litigation, involving the recovery of losses incurred by purchasers and holders of units in public limited partnerships, Mr. Chimicles has been a principal counsel in several major litigations that have resulted in precedent-breaking recoveries for class members, in addition to the <u>Real Estate Associates Limited Partnership Litigation</u>, discussed above, Mr. Chimicles was a member of the Executive Committee in the <u>Prudential Limited Partnerships Litigation</u>, MDL 1005 (S.D.N.Y.), where the class recovered $130 million in settlement from Prudential and other defendants in a settlement approved by Judge Milton Pollack in November 1995. Mr. Chimicles is lead counsel in the <u>PaineWebber Limited Partnerships Litigation</u>, 94 Civ. 8547 (S.D.N.Y.) in which a $200 million settlement was approved in mid-1997. Distributions to class members in the <u>PaineWebber</u> case were made in 1998 and supplemental distributions under the settlement will be made in 2003. As co-lead counsel in several litigations involving ML-Lee Acquisition Fund, L.P., ML-Lee Acquisition Fund II, L.P. and ML-Lee Acquisition Fund (Retirement Accounts) II, L.P. (C.A. No. 92-60, 93-494, 94-422 and 95-724) that were prosecuted in the Delaware Federal District Court, Mr. Chimicles (together with partner Pamela Tikellis and financial specialist Kathleen Chimicles) negotiated settlements that resulted in more than $30 million in cash and other benefits to be paid or made available to investors in the various funds. Those settlements were approved by the district court in July 1998. In litigation involving PLM Equipment Growth and Income Funds IV-VII, Mr. Chimicles (together with financial specialist Kathleen Chimicles) was instrumental in negotiating a settlement reached in 2001 that provides both monetary ($6.6 million) and equitable (extension of the partnerships' lives) relief for the limited partners. In February 2002, the Superior Court of Marin County, California, approved the settlement of a case in which Mr. Chimicles was co-lead counsel, involving five public partnerships spon-

sored by Phoenix Leasing Incorporated and its affiliates. (In Re Phoenix Leasing Incorporated Limited Partnership Litigation, Superior Court of the State of California, County of Marin, Case No. 173739). The settlement resulted in the payment of more than $21 million in cash (part of which is to be collected from assets of the defunct insurer, Reliance Insurance Company) in settlement of breach of fiduciary duty claims.

Mr. Chimicles has represented limited partners who successfully have sought and secured the liquidation of their partnerships' assets or the reorganization of the partnership. For example, in In re the Mendik Real Estate Limited Partnership, N.Y. Supreme Ct. No. 97-600185, Mr. Chimicles, as co-lead counsel, negotiated a settlement which provided for the prompt sale of more than $100 million of the partnership's real estate assets. The settlement was approved in late 1998 and the limited partners have received their liquidation proceeds. As co-lead counsel, Mr. Chimicles, together with partner Pamela Tikellis, negotiated the settlement, approved by the Delaware Chancery Court in May 2000, of a suit filed against the general partners of Aetna Real Estate Associates, L.P., providing for the orderly liquidation of the more than $200 million in that partnership's real estate holdings, the reduction of general partner fees and the payment of a special cash distribution to the limited partners. (Aetna Real Estate Associates, L.P., Area GP Corporation and Aetna/Area Corporation, Delaware Chancery Court, New Castle County, Civil Action Nos. 15386-NC and 15393-NC).

Mr. Chimicles has also represented stockholders in numerous suits brought in courts across the country arising from proposed mergers, acquisitions and hostile takeovers. For example, in Garlands, Inc. Profit Sharing Plan et al. v. The Pillsbury Company, a Delaware corporation, et al, State of Minnesota, County of Hennepin, Fourth Judicial District, Court File No. 88-17834, Mr. Chimicles was a Lead Counsel in a suit brought to compel Pillsbury's board of directors to negotiate in good faith with Grand Metropolitan and persuaded the court to enjoin a proposed spin-off of Burger King, a device sought to be used by Pillsbury's board to ward off Grand Metropolitan's takeover. In numerous other cases, Mr. Chimicles has represented shareholders in obtaining enhanced consideration for their stock in the context of a takeover or going private transaction. Randee L. Shantzer, et al. v. Charter Medical Corp., et al., Court of Chancery, State of Delaware, New Castle County, Consolidated Civil Action No. 9530; In Re Interstate Bakeries Corporation Shareholders Litigation, Court of Chancery, State of Delaware, New Castle County, Consolidate Civil Action No. 9263.

In the antitrust field, Mr. Chimicles has acted as a Lead and Co-Lead Counsel in numerous class suits. He was Co-Lead Counsel in the Travel Agency Commission Antitrust Litigation, (D. Minn.) in which the Firm represented the American Society of Travel Agents, an Alexandria, Virginia-based association that represents more than 9,000 travel agencies nationwide and worldwide in a suit against seven airlines for Section 1 (Sherman Act) violations involving commission cuts. The case was settled in late 1996 for more than $80 million. Mr. Chimicles was also Co-Lead Counsel in the Insurance Antitrust Litigation, Case No. C-88-1688 (N.D. Calif.) which charged commercial general liability insurers, domestic and London-based reinsurers and an insurance service organization with violations of the Sherman and Clayton Acts. The case was settled after an earlier dismissal was reversed by the Ninth Circuit, a decision affirmed by the U.S. Supreme Court. In re Insurance Antitrust Litigation, 938 F.2d 919 (9th Cir. 1991); aff'd sub nom. Hartford Fire Insurance Co. v. California, _ U.S. _, 113 S.Ct. 2891 (1993).

Mr. Chimicles was also lead counsel in Crawford's Auto-Center v. Automatic Data Processing, Inc., C.A. No. 97-CV-2085 (E.D. Pa.), an antitrust class action that was settled for more than $5 million in cash and other valuable consideration. The settlement, which was approved by the court in March 1999, provides among other items of relief that an auto parts interchange license agreement (that was negotiated as part of the settlement) will be made available to class members.

As an appellate advocate, Mr. Chimicles has handled cases which have protected the rights of victims of securities fraud in bankruptcy proceedings. In cases that he successfully argued before the Courts of Appeals for the Tenth and Eleventh Circuits, due process and notice principles were extended to protect securities purchasers filing claims in bankruptcy cases, In re Standard Metals Corp., 817 F.2d 625 (10th Cir.), rev'd in part on rehearing, 839 F.2d 1383 (1987), and it was established that class proofs of claim are allowable in bankruptcy proceedings, In re the Charter Company, 876 F.2d 866 (11th Cir. 1989).

Mr. Chimicles has also actively prosecuted suits involving public utilities constructing nuclear plants. He was Lead Counsel in the Philadelphia Electric Company Securities Litigation, Master File No. 85-1878 (E.D. Pa.) and a Lead Counsel in the Consumers Power Company Derivative Litigation, Master File No. 84-CV-3788 AA (E.D. Mich.). Mr. Chimicles was co-lead counsel in the stockholder derivative suit arising from mismanagement claims against former officers of Philadelphia Electric Company involved in the closing of the Peach Bottom Nuclear Plant, a suit which Mr. Chimicles was authorized to bring by a

PECO board of directors resolution. In re Philadelphia Electric Company Derivative Litigation, Case No. 7090, Court of Common Pleas, Philadelphia County, PA. That case resulted in a recovery of $35 million for the utility company in November 1990.

Mr. Chimicles was also a Co-Lead Counsel in a major environmental litigation, Ashland Oil Spill Litigation, Master File M-14670 (W.D. Pa.), involving the claims of residents and businesses for damage arising from the largest inland waterway oil spill in history that occurred on January 2, 1988 in Pittsburgh. In 1990, the case was settled upon creation of a claims fund of over $30 million for the class. This and similar environmental suits in which the Firm is involved were the subject of a program, "Toxic Torts May Not Be Hazardous To Your Health: A Lawyer's Guide to Health Survival in Mass Tort Litigation," in which Mr. Chimicles was a principal speaker at this program which was held at the American Bar Association's 1989 Convention in Honolulu.

Mr. Chimicles has acted as Special Counsel for the City of Philadelphia and the Philadelphia Housing Authority in an action seeking to hold lead pigment manufacturers liable for federally mandated abatement of lead paint in properties owned, managed or operated by the plaintiffs. City of Philadelphia, et al. v. Lead Industries Ass'n, et al., Civil Action No. 90-7064 (E.D. Pa.) and No. 92-1420 (3rd Cir.).

Mr. Chimicles is admitted to practice in the Supreme Court of the United States, numerous federal district and appellate courts, as well as the Supreme Court of Pennsylvania. He is a member of the American Bar Association (Sections of Litigation; Antitrust; and Corporation, Banking and Business Law), the Pennsylvania Bar Association, the Philadelphia Bar Association (Federal Courts Committee and various subcommittees). Mr. Chimicles has lectured frequently on securities law at the Rutgers University Law School - Camden, the Wharton School Graduate Division of the University of Pennsylvania, New York University, the University of Virginia, and for Prentice Hall Law and Business Publications. Mr. Chimicles has addressed numerous law and accounting conferences, including ALI-ABA, Practising Law Institute, the Pennsylvania Bond Counsel Association and the Pennsylvania Institute of Public Accountants, and has also frequently appeared as a speaker in numerous state and national bar association sponsored seminars on topics involving federal securities laws, RICO, class actions, hostile corporate takeovers, and professional ethics. Mr. Chimicles also is a contributor to and member of the advisory boards of various professional publications involving the securities law field. Mr. Chimicles is a member of the Board of Overseers of the School of Arts and Sciences of the University of Pennsylvania. He is the past President of the

National Association of Securities and Commercial Law Attorneys. Mr. Chimicles is the author of numerous articles including an article co-authored with the Firm's Financial Specialist, Kathleen P. Chimicles nee Balon, published in the <u>New York Law Journal</u>, August 26, 1993, entitled "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform;" and <u>The Securities Case: The Plaintiff's Perspective</u>, co-authored with Ira N. Richards, published in the Practical Litigator, Vol. 6, No. 6 (Nov. 1995).

Mr. Chimicles received the prestigious Ellis Island Medal of Honor in May 2004, in recognition of his professional achievements and history of charitable contributions to educational, cultural and religious organizations.

***PAMELA S. TIKELLIS*** is a name partner and a member of the Firm's Executive Committee. Ms. Tikellis is a 1974 graduate of Manhattanville College, where she received a Bachelor of Arts and a 1976 graduate of the Graduate Faculty of the New School for Social Research, where she received a Master's in Psychology. Ms. Tikellis graduated in 1982 from Widener University School of Law, where she was the Managing Editor of the Delaware Journal of Corporate Law. Upon graduating from law school, Ms. Tikellis served as a law clerk in the nationally recognized Court of Chancery in Wilmington, Delaware. Before joining the Firm, Ms. Tikellis engaged in significant shareholder litigation practice. In 1987, she opened the Delaware office of the Firm, where she is a resident and has continued to specialize in litigation, including complex transactional cases, both derivative and class, limited partnership litigation, antitrust and securities fraud litigation. She is AV rated by Martindale Hubbell.

Ms. Tikellis has prosecuted class and derivative suits of national importance for over 20 years. Notably, Ms. Tikellis has represented stockholders in numerous suits, primarily in the Court of Chancery in Wilmington, Delaware arising out of mergers and acquisitions and hostile takeovers. Ms. Tikellis served as Liaison Counsel in the litigation arising out of the Paramount/Viacom merger. She and her co-counsel represented Paramount stockholders in the successful challenge to the merger and were instrumental in eliciting the highest possible value to the stockholders. (Court of Chancery Civil Action No. 13117; Delaware Supreme Court No. 427, 1993). Similarly, Ms. Tikellis served as Lead Counsel in <u>Home Shopping Network Shareholders and Securities Litigation,</u> (Civil Action No. 93-406; Court of Chancery Consolidated Civil Action No. 12868; Delaware District Court Civil Action No. 93-336 (MMS) obtaining over $15 million in settlement funds for the class of Home Shopping stockholders. More recently, as Lead Counsel, she actively prosecuted litigation on behalf of Cyprus Amax

stockholders arising out of a proposed merger with Asarco and helped achieve a merger for Cyprus Amax with Phelps Dodge for greater consideration than was offered by Asarco. (In re Cyprus Amax Shareholders Litigation, Court of Chancery, C.A. No. 17383-NC). Ms. Tikellis also acted as one of Lead Counsel representing a class of stockholders of First Interstate Bancorp prior to the acquisition of First Interstate by Wells Fargo & Co. The litigation resulted in Wells Fargo's acquisition of First Interstate for a substantially greater consideration than offered by the First Bank Systems in a battle for the company. (First Interstate Bancorp Shareholders Litigation, Consolidated Civil Action No. 14623).

Ms. Tikellis has actively prosecuted derivative litigation on behalf of companies and their stockholders. Sanders v. Wang, No. 16640 (Delaware Court of Chancery), was a derivative suit brought on behalf of Computer Associates International, Inc. The suit alleged that the board exceeded its authority under the KESOP by awarding 9.5 million excess shares to the participants. Ms. Tikellis was instrumental in achieving the return from the defendants of over $50 million in stock issued in violation of the Company's plan. This represented a recovery of substantially all of the relief sought by Plaintiffs. Reported decisions include 1998 Del. Ch. LEXIS 207 (Del. Ch. Nov 19, 1998); 1999 Del. Ch. LEXIS 203 (Del. Ch. Nov. 8, 1999); 2001 Del. Ch. LEXIS 82 (Del. Ch. May 24, 2001); 2001 Del. LEXIS 387 (Del. Aug. 22, 2001); 2001 Del. Ch. LEXIS 121 (Del. Ch. Sept. 18, 2001).

In the limited partnership arena, Ms. Tikellis along with partner Mr. Chimicles has actively and successfully prosecuted several cases including ML Lee Acquisition Fund L.P. and ML-Lee Acquisition Fund II L.P. and ML-Lee Acquisition Fund (Retirement Accounts), (C.A. Nos. 92-60, 93-494, 94-422, and 95-724) The litigation resulted in a negotiated settlement exceeding $30 million in cash and other benefits made available to investors in these funds. In another limited partnership matter, Ms. Tikellis along with Mr. Chimicles was successful in representing limited partners of Aetna Real Estate Associates L.P. This settlement provided for the orderly liquidation of more than $200 million in the partnership's real estate holdings and reduction of general partners' fees and the payment of a special cash distribution to the limited partners (Aetna Real Estate Associates, L.P., Delaware Court of Chancery, C. A. Nos. 15386-NC and 15393-NC).

On the Appellate level, Ms. Tikellis has successfully handled cases before the Delaware Supreme Court resulting in victories for the shareholders and investors. Within the year of 2002 and 2003, Ms. Tikellis argued successfully

three appeals in the Delaware Supreme Court. She argued en banc to the Delaware Supreme Court in Saito v. McKesson Corporation, Civil Action No. 18553. This books and records case was tried by Ms. Tikellis. While the Court permitted production of certain documents, the Court imposed severe restrictions. The limitations imposed by the Court of Chancery were appealed successfully by Plaintiff. Importantly, the documents ultimately received in the books and records Saito case have resulted in the filing of an amended derivative complaint in the underlying case against McKesson and its directors and discovery is ongoing in that derivative suit. Saito v. McCall pending in the Court of Chancery, Civil Action No. 17132.

Most recently, in a case argued by Ms. Tikellis, the Delaware Supreme Court overruled the Court of Chancery's determination that accorded the presumption of the business judgment rule to a board's merger recommendation even though 5 of the 7 directors were interested in the transaction. The Supreme Court held that the mere existence of a purportedly disinterested special committee (consisting of the other two board members) did not shield the remaining 5 members from liability. Krasner v. Moffett, 826 A.2d 277 (Del. June 18, 2003). Importantly, the Court held that a full record needed to be developed to determine whether the entire fairness standard of review or the business judgment standard of review would apply in the case. The decision has broken new ground in the field of corporate litigation in Delaware. The case is currently scheduled for trial in September 2005.

Ms. Tikellis is admitted to practice before all Courts in the State of Delaware and the United States Court of Appeals for the Third Circuit. She is a member of the Delaware Bar Association and the American Bar Association (Litigation and Business Sections). Ms. Tikellis has served as a member of the Board of Bar Examiners of the Supreme Court of the State of Delaware since 1994. She also served as the Chair of the Delaware Bar Association Ethics Committee from 1989 to 1992, and is a director of the Historical Society of the Court of Chancery for the State of Delaware.

Ms. Tikellis has addressed numerous conferences including ALI-ABA, The Practicing Law Institute, the American Bar Association, the Delaware Bar Association, and the Pennsylvania Bar Institution lecturing on corporate governance, merger and acquisitions, hostile takeovers, defense mechanisms and professional ethics. She has participated as a commentator on corporate governance as part of the Institute for Law and Economic Policy's program on Corporate Accountability and recently addressed institutional investors at the

OPAL Conference regarding the various tools available in Delaware to protect shareholder rights.

*JAMES R. MALONE, JR.* is a partner in the law firm of Chimicles & Tikellis. Mr. Malone is admitted to practice before the Supreme Court of Pennsylvania, the Supreme Court of the United States, the United States Courts of Appeal for the First, Third, Fifth, Seventh, Ninth and D.C. Circuits and the United States District Courts for the Eastern District of Pennsylvania and the Northern District of California. Mr. Malone is a 1984 *cum laude* graduate of the Villanova University School of Law where he was a staff member on the Villanova Law Review and was elected to the Order of the Coif. Upon graduation from law school, Mr. Malone was associated with a major Philadelphia law firm where he concentrated in bankruptcy and commercial litigation.

Mr. Malone has substantial experience in the securities field. With his former partner, Oliver Burt, he served as co-lead counsel in Hoexter v. Simmons, Civ. No. 89-1069-PHX-RCB (D. Ariz.) in which a $10.8 million settlement was achieved. In Serabian v. Amoskeag Bank, 24 F.3d 357 (1st Cir. 1994), Mr. Malone successfully argued for the reversal of a district court order dismissing a securities complaint in a case involving deceptive financial reporting by a New Hampshire bank holding company. Mr. Malone served as co-lead counsel in Winsor v. Holgerson, No. 89-2507 (PBS) (D. Mass.), a case involving the accounting practices of a failed savings bank, in which a $12.5 million settlement was reached. Mr. Malone has been active in cases involving public offerings of limited partnerships; he served as lead counsel in In re Jiffy Lube Insured Income Partners Securities Litigation. Civil Action No. 10828 (Del. Ch.). The settlement resulted in limited partnership investors receiving the full amount of their initial investment. He has also been active in transactional cases, such as limited partnership roll-ups, and in shareholder derivative actions. Currently, he is active in DeBenedictis v. Merrill Lynch & Co., Inc., No. 04-404 (JLL)(D.N.J.), a class action challenging the sufficiency of Merrill Lynch's prospectus disclosures for Class B shares in its proprietary mutual funds.

In the area of consumer litigation, Mr. Malone was a member of the Executive Committee in In re Advanta Credit Card Terms Litigation, MDL Docket No. 1233, a consumer case brought on behalf of credit card holders. The case resulted in a settlement of $ 7.25 million dollars that also provided for substantial reductions in rates for credit card holders. Along with his partner, Michael Gottsch, Mr. Malone was active in Flannick v. First Union Home Equity Bank, N.A., No. 98-

6080, an action brought under the National Bank Act against a home equity lender, which resulted in a substantial recovery.

In the field of ERISA litigation, Mr. Malone served as co-lead counsel in <u>In re Unisys Savings Plan Litigation</u>, 74 F.3d 420 (3d Cir.), in which he successfully argued for the reversal of a district court order granting summary judgment in an ERISA class action arising out of the failure of the Executive Life Insurance Company. The case was the first appellate decision addressing Section 404(c) of ERISA and the liability of fiduciaries in certain individual account plans. Mr. Malone served as counsel in <u>Corcoran v. Bell Atlantic Corporation</u>, 97-cv-510 (E.D. Pa.) an ERISA class action challenging the conversion of a defined benefit pension plan into a cash balance plan. The case involved issues relating to the calculation of accrued benefits under ERISA's vesting standards and the elimination of early retirement benefits. He is currently active in <u>In re Lucent Death Benefits Litigation,</u> No. 2:03-5017(WGB)(D.N.J.), which challenges Lucent's elimination of spousal death benefits for retirees that were funded as part of a defined benefit pension plan.

Mr. Malone has been involved in a variety of different antitrust actions in both state and federal court. He was active in indirect purchaser actions arising out of price-fixing in the market for sorbates pending in Tennessee and Wisconsin; the resolution of these cases resulted in substantial recoveries by indirect purchasers. Mr. Malone was also active in <u>In re Microsoft Antitrust Litig.</u>, MDL No. 1332, and in <u>In re Buspirone Antitrust Litigation</u>, MDL No. 1413, where he served in a variety of roles.

Mr. Malone served as co-lead counsel in <u>Gersenson v. Pennsylvania Life & Health Insurance Guaranty Association</u>, April Term 1994, No. 3468, an insurance insolvency class action brought under the Pennsylvania Life & Health Insurance Guaranty Association Act. In June 1998, the Philadelphia Court of Common Pleas granted summary judgment in favor of the plaintiff class in the amount of $16.5 million dollars. Mr. Malone successfully argued the resulting appeal and successfully opposed the defendant's petition for allocatur before the Supreme Court of Pennsylvania.

Mr. Malone is a member of The Philadelphia Bar Association, and is active on its cy pres committee, which works to assure that unclaimed class settlement funds are put to appropriate charitable uses.

**MICHAEL D. GOTTSCH**, is a partner in the Firm's Haverford office. Mr. Gottsch is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Court for the Eastern District of Pennsylvania, the United States District Court for the District of New Jersey and the United States Courts of Appeals for the Third and Ninth Circuits. He is a graduate of Temple University School of Law (J.D. 1983) and Marquette University (B.S. 1977). From 1986 to 1987 he served as a Law Clerk to the Honorable Joseph H. Rodriguez, Judge of the United States District Court for the District of New Jersey.

**ROBERT J. KRINER, JR.** is a Partner in the Firm's Wilmington, Delaware office. He is admitted to practice before the Supreme Court of Delaware and the United States District Court for the District of Delaware. Mr. Kriner is a 1983 graduate of the University of Delaware with a degree in chemistry, and a 1988 graduate of the Delaware Law School of Widener University, where he was managing editor of The Delaware Journal of Corporate Law. From 1988 to 1989, Mr. Kriner served as law clerk to the Honorable James L. Latchum, Senior Judge of the United States District Court for the District of Delaware. Following his clerkship and until joining the Firm, Mr. Kriner was an associate with a major Wilmington, Delaware law firm, practicing in the areas of corporate and general litigation.

**STEVEN A. SCHWARTZ**, a Partner in the Haverford office, is admitted to practice before the United States Supreme Court, the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. He is a graduate of the Duke University School of Law (J.D. 1987) where he served as a senior editor of Law & Contemporary Problems. He is a 1984 *cum laude* graduate of the University of Pennsylvania, where he received a B.A. in political science. Mr. Schwartz previously practiced at Schnader, Harrison, Segal & Lewis, LLP, a major Philadelphia firm, concentrating in complex civil litigation.

Mr. Schwartz has actively prosecuted complex class actions in a wide variety of contexts. For example, in the In Re Coin Fund Litigation, Case No. BC 109176 (Superior Court of the State of California for the County of Los Angeles), Mr. Schwartz was one of plaintiffs' co-lead counsel who were successful in obtaining a settlement in excess of $35 million on behalf of limited partners, which represented a 100% net recovery of their initial investments. Mr. Schwartz also served as co-lead counsel in three securities fraud class actions, In Re Microcom Securities Litigation, No. 90-11504-H (D. Mass.), In Re Greenwich Pharmaceuticals Securities Litigation, No. 92-CV-3071 (E.D. Pa.) and In Re New Image Industries Securities Litigation,

CV-94-6590 (C.D. Cal.), in which settlements of $6 million, $4.375 million and $1.9 million were achieved.

In the consumer protection field, Mr. Schwartz served as plaintiffs' co-lead counsel in <u>Wolens, et al. v. American Airlines, Inc</u>. In that class action, plaintiffs_alleged that American Airlines breached its contracts with members of its AAdvantage frequent flyer program when it retroactively increased the number of frequent flyer miles needed to claim certain frequent flyer miles travel awards. The case involved the threshold legal issue of whether the Federal Aviation Act, 49 U.S.C. § 1301, 1305, which broadly preempts all state law claims against airlines relating to airlines' "rates, routes and services," preempted plaintiffs' breach of contract claims. The Illinois and United States Supreme Courts twice accepted discretionary review of this issue. Eventually, the United States Supreme Court held that plaintiffs' claims were not preempted. 513 U.S. 219 (1995). That landmark decision has been cited by hundreds of cases and published articles. After 11 years of litigation and seven months of mediation, the parties reached a settlement in <u>Wolens</u> and a related case in which American agreed to provide class members with mileage certificates that represent, for practical purposes, the full extent of class members' alleged damages. The Court held exhaustive hearings regarding the value and fairness of the settlement. The Court hired its own counsel and valuation expert to assist in that process. In a decision dated July 2, 2001, the Court approved the settlement and counsel fee request in full, holding that the value of the net settlement recovery claimed by class members is between $ 95.6 million to $ 141.6 million. Mr. Schwartz also represented owners of defective doors and windows manufactured by Marvin Windows. In <u>O'Hara v. Marvin Windows</u>, No. 014027 (Minn. 4th Judicial Dist.), plaintiffs alleged that Marvin' windows and doors manufactured between 1985 and 1989 prematurely rotted due to a defective wood preservative. Even though the windows were between 12 and 16 years old, the parties reached a settlement providing class members with the opportunity to obtain replacement windows with minimum net discounts of between 45 % and 58 %. The Court approved a national settlement in November 2001.

In the environmental field, Mr. Schwartz and his firm also played a significant role as part of a large team of plaintiffs' counsel who prosecuted the claims of fisherman, property owners, and Native Americans who were injured as a result of the Exxon Valdez oil spill. <u>In Re Exxon Valdez Oil Spill Litigation</u>, No. A89-095-CV (HRH) (Consolidated) (D. Alaska), <u>appeal pending</u>, No. 97-35191 (9th Cir.). The trial of that case resulted in a jury verdict in excess of $5.3 billion. The Ninth Circuit recently vacated the $ 5 billion punitive damages verdict against Exxon

and instructed the trial court to set a lower (yet still significant) amount of punitive damages. Proceedings are ongoing.

Mr. Schwartz has also developed an expertise in representing the interests of providers of medical services whose bills have been denied for payment by insurers. Mr. Schwartz represented a certified class of Pennsylvania physicians and chiropractors who were not paid by Nationwide Mutual Insurance Company for physical therapy/physical medicine services provided to its insureds. Mr. Schwartz was successful in obtaining rulings of first impression in the trial court and the Superior Court of Pennsylvania that established a physician's right to delegate the performance of physical therapy modalities to their technicians, even though those technicians are not licensed physical therapists. Those decisions effectively established liability in favor of the plaintiff physician class. Nelson, et al. v. Nationwide Mutual Insurance Co., 36 Pa. D.&C. 4th 1 (Phila. CCP 1998), aff'd, No. 924-PHL 1998 (Pa. Super. Ct. Dec. 2, 1998). The parties eventually reached a settlement in which Nationwide agreed to pay class members approximately 130% of their bills.

In the product liability field, Mr. Schwartz served as a member of the Plaintiffs' Steering Committee in In re Pennsylvania Diet Drugs Litigation, Master Docket No. 97-09-3162 (Phila. C.C.P.), a class action that sought to force American Home Products to pay for an extensive medical monitoring program for all Pennsylvania residents who ingested fenfluramine and dexfenfloramine, the "fen" of the "fen phen" diet drug combination. The Third Circuit recently upheld the approval of a national settlement of all medical monitoring claims that provides substantially all the relief sought in the complaint with respect to medical monitoring. More recently, in connection with the recall of the cholesterol drug Baycol, Mr. Schwartz is representing various Health and Welfare Funds (including the Philadelphia Firefighters Union, American Federation of State, County and Municipal Workers District Council 47, Philadelphia Federation of Teachers, and the Pennsylvania State Employees Benefits Trust Fund) and a proposed national class of "third party payors" seeking damages for the sums paid to purchase Baycol for their members and to pay for the costs of switching their members form Baycol to an appropriate cholesterol-lowering drug. Those class actions are pending in the Philadelphia County Court of Common Pleas.

*MORRIS M. SHUSTER*, Of Counsel, is admitted to practice before the United States Supreme Court, United States Court of Appeals for the Third Circuit, the United States District Court for the Eastern District of Pennsylvania, the Supreme Court of Pennsylvania, and all other Pennsylvania Appellate and trial courts.

Mr. Shuster is a graduate of the Wharton School, University of Pennsylvania (B.S. in Economics, 1951), and of the University of Pennsylvania Law School (J.D., 1954).

Prior to joining the Firm, Mr. Shuster was an active civil litigator as an associate and partner in a major Philadelphia litigation firm, as a named-partner in his own firm, and as special litigation counsel to a large Philadelphia, full-service firm. Over the last 20 years, he has concentrated his practice in consumer class actions against banks and insurance companies. He has been successful in obtaining multi-million dollar recoveries in these cases.

Mr. Shuster is currently a faculty member at the University of Pennsylvania Law School where he teaches Trial Advocacy. In 1981, he was a full-time faculty member at the University of Pennsylvania Law School and taught a course in The Lawyering Process. He also has been a guest lecturer on various legal subjects at the University of Pennsylvania Law School, Medical School, and Dental School, and at Drexel University. He is a member of the Advisory Committee for the Public Service Program at the University of Pennsylvania Law School where he developed the mentor/student pro bono project.

Mr. Shuster is a past president of The Philadelphia Trial Lawyers' Association. He was appointed by the Third Circuit Court of Appeals as Chairperson of the Bankruptcy Judge Search Committee. He was appointed by the District Court for the Eastern District of Pennsylvania as Chairperson of a Panel to consider reappointment of a U.S. Magistrate.

In the Philadelphia Bar Association, Mr. Shuster has served as a member of the Board of Governors, Chairperson of the Judicial Commission, Committee on Judicial Selection and Reform, Committee on Civil Legislation/Legislative Liaison, and Committee on Civil Judicial Procedure (state courts). He is listed in Who's Who in American Law.

***DENISE DAVIS SCHWARTZMAN***, Of Counsel, is admitted to practice in Pennsylvania, Florida, Texas and the District of Columbia. She is admitted to practice before all the State Courts in these jurisdictions and is admitted to the United States Courts of Appeals for the Third, Fifth, Eleventh and District of Columbia Circuits as well as United States District Courts within each Circuit. Ms. Schwartzman is a graduate of The Law School of the University of Pennsylvania (L.L.B. 1969) and Temple University (A.B. 1966). She holds a Master of Laws in

Taxation from the Villanova University Law School.   Ms. Schwartzman has practiced extensively at the trial and appellate levels before Federal and State Courts and before various administrative agencies.

Ms. Schwartzman was appellate counsel on the brief in In re Charter Company, 876 F.2d 866 (11th Cir. 1989), a case which established that class proofs of claim are allowable in bankruptcy proceedings, served on the trial team in Ashland Oil Spill Litigation, Master file M-14670 (W.D. Pa), In re Sunrise Securities Litigation, MDL No. 685 (E.D.Pa.) and represented our firm on the Litigation Committee in Prudential Securities Incorporated Limited Partnership Litigation, MDL 1005 (S.D.N.Y.).   Ms. Schwartzman represented the firm on the plaintiffs' Co-Lead Counsel Committee in Spitzer v. Abdelhak, No. 98-CV-6475 (E.D.Pa.), a civil RICO action which recovered damages  on behalf of the physicians and research scientists of the now defunct Allegheny Health Education and Research Foundation (AHERF), a major health care provider in the Delaware Valley and is a senior member of the trial team for the Firm in In re Mutual Funds Investment Litigation, MDL 1586, a complex coordinated derivative action alleging violations of the Investment Company Act and the Investment Advisers Act by the investment advisers to eighteen mutual fund families.   Prior to relocating in Philadelphia, she was associated with a major law firm in San Antonio, Texas.

***ANTHONY ALLEN GEYELIN***, Of Counsel, is admitted to practice before the United States District Court for the Eastern District of Pennsylvania and the Supreme Court of Pennsylvania.

Mr. Geyelin is a graduate of the University of Virginia (B.A. in English, 1968) and the Villanova University School of Law (J.D. 1974 *cum laude*), where he was a member of the Moot Court Board, an Associate Editor of the Villanova Law Review, and a recipient of the Obert Corporate Law Award. After graduation from law school Mr. Geyelin was an associate in the business department of a major Philadelphia law firm before accepting an appointment as Chief Counsel to the Pennsylvania Insurance Department in Harrisburg, an office he held from 1981 through 1983. Mr. Geyelin served as Pennsylvania's Acting Insurance Commissioner in 1983 and 1984. In 1985 Mr. Geyelin accepted the position as chief inside counsel for Academy Insurance Group, Inc. in Valley Forge, Pennsylvania and Atlanta, Georgia, serving as General Counsel and Secretary of the publicly traded holding company and its operating subsidiaries. In 1994 Mr. Geyelin was appointed Secretary and General Counsel of Penn-America Insurance Company in Hatboro, Pennsylvania, and in 1995 assumed the same offices with Penn-America Group, Inc., the publicly traded parent company. From

1997 until joining the firm Mr. Geyelin was in private practice, concentrating on general business, insurance regulatory and litigation support matters.

***TIMOTHY P. BRIGGS***, an associate in the Haverford office, is admitted to practice before the Supreme Court of Pennsylvania. He is a graduate of the Temple University Beasley School of Law (J.D. 2005) and received his undergraduate degree in Political Science from West Chester University (B.A., 1992). Prior to joining the firm, Mr. Briggs enjoyed a long and distinguished career in the political arena. Mr. Briggs had served in senior positions with U.S. Congressmen Joseph Hoeffel (PA) and Bill Pascrell (NJ) as well as Pennsylvania State Senator Connie Williams.

***FATEMA E.F. BURKEY,*** an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She graduated from Washington University School of Law (J.D. 2003) and received her undergraduate degree in French and English from Georgetown University (B.S. 1998 *cum laude*). While in law school, Ms. Burkey served as Associate Editor of the Washington University Law Quarterly and authored, *Prosecutor v. Aleksovski: A Critical Analysis of the ICTY Appeals Chamber's Abandonment of Witness Protection Measures*, 82 Wash. U. L.Q. 297-318 (2004).

***ROBERT R. DAVIS***, an associate in the Wilmington office, is admitted to practice before the Supreme Courts of Pennsylvania and Delaware. He is a 2003 graduate of William and Mary School of Law and received his undergraduate degree from Appalachian State University in 1999. Prior to joining the firm, Mr. Davis served as a law clerk for the Honorable Joseph J. Farnan, Jr. of the District of Delaware.

***KIMBERLY M. DONALDSON***, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit, and the United States District Courts for the Eastern District of Pennsylvania and District of New Jersey. Ms. Donaldson is a 1999 *cum laude* graduate of Villanova University School of Law and is a 1996 graduate of Boston University, where she received a B.A. in Political Science and interned with the Massachusetts Office of the Attorney General, Public Protection Bureau, Consumer Protection Division. Ms. Donaldson's practice includes the representation of investors (shareholders and limited partners) and consumers in major complex litigation, antitrust, securities fraud and breach of fiduciary duty suits. Ms. Donaldson was the principal trial assistant to Mr. Chimicles during the trial of the Real Estate Associates Limited

Partnership Litigation, which resulted in a jury verdict totaling $185 million in November 2002, following a six week trial. (For more details see Mr. Chimicles' biography at page 1-2).

***CANDICE L.H. HEGEDUS***, an attorney in the Haverford office, is admitted to practice before the Supreme Court of Pennsylvania, the United States District Court for the Eastern District of Pennsylvania, and the United States Court of Appeals for the Third Circuit. She is a graduate of Villanova University School of Law (J.D. 1979) and Muhlenberg College *cum laude* (B.A. 1974). She has practiced with major Philadelphia litigation firms. Since associating with the Firm, the focus of her practice has been shareholder litigation involving securities and limited partnerships.

***KIMBERLY M. LITMAN***, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey. She is a graduate of the Temple University Beasley School of Law (J.D. 2003) and received her undergraduate degree in Psychology from the University of Maryland at College Park (B.A. 2000). While in law school, she served as Executive Editor of the Temple Political & Civil Rights Law Review and as a law clerk to Senior District Judge Kenneth L. Ryskamp of the United States District Court for the Southern District of Florida.

***TIMOTHY N. MATHEWS***, an associate in the Haverford office, is a graduate of Rutgers School of Law-Camden (J.D. *magna cum laude* 2003) and Rutgers University-Camden (B.A. *summa cum laude* 2000). While attending law school, Mr. Mathews was a Teaching Assistant for the Legal Research and Writing Program and received the 1L Legal Writing Award. He was also Lead Marketing Editor of the Rutgers Journal of Law & Religion. Mr. Mathews is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, and the United States District Court for the Eastern District of Pennsylvania.

***MARY KATHERINE MEERMANS***, an associate in the Haverford office, graduated *cum laude* from the Law School of University of Pennsylvania in 1982. She served as a law clerk to the Honorable Paul M. Chalfin, Philadelphia Court of Common Pleas, from September 1982 to January 1984, and to the Honorable Phyllis W. Beck from January 1984 to October 1984. She is a member of the Pennsylvania Bar.

***A. ZACHARY NAYLOR***, an associate in the Wilmington office, is a graduate of the Widener University School of Law (J.D., 2003 *magna cum laude*),

the University of Delaware (B.A. in Economics and Political Science, 2000) and the Salesianum School. While at Widener, he served as Wolcott Law Clerk to the Honorable Joseph T. Walsh of the Supreme Court of Delaware. He was also a Managing Editor of the Delaware Journal of Corporate Law, meriting the Russell R. Levin Memorial Award for outstanding service and dedication to that publication.

*JOSEPH G. SAUDER,* is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States District Courts for the Eastern District of Pennsylvania, the Middle District of Pennsylvania and the District of New Jersey. Mr. Sauder received his B.S., *magna cum laude* in Finance from Temple University in 1995 and his J.D. from Temple University School of Law in 1998, where he was a member of *Temple Law Review*. Prior to joining the firm, Mr. Sauder was an associate with a major Philadelphia firm where he concentrated on complex civil litigation. From 1998 to 2003, Mr. Sauder was a prosecutor in the Philadelphia District Attorney's Office where he served as lead counsel in hundreds of criminal trials including over twenty jury trials involving major felonies. His pro bono activities include serving as a volunteer attorney with the Support Center for Child Advocates, a nonprofit organization that provides legal and social services to abused and neglected children.

*DANIEL B. SCOTT*, an associate in the Haverford office, is admitted to practice before the Supreme Courts of Pennsylvania and New Jersey, the United States Court of Appeals for the Third Circuit and the United States District Courts for the District of New Jersey and the Eastern District of Pennsylvania. He is a graduate of Emory University School of Law (J.D. 2001, Atlanta Law Fellow) and Pennsylvania State University (1991, *with Distinction*, University Scholar), where he received a Bachelor of Science in Economics. Upon graduation from law school, Mr. Scott was inducted into the Order of Barristers and Order of Emory Advocates, in recognition of his work as a participant and coach on the Emory Law School Philip C. Jessup International Law Moot Court team (1999-2001).

*KATHLEEN P. CHIMICLES, ASA*, the Firm's Financial Specialist between 1992 and 2005, is a graduate of Drexel University (B.S. Finance 1983) and Villanova University (Master of Taxation 1992). Ms. Chimicles is a Senior Member of the American Society of Appraisers. Prior to joining the Firm, Ms. Chimicles was a Vice President of the investment bank, Howard, Lawson & Co., where she had responsibility for a broad range of corporate finance assignments. Ms. Chimicles nee Balon has co-authored several articles, including "Giving the Company Away (While Keeping the Benefits)," Lawyer's Digest, March 1987, "Leveraged ESOPs - Buyers

of Companies," Lawyer's Digest, May 1988, and together with Mr. Chimicles, "A Realistic Assessment Of The Need For Securities Class Action Litigation Reform," the New York Law Journal, August 26, 1993. Ms. Chimicles has also served as a panelist at various seminars and conventions regarding financing and valuation issues.

# Exhibit F

## SARRAF GENTILE LLP
111 John Street
New York, NY 10038
Tel: 212.433.1312
Fax: 212.406.3677
www.sarrafgentile.com

### FIRM BIOGRAPHY

SARRAF GENTILE LLP practices in a wide variety of litigation, with an emphasis on class, derivative and other complex multi-party actions. The firm is devoted to protecting the interests of investors and consumers that have been defrauded. The firm's practice involves securities, labor and antitrust laws, consumer fraud statutes, product liability claims and corporate governance matters. The firm maintains offices in New York City.

The cases in which the firm is or has been involved include:

• *Crawford v. Citadel Security Software, Inc., et al.*, where the firm represents shareholders against Citadel Securities and various insiders for violations of the Exchange Act of 1934.

• *In re RCN Corp. ERISA Litigation*, where the firm is Co-Lead Counsel representing plan participants in the RCN 401(k) plan for violations of ERISA.

• *Feldman v. Cray, Inc., et al.*, where the firm represents shareholders against Cray Inc. and various insiders for violations of the Exchange Act of 1934.

• *Nussbaum v. iMergent, Inc., et al.,* where the firm represents shareholders against iMergent Inc. and various insiders for violations of the Exchange Act of 1934.

• *In re Merck & Co., Inc. ERISA Litigation (Burtoft v. Merck & Co., Inc., et al.)*, where the firm represents plan participants of various Merck 401(k) plans for violations of ERISA.

• *Pizzo v. Novartis AG, et al.*, where the firm represents minority shareholders of Eon Corp. in an action seeking to enjoin a merger for inadequate consideration.

• *In re Delta Air Lines, Inc. ERISA Litigation (Bermudez v. Delta Air Lines, Inc., et al.)*, where the firm represents plan participants in Delta's 401(k) plan for violations of ERISA.

## THE ATTORNEYS

RONEN SARRAF is a graduate of Brooklyn Law School, where he served as Managing Editor of the *Brooklyn Journal of International Law*. Mr. Sarraf was a member of the Moot Court Honor Society, where he received an award for competing in the BMI Entertainment and Communications National Moot Court Competition as well as for serving as team director for the Judge Duberstein National Bankruptcy Moot Court Competition. While in law school, Mr. Sarraf clerked for the Honorable Richard F. Braun, New York State Supreme Court, and was a research assistant to former SEC commission, Roberta S. Karmel. He is the author of "The Value of Borrowed Art," published in the *Brooklyn Journal of International Law* and an article entitled "Authors' Lawsuit Takes Giant Leap Forward," published in the *Authors Guild Bulletin*. Mr. Sarraf earned a B.A. from Queens College and graduated with Departmental Honors in History.

Mr. Sarraf has been actively litigating securities, corporate and complex

commercial class actions for his entire legal career. Among the numerous cases in which

he's been involved, Mr. Sarraf actively participated in the following:

> • *In re Adelphia Communications Corp. Securities & Derivative Litigation*, where he represented individual shareholders against over fifty named defendants in one of the largest corporate frauds in U.S. history;

> • *In re Warnaco Group Inc. Securities Litigation*, where the Second Circuit reversed a lower court's dismissal of the action and where plaintiffs ultimately reached a multi-million dollar settlement;

> • *In re Nice Systems Ltd. Securities Litigation*, where the Third Circuit affirmed the lower court's $10 million settlement;

> • *In re eBay, Inc., Shareholder Litigation,* where the Delaware Chancery Court upheld claims of corporate theft brought against corporate insiders and Goldman Sachs for "spinning" (*i.e.*, exchanging lucrative IPO allocations for prospective investment banking business);

> • *In re European Rail Pass Antitrust Litigation*, where a global settlement was reached involving the price fixing of European rail passes; and,

> • *Richardson v. Gray.*, a derivative shareholder suit which involved numerous appeals, a several week trial and the incarceration of a company insider.

> • *Raffone v. First American Title Insurance Co.*, where purchasers of home title insurance were defrauded by having to pay higher than statutorily-mandated insurance fees.

Mr. Sarraf is a member of the Association of the Bar of the City of New York

and the New York State Bar Association. He is admitted to practice in the States of New

York and New Jersey, as well as the United States District Courts for the Southern and

Eastern Districts of New York, the District of New Jersey, the Eastern District of Wisconsin,

and the District of Colorado.

JOSEPH GENTILE is a graduate of Boston College Law School, where he clerked for the Honorable Reginald C. Lindsay of the United States District Court for the District of Massachusetts. Mr. Gentile was also an intern at the Major Crimes Bureau at the Queens County District Attorney's Office as well as an intern at Bronx Legal Services. Mr. Gentile earned a B.S. from Fordham University, where he participated in the Business School's Honors Program, and graduate Cum Laude.

Mr. Gentile has actively participated in numerous securities fraud actions, including actions on behalf of shareholders of Shell Royal Dutch and Sonus Networks. He also participated as part of the team representing WorldCom equity and debt holders.

Mr. Gentile is a member of the Association of the Bar of the City of New York and the American Bar Association. He is admitted to practice in the State of New York.