IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| MICHAEL FEHRENBACHER, Individually and On Behalf Of All Others Similarly Situated, | : : : | C.A. No. 05-256-SLR |
| Plaintiff, | : : | |
| -against- | : : : | |
| XYBERNAUT CORPORATION, EDWARD G. NEWMAN, STEVEN A. NEWMAN, M.D., AND THOMAS D. DAVIS, | : : : | |
| Defendants. | : | |

[additional captions on the following pages]

**THE ALSABBAGH FAMILY'S (F/K/A THE FEHRENBACHER
SHAREHOLDER GROUP) ANSWERING BRIEF IN OPPOSITION
TO THE JAMES GROUP'S, XYBERNAUT INVESTORS GROUP'S,
AND AL MESNAD GROUP'S MOTIONS FOR CONSOLIDATION OF
ALL RELATED ACTIONS, APPOINTMENT OF LEAD PLAINTIFFS, AND
APPROVAL OF PROPOSED LEAD PLAINTIFFS' SELECTION OF COUNSEL**

**CHIMICLES & TIKELLIS LLP**
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
Robert Davis (#4536)
One Rodney Square
P.O. Box 1035
Wilmington, Delaware 19899
(302) 656-2500

**SARRAF GENTILE LLP**
Ronen Sarraf (of the New York bar)
Joseph Gentile (of the New York bar)
111 John Street, 8th Floor
New York, NY 10038

Dated: June 28, 2005

**LAW OFFICES OF BRUCE MURPHY**
Bruce Murphy, Esq.
265 Llwyds Ln.
Vero Beach, Florida 32963
(772) 231-4202

ROBERT H. AYLOR, JR., On Behalf Of
Himself and All Others Similarly Situated,

                Plaintiff,

     -against-

XYBERNAUT CORPORATION, EDWARD G.
NEWMAN, STEVEN A. NEWMAN, M.D., and
THOMAS D. DAIVS

            Defendants.

C.A. No. 05-222-SLR

MOSHE TAL, Individually and On Behalf Of
All Others Similarly Situated,

                Plaintiff,

     -against-

XYBERNAUT CORPORATION, EDWARD G.
NEWMAN, STEVEN A. NEWMAN, M.D., and
THOMAS D. DAVIS,

            Defendants.

C.A. No. 05-242-SLR

JEFFREY M. JASKOL AND STACEY J.
JASKOL, Individually and On Behalf Of All
Others Similarly Situated,

                         Plaintiff,

            -against-

XYBERNAUT CORPORATION, EDWARD G.
NEWMAN, STEVEN A. NEWMAN, M.D.,
THOMAS D. DAVIS, BRUCE C. HAYDEN and
GRANT THORNTON, LLP,

                   Defendants.

C.A. No. 05-268-SLR

JOSEPH DANIEL WAUHOP, On Behalf Of
Himself and All Others Similarly Situated,

                         Plaintiff,

            -against-

XYBERNAUT CORPORATION, EDWARD G.
NEWMAN, STEVEN A. NEWMAN, M.D.,
THOMAS D. DAVIS, JOHN F. MOYNAHAN and
GRANT THORNTON, LLP,

                   Defendants.

C.A. No. 05-310-SLR

CHRISTINA W. DONNELLY, JOHN          :
DONNELLY, JAMES G. WILLIAMSON and    :
RICHARD W. DEARBORN, Individually and On  :
Behalf Of All Others Similarly Situated,   :
                                     :        C.A. No. 05-334-SLR
            Plaintiff,               :
                                     :
        -against-                    :
                                     :
                                     :
XYBERNAUT CORPORATION, EDWARD G.     :
NEWMAN, STEVEN A. NEWMAN, M.D.,      :
THOMAS D. DAVIS, BRUCE C. HAYDEN and :
GRANT THORNTON, LLP,                 :
            Defendants.              :

---

CHARLES W. SMITH, Individually and On    :
Behalf Of All Others Similarly Situated,  :
                                     :        C.A. No. 05-354-SLR
            Plaintiff,               :
                                     :
        -against-                    :
                                     :
                                     :
XYBERNAUT CORPORATION, EDWARD G.     :
NEWMAN, STEVEN A. NEWMAN, M.D.,      :
THOMAS D. DAVIS, BRUCE C. HAYDEN and :
GRANT THORNTON, LLP,                 :
            Defendants.              :

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

NATURE AND STAGE OF THE CASE.................................................................................1

SUMMARY OF ARGUMENT ...............................................................................................3

STATEMENT OF FACTS .......................................................................................................4

ARGUMENT............................................................................................................................5

I.      The Alsabbagh Family is the Only Properly Constituted Group .........................................5

        A. The PSLRA Requires Cohesive Lead Plaintiff Groups ...................................................5

        B. The Alsabbagh Family is the Only Cohesive Group......................................................11

        C. The Competing Movants are Random Improper Aggregations ....................................11

II.     The Alsabbagh Family Has a larger Financial Interest Than Any Other Cohesive
        Group................ ......................................................................................................................13

CONCLUSION................................................................................................................…..........16

i

# TABLE OF AUTHORITIES

## CASES

Aronson v. McKesson HBOC, Inc.,
  79 F. Supp. 2d 1146 (N.D.Cal.1999) ............................................................................7, 8

In re Baan Co. Sec. Litigation,
  186 F.R.D. 214 (D.D.C. 1999)..........................................................................................8

In re Bally Total Fitness Sec. Litigation,
  2005 WL 627960 (N.D. Ill. 2005) ..................................................................................10

Bowman v. Legato System Inc.,
  195 F.R.D. 655 (N.D. Cal. 2000)......................................................................................6

Burke v. Ruttenbberg,
  102 F. Supp. 2d 1280 (N.D. Ala. 2000)............................................................................9

In re Cendant Corp. Litigation,
  264 F.3d 201 (3d Cir. 2001)..............................................................................................8

In re Century Business Services Sec. Litigation,
  202 F.R.D. 532 (N.D. Ohio 2001) ..................................................................................10

In re Conseco, Inc. Sec. Litigation,
  120 F. Supp. 2d 729 (S.D. Ind. 2000) ..............................................................................9

Crawford v. Onyx Software Corp.,
  2002 WL. 356760 (W.D ..................................................................................................11

In re Critical Path,
  156 F. Supp. 2d 1102 (N.D. Cal. 2001) ............................................................................9

In re Donnkenny, Inc. Sec. Litigation,
  171 F.R.D. 156 (S.D.N.Y. 1997) ....................................................................................10

In re E.Spire Communications, Inc., Sec. Litigation.,
  2000 U.S. Dist. LEXIS 19517 (D. Md. 2000) ..................................................................9

In re Landry's Seafood Restaurant, Inc., Sec. Litigation,
  2000 WL 33999467 (S.D. Tex. 2000) ............................................................................10

In re McKesson HBOC, Inc. Securities Litigation,
  97 F. Supp. 2d 993 (N.D.Cal.,1999) ..............................................................................15

In re MicroStrategy,
     110 F. Supp. 2d 427 (E.D. Va. 2000) ............................................................................7, 8

In re Milestone Scientific Sec. Litigation,
     183 F.R.D. 404 (D.N.J. 1998)....................................................................................8

In re Razorfish, Inc. Sec. Litigation,
     143 F. Supp. 2d 304 (S.D.N.Y. 2001)..............................................................................10

Sakhrani v. Brightpoint, Inc.,
     78 F. Supp. 2d 845 (S.D. Ind. 1999) ..........................................................................9, 11

Switzenbaum v. Orbital Sciences Corp.,
     187 F.R.D. 246 (E.D.Va.1999) ....................................................................................12

In re Telxon Corp. Securities Litigation,
     67 F. Supp. 2d 803 (N.D.Ohio 1999)...................................................................7, 9, 11, 13

In re the Goodyear Tire & Rubber Co. Sec. Litigation,
     2004 WL. 3314943 (N.D. Ohio, May 12, 2004).............................................................10

In re Waste Management, Inc. Sec. Litigation,
     128 F. Supp. 2d 401 (S.D. Tex. 2000) ......................................................................11, 12

Winn v. Symons International Group, Inc.,
     2001 U.S. Dist. LEXIS 3437 (S.D. Ind. 2001) ...................................................................8

## STATUTES

15 U.S.C. § 78u...................................................................................................................6

## NATURE AND STAGE OF THE CASE

On June 14, 2005, Shareholders Michael Fehrenbacher, Anandamoy Sahoo,

Hamed Hashem Alsabbagh, Ghaith Hashem Alsabbagh, and Rabab Hamed Naji (the

"Fehrenbacher Shareholder Group" or "Movants"), submitted their Motion for an order:

(i) consolidating the above-titled and related actions, (ii) appointing Movants as Lead

Plaintiffs in this action and (iii) approving Movants' selection of the law firms of

Chimicles & Tikellis LLP ("Chimicles") and Sarraf Gentile LLP ("Sarraf") as Co-Lead

Counsel for the Class in both the United States District Court for the Eastern District of

Virginia and the United States District Court for the District of Delaware. In addition to

the Fehrenbacher Shareholder Group, three other Groups moved for appointment as Lead

Plaintiffs: The James Group,[1] the Xybernaut Investors Group,[2] and the Al Mesnad

Group.[3]

Movants have decided that a smaller, more cohesive group with preexisting

relationships is more appropriate and will be better able to serve the interests of the class.

As such, Michael Fehrenbacher and Anandamoy Sahoo withdraw from Movants' group,

and, hereinafter, Movants are the Alsabbagh Family: Hashem Alsabbagh, Ghaith Hashem

Alsabbagh, and Rabab Hamed Naji.

Presently before the Court are the aforementioned competing Motions for

Consolidation of the Related Cases, Appointment of Lead Plaintiffs, and Approval of

Lead Plaintiffs' Section of Counsel. The various movants do not appear to dispute the

---

[1] The James Group is comprised of Kenneth James, La Rocca Pietro, Michael A. Farmakis, David S. Pennington, and Christina Donnelly.

[2] The Xybernaut Investors Group is comprised of Donald T. Ogle, Jr., Wei Wang, Tom Johnson, Michael Taylor, and Robert A. Schultz.

[3] The Al Mesnad Group is comprised of Khalid Nassera Al Mesnad, Edward J. Paige, Nurol Menkul Kiymetler A.S., and Joyce R. Starr.

1

appropriateness of consolidation or of approving the choice of counsel of the eventual

Lead Plaintiffs, and, therefore, this answering brief only addresses the appointment of

Lead Plaintiffs.

## SUMMARY OF ARGUMENT

1.   Movants are the only appropriate group under the PLSRA.

2.   As the only properly constituted group, Movants are the group with the

largest losses.

## STATEMENT OF FACTS

This litigation is a securities class action lawsuit commenced in this Court against Xybernaut Corporation, and certain executive officers and directors, on behalf of a class (the "Class") of all persons who purchased shares in the Company between May 10, 2003 and April 19, 2005, inclusive (the "Class Period"), and suffered damages as a result of defendants' actions.  Excluded from the Class are the defendants, members of each individual defendant's immediate family, any entity in which any defendant has a controlling interest, and the legal affiliates, representatives, heirs, controlling persons, successors, and predecessors in interest or assigns of any such excluded party.

4

## ARGUMENT

**I.    The Alsabbagh Family Is the Only Properly Constituted "Group"**

The Alsabbagh Family, unlike all of the other competing Lead Plaintiff movants, is the only proper group moving for Lead Plaintiff.[4]  All the other movants are composed of unrelated Xybernaut investors.  Their random aggregation, as explained below, is contrary to the purpose of the PSLRA and their collective applications for appointment as Lead Plaintiff must fail.

### A.    The PSLRA Requires Cohesive Lead Plaintiff Groups

The PSLRA was passed to "eradicate 'lawyer-driven litigation' – that is, litigation initiated by plaintiffs' lawyers who recruit large numbers of shareholders as clients, control the strategy of the lawsuit and collect large fees out of the resulting settlement or judgment." *Bowman v. Legato Sys. Inc.*, 195 F.R.D. 655, 658 (N.D. Cal. 2000) (citations omitted).  The PSLRA was "intended to create a new model for securities fraud litigation, under which a district court would appoint a strong lead plaintiff who would actively manage the litigation on behalf of the class." *Id.*

While the statutory language of the PSLRA provides that the lead plaintiff may be more than a single person or entity, *see, e.g.,* 15 U.S.C. § 78u-4(a)(3)(B)(i) ("shall appoint as lead plaintiff the member or members of the purported plaintiff class"), 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ("the most adequate plaintiff in any private action arising under this chapter is the person or group of persons"), courts have emphasized that this

---

[4] In the instant case, the order and organization of the group is helped, not hurt, by the group's alteration, *see Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 248-50 (E.D.Va.1999), and, as described in further detail below, this alteration provides the class with its only cohesive Lead Plaintiff group; thus, Movants' reorganization is both appropriate and in the best interests of the class.

must be read in the context of the overall scheme and purpose of the PSLRA.

Accordingly, courts have rejected efforts by otherwise-unrelated entities to join together in a lead plaintiff motion for the sole purpose of pooling their losses to manufacture a financial interest that is larger than that of a competing movants. *See Bowman*, 195 F.R.D. at 658 ("given the Court's conclusion that the Legato Group was solicited and created by the Milberg firm solely for the purpose of obtaining appointment as lead plaintiff – and thus allowing the Milberg firm to obtain appointment as lead plaintiff's counsel – the Court remains convinced that the Legato Group is not within the definition of "group" as that word is used in the Reform Act.")

As the PSLRA itself allows, certain types of aggregation of individuals is appropriate. What is clear, however, is that random last minute aggregation of individuals, lacking cohesiveness, a prior existing relationship or the prospect of any mechanism by which they may coordinate their leadership duties, clearly runs afoul of the PSLRA. *See, e.g., In re MicroStrategy*, 110 F. Supp. 2d 427, 435-36 (E.D. Va. 2000) (requiring a "'group'" to "'explain and justify its composition and structure to the court's satisfaction.'") (quoting *In re Network Associates Inc. Sec. Lit.*, 76 F. Supp. 2d 1017, 1026 (N.D.Cal.1999) (quoting Amicus Brief of the Securities Exchange Commission filed in *Parnes, et al., v. Digital Lightwave, Inc.*, No. 99-11293 (11th Cir. Aug. 25, 1999)).

Courts have regularly rejected the aggregation of "unrelated" individuals and only permit a group to serve as lead plaintiff where it involves "a small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person." *Aronson v. McKesson*

6

*HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153-54 (N.D. Cal.1999) (citing, *In re Telxon Corp.
Securities Litig.*,67 F. Supp. 2d 803, 809-13 (N.D. Ohio 1999) (contrasting a "group"
with a "melange of unrelated persons")).

The Court in *Aronson* explained that the definition accorded to the word "group"
under the PSLRA required that it have "a meaningful relationship preceding the
litigation, and . . . [be] united by more than the mere happenstance of having bought some
securities. The classic example of such a group would be a partnership, which has no
separate legal identity, but shares in both assets and liabilities. Other such groups might
be the various subsidiaries of a corporation or ***members of a family***." *Id.* (emphasis
added). The Alsabbagh Family, unlike the competing movants, is precisely what the
*Aronson* Court and others envisioned a lead plaintiff to be.

The *Aronson* decision is consistent with the Third Circuit's position in *In re
Cendant Corp. Litig.*, 264 F.3d 201, 266-267 (3d Cir. 2001). In *Cendant*, the Third
Circuit stated that the test for determining lead plaintiff is whether the movant group will
"fairly and adequately" represent the interests of the class, and the factors to be
considered in making that determination for a group include: (i) whether the individuals
in question had a pre-existing relationship, (ii) the extent of that relationship, (iii) whether
the group was created by the efforts of lawyers for the purpose of obtaining lead plaintiff
status, and (iv) whether the group is too large to adequately represent the Class. *Id.* The
SEC has similarly recommended that the group must provide evidence about how and
why it was formed and how it can function cohesively to make decisions before it can be
considered. *See In re Baan Co. Sec. Litig.*, 186 F.R.D. 214, 221 (D.D.C. 1999); *In re
MicroStrategy*, 110 F. Supp. 2d at 435-36 (E.D. Va. 2000) (evaluating these factors and

7

concluding that an institutional investor and a family of investors could seek joint appointment as co-lead plaintiffs).

In light of the PSLRA's mandate, the case law is replete with courts that require movants to have a pre-existing relationship. *See In re MicroStrategy*, 110 F. Supp. 2d at 435-36 (E.D. Va. 2000) (appointing a family of husband and wife, and a pension fund); *In re Milestone Scientific Sec. Litig.*, 183 F.R.D. 404, 418 (D.N.J. 1998) (appointing as lead plaintiff group consisting of three family members and their associated investment groups); *Winn v. Symons Int'l Group, Inc.*, 2001 U.S. Dist. LEXIS 3437 (S.D. Ind. Mar. 22, 2001) (appointing two brothers and their personal and professional colleague of over 20 years, stating, "[m]ost courts, including this one, are comfortable with permitting a group of persons to serve as lead plaintiff as long as the individuals in the group have some relationship pre-existing the litigation other than simply having purchased stocks that lost value."); *In re Telxon Corp. Secs. Litig.*, 67 F. Supp. 2d 803 (N.D. Ohio 1999) (allowing two brothers to serve as lead plaintiff, while denying a third plaintiff who lacked a pre-existing relationship with the brothers); *Sakhrani v. Brightpoint, Inc.*, 78 F. Supp. 2d 845 (S.D. Ind. 1999) (holding that the appointment of a group as lead plaintiff "may be entirely appropriate where the group consists of investors who have prior relationships independent of the lawsuit, such as *family members* who manage investments jointly, or affiliated pension funds or mutual funds under common management") (emphasis added); *In re Critical Path*, 156 F. Supp. 2d 1102, 1111 (N.D. Cal. 2001) (finding a group may aggregate only if they have a pre-existing relationship); *Burke v. Ruttenbberg*, 102 F. Supp. 2d 1280, 1336 (N.D. Ala. 2000) ("The phrase 'group of persons,' as informed by both common usage and statutory structure means something

8

other than an unrelated mass of persons whose common features are loss and counsel.");

*In re Conseco, Inc. Sec. Litig.,* 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) ("While a lead

plaintiff 'group' may be permissible, this District Court has stressed that aggregating

parties 'that have nothing in common beyond their investment is not an appropriate

interpretation of the term 'group' in the PSLRA.'")(quoting *Sakhrani*, 78 F. Supp. 2d at

853) ; *In re E.Spire Communications, Inc., Sec. Litig.*, 2000 U.S. Dist. LEXIS 19517, at

*18 (D. Md. Aug. 15, 2000) ("courts have held that both the context and the structure of

the PSLRA demonstrate that a 'group of persons,' within the meaning of the statute,

should consist of more than a mere assemblage of unrelated persons who share nothing

other than the fact that they suffered losses and entered into retainer agreements with the

same attorneys"); *In re Landry's Seafood Restaurant, Inc., Sec. Litig.*, 2000 WL

33999467, at *5  (S.D. Tex. March 30, 2000) (a group of person requires a "pre-litigation

relationship based on more than their losing investment"); *In re the Goodyear Tire &*

*Rubber Co. Sec. Litig.,* 2004 WL 3314943 (N.D. Ohio, May 12, 2004) ("lead plaintiff

movants must have a pre-existing relationship and basis for acting as a collective unit to

qualify under the PSLRA as a viable lead plaintiff group").

Similarly, the case law is replete with examples of, and reasoning against, random

unrelated aggregations. *See In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 309

(S.D.N.Y. 2001) ("The 'Azimut Group' is simply an artifice cobbled together by

cooperating counsel for the obvious purpose of creating a large enough grouping of

investors to qualify as 'lead plaintiff'…Given, moreover, that the Azimut Group has no

independent existence and its composite members have no prior relationship, there is

nothing to suggest that they will collectively ride herd on counsel anywhere as well as

could a single sophisticated entity."); *In re Donnkenny, Inc. Sec. Litig.*, 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) ("To allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff."); *In re Century Business Services Sec. Litig.*, 202 F.R.D. 532, 540 (N.D. Ohio 2001) (adopting the "strong line of precedent" interpreting the PSLRA to preclude unrelated groups of plaintiffs from serving as lead plaintiff and denying motions by unrelated plaintiffs for lead plaintiff status); *In re Bally Total Fitness Sec. Litig.*, 2005 WL 627960, at *2 (N.D. Ill., Mar. 15, 2005) (holding that "there is no reason here to give weight to a 'mechanical aggregation' of unconnected investors assembled largely for their lawyers' benefit"); *Sakhrani,* 78 F. Supp. 2d 845 ("This court agrees that selecting as 'lead plaintiff' a large group of investors who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term 'group' in the PSLRA ... . In addition, appointment of such artificial groups or subgroups is likely to generate the same agency cost and collective action problems that led to enactment of the PSLRA in the first place."); *In re Telxon Corp. Securities Litig.*,67 F. Supp. 2d 803, 809-13 (N.D.Ohio 1999) ("Without some cohesiveness within the group, or something to bind them together as a unit, there is no reason for the individual members of the group to speak and act with a uniform purpose . . . and, because there is no reason for the individual members to act collectively (no structure for decision making, etc.), the group as a whole will not engaged in monitoring," defeating the purpose of the PSLRA).[5]

---

[5] See also, *Crawford v. Onyx Software Corp.*, 2002 WL 356760, at *2 (W.D. Wash. Jan 10, 2002), wherein the Court stated:

> Plaintiffs Peterson, Skirball and Wunsch's aggregation of their claims in
> an attempt to show that they have the largest financial interest in this

Lastly, the burden rests on those seeking to aggregate disparate individuals into a group to demonstrate the cohesiveness of their purported "group." *In re Waste Mgmt., Inc. Sec. Litig.*, 128 F. Supp. 2d 401, 413 (S.D. Tex. 2000). Accordingly, the competing movants' failures to provide material information about the identity of the members of their groups other than a statement of names, unclear securities transactions and resulting losses, should result in denial of their application for appointment as lead plaintiff. *Id.* (citing *Switzenbaum v. Orbital Sciences Corp.*, 187 F.R.D. 246, 248-50 (E.D.Va.1999)).

## B.    The Alsabbagh Family is The Only Cohesive Group

In this case, and in stark contrast to the competing movants, only the Alsabbagh Family is a group within the meaning of the PSLRA. The Alsabbagh Family is composed of three people, a mother and two sons, who elected to prosecute this action together and have retained the same counsel to represent them. They have and will continue to be, as family members, intimately involved in the prosecution of this case. And with a loss totaling over $225,000, as explained further below, they are more than motivated to prosecute this action. For these reasons, they are, in light of the case law, the classic cohesive example of what the PSLRA terms a "group of persons."

## C.    The Competing Movants Are Random Improper Aggregations

---

litigation is not convincing in light of the purposes of the PSLRA. A loose group of investors whose relationship was forged only in an effort to win appointment as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject to all of the obstacles that normally make group action difficult. Even though the Peterson Group consists of only three individuals, their decision making requires (a) levels of coordination, negotiation, and collective action which far exceed that which would be necessary of an individual litigant or (b) undue control by their lawyer-representatives.

The competing movants appear to be nothing more than a collection of unrelated investors packaged together (in some cases the day before these motions were due) for the purpose of aggregating losses. They are the precise type of artificial combination that courts have refused to consider as a single unit for the purposes of determining the largest financial interest. They have offered no evidence that each member of their respective "group" knows the other or that they consented to their joinder to the group. Moreover, they have not offered any plan regarding how they intend to serve cohesively and make decisions jointly.

For example, the Al Mesnad Group, which is comprised of Khalid Nassera Al Mesnad, Edward J. Paige, Nurol Menkul Kiymetler A.S., and Joyce R. Starr, offer no explanation as to their pre-existing relationships with one another or how they intend to coordinate their decision making process. Moreover, the member from whom the AL Mesnad Group takes its name appears to have signed his certification the day before the due date on these Lead Plaintiff motions. It is curious what efforts, if any, were made to coordinate his association with the other members of the Al Mesnad Group or if the other members authorized or were even appraised of their joinder with Mr. Al Mesnad on this motion. Rather, the Al Mesnad Group, with the joinder of its namesake, appears to have been literally thrown together at the list minute in a quintessentially attorney-driven effort to stitch together a group of investors with the largest aggregate financial loss. Also, another member of the group, Joyce Starr, failed to execute a proper certification. Rather than listing her transactions in a schedule, only incomplete brokerage statements are attached, which makes the calculation of losses little more than a guessing game. *See* *supra* note 10.

Similarly, the James Group is comprised of Kenneth James, La Rocca Pietro, Michael A. Farmakis, David S. Pennington, and Christina Donnelly. It is unclear what relationship, if any, the members of the James Group have with one another, other than they purchased Xybernaut stock and retained the same attorneys to represent them. They also offer no mechanism by which they will jointly prosecute the action.

Lastly, the Xybernaut Investors Group, is comprised of Donald T. Ogle, Jr., Wei Wang, Tom Johnson, Michael Taylor, and Robert A. Schultz. The members of this group, too, offer no details regarding their association with one another or the efforts they've taken to coordinate the prosecution of this case.

Accordingly, the competing movants, who are nothing more than a "melange of unrelated persons," *In re Telxon*, 67 F. Supp. 2d at 809, are wholly inconsistent with the PSLRA's purpose and mandate. As such, they should all be rejected as lead plaintiff in favor of the Alsabbagh Family.

## II.    The Alsabbagh Family Has A Larger Financial Interest Than Any Other Cohesive Group

As stated in their opening brief, the Alsabbagh Family suffered a net loss of $225,120.00 using a $0.14 settle-out price, which, for basis of comparison, is the settle-out price generally used by the other movants. (See Xybernaut Investors' Brief at 9 n.4 (D.I. 3);[6] Decl. in Support of the Al Mesnad Group's Motion at Ex. B (D.I. 7); Decl. in Support of the James Group's Motion at Ex. C n.2. (D.I. 13) Thus, the Alsabbagh Family is the only cohesive group qualified under the PLSRA to move for lead plaintiff, and the group who possess the greatest losses of the qualified movants. Additionally, this loss is significant enough that the Alsabbagh Family can be relied upon to diligently and

---

[6] Docket Number references correspond to the filings in the first-filed action: *Aylor v. Xybernaut*, civil action 05-222 SLR.

faithfully prosecute the instant litigation.

The Court should also be appraised of some issues with the damage calculations of the other movants.[7]

Although the James Group, for example, contends that its losses were $427,006.37, the damages of Kenneth James are estimated using the First-in-First-Out Method ("FIFO"). Using this method, the James Group has failed to recognize $89,538.00 in class period gains from sales, by matching several of his sales with pre-class holdings. (See Supplemental Loss Chart annexed as Exhibit A to the accompanying Second Affidavit of Robert R. Davis ("Second Davis Aff.")[8].) Although some courts have used FIFO in calculating losses, the deficiencies of this method and its failure to account for gains based on the misrepresentations giving rise to the instant lawsuit are clear. See In re McKesson HBOC, Inc. Securities Litigation, 97 F. Supp. 2d 993, 997 n.2 (N.D. Cal.,1999) (holding that allowing "cash receipts [to be] netted against pre-class purchases until such purchases are exhausted" allows Plaintiffs to "mask significant class period receipts if there were extensive pre-class period holdings"). Thus, assuming the accuracy of the James Group's remaining numbers, their losses are more appropriately viewed as $337,468.26.

Additionally, the losses of the Al Mesnad Group appear to have been augmented

---

[7] In some cases, the Alsabbagh Family's analysis has produced numbers that are only slightly different than the numbers of the other Movants. Given the number of transactions involved for many of the Movants, these differences may be due to rounding differences or a slightly different settle-out price and have not been noted here. However, to the extent the Court believes that these marginal differences are relevant, the Alsabbagh Family can provide the Court with its analysis.

[8] Submitted herewith is the Second Affidavit of Robert R. Davis in Support of the Answering Brief in Opposition to the James Group's, Xybernaut Investors Group's, and Al Mesnad Group's Motions of the for Consolidation of All Related Actions, Appointment of Lead Plaintiff and Approval of Proposed Lead Plaintiff's Selection of Lead Counsel. References to the Affidavit are cited as (Second Davis Aff. at Ex. __.)

by a failure to fully account for gains obtained by Edward Paige. As referenced in the

Loss Chart for Mr. Paige that was produced by the Al Mesnad Group, the proceeds for

several sales were partially or wholly excluded. (See Decl. in Support of the Al Mesnad

Group's Motion at Ex. B (failing to fully designate proceeds for transactions beginning

with a sale on 2/14/2003)(D.I. 7). To account for these proceeds, Mr. Paige's losses

should be reduced by $210,056, making Mr. Page's losses $27,271.59 and the group's

losses $753,450.59.[9] (See Second Davis Aff. at Ex. A.) The failure to account for these

losses appears to be based on the exclusion of transactions based on FIFO accounting;

however, the submission of the Al Mesnad Group does not indicate the use of this

method or the existence of any pre-class holdings, the transactions that are not being

accounted for are not the earliest sales, and, as noted above, the Alsabbagh family does

not believe that FIFO accounting best demonstrates the level of losses during the class

period.[10]

---

[9] The Al Mesnad group appears to have used a $0.20 settle-out price in calculating damages for Mr. Paige, although it used a $0.14 settle-out price to calculate the damages for other member of the group. The Alsabbagh family therefore used this $0.20 settle-out price in estimating the unaccounted for gain. (See Second Davis Aff. at Ex.A)

[10] Additionally, the Al Mesnad Group appears to have included several transactions in the loss charts of Joyce Starr that were not included in Ms. Starr's certification. Ms. Starr's certification incorporates by reference trade confirmations from Schwab and Ameritrade rather than a schedule of transactions. However, the transactions on Ms. Starr's Loss Chart #3 do not appear to be included in the attached trade confirmations. Presumably, this was merely an oversight.

## CONCLUSION

For the foregoing reasons, Movants respectfully request that this Court: (i) consolidate the above-titled and related actions; (ii) appoint them Lead Plaintiffs in the consolidated action; and (iii) approve Chimicles & Tikellis and Sarraf Gentile to serve as Co-Lead Counsel for the class.

Dated:  June 28, 2005                    **CHIMICLES & TIKELLIS LLP**


_Robert Davis_
Pamela S. Tikellis (#2172)
Robert J. Kriner (#2546)
A. Zachary Naylor (#4439)
Robert Davis (#4536)
P.O. Box 1035
One Rodney Square
Wilmington, Delaware  19899
Tel: (302) 656-2500
Proposed Lead Delaware Counsel

OF COUNSEL:
Sarraf Gentile LLP
111 John Street, 8th Floor
New York, NY 10038
Ronen Sarraf (of the New York bar)
Joseph Gentile (of the New York bar)
111 John Street, 8th Floor
New York, NY 10038

Proposed Lead Counsel

Bruce Murphy, Esq.
265 Llwyds Ln.
Vero Beach, Florida 32963
(772) 231-4202