1

2005 WL 627960 (N.D.Ill.)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois, Eastern Division.
**In re BALLY TOTAL FITNESS** SECURITIES LITIGATION
Nos. 04C3530, 04C3634, 04C3713, 04C3783, 04C3844, 04C3864, 04C3936, 04C4342,
04C4697.
March 15, 2005.
Fay Clayton, Carl Thomas Bergetz, Robinson, Curley & Clayton, P.C., Christopher B. Sanchez, Jennifer
Winter Sprengel, Marvin Alan Miller, Miller, Faucher and Cafferty, LLP, Carol V. Gilden, Conor R.
Crowley, Much, Shelist, Freed, Denenberg, Ament & Rubenstein, P.C., Edward Anthony Wallace,
Wilson, Elser, Moskowitz, Edelman & Dicker, Kenneth A. Wexler, Kenneth A. Wexler & Associates,
Chicago, IL, Darren J. Robbins, Laura M. Andracchio, William S. Lerach, Lerach, Coughlin, Stoia,
Geller, Rudman & Robbins LLP, San Diego, CA, Samuel H. Rudman, Lerach, Coughlin, Stoia, Geller,
Rudman & Robbins LLP, David A. Rosenfeld, Mario Alba, Jr., Geller Rudman, PLLC, Melville, NY, Guri
Ademi, Shpetim Ademi, Ademi & O'Reilly, Cudahy, WI, Marc A. Topaz, Schiffrin & Barroway, LLP,
Radnor, PA, Steven G. Schulman, Andrei V. Rado, Peter Seidman, Milberg, Weiss, Bershad &
Schulman LLP, Richard B. Brualdi, The Brualdi Law Firm, Robert Harwood, Samuel K. Rosen, Wechsler
Hawwood LLP, New York, NY, for Plaintiffs.
Timothy Bunker Hardwicke, Amanda Jean Hollis, Erin S. Shaw, Robert Brian Tanner, Amanda Jean
Smith, Latham & Watkins LLP, Howard Steven Suskin, Ryan Stacy Stippich, Shyni R. Varghese,
William Denby Heinz, Jenner & Block, LLC, Chicago, IL, Laurie B. Smilan, Wilson, Sonsini, Goodrich &
Rosati, PC, Reston, VA, for Defendants.

*MEMORANDUM OPINION*

GRADY, J.
***1** Pending before the court are nine related securities fraud class actions brought against Bally Total
Fitness Holding Corporation ("Bally") and three of its current or former officers and directors for
violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t
(a), and Rule 10b-5 promulgated by the Securities and Exchange Commission, 17 C.F.R. 240.10b-5.
We previously granted the parties' motions for consolidation of the cases for all purposes and directed
that the consolidated cases be referred to as "**In re Bally [Total] Fitness** Securities
Litigation." (Minute Order of Sept. 8, 2004.) [FN1] There are currently five groups of plaintiffs with
motions seeking appointment as lead plaintiff and appointment of their chosen counsel as lead and
liaison counsel.

> FN1. The consolidated cases are as follows (abbreviating defendants to simply "Bally"):
> *Petkun v. Bally,* 04 C 3530; *Marcano v. Bally,* No. 04 C 3634; *Garco Invs., LLP v. Bally,*
> No. 04 C 3713; *Salzmann v. Bally,* No. 04 C 3783; *Rovner v. Bally,* No. 04 C 3844;
> *Strougo v. Bally,* No. 04 C 3864; *Koehler v. Bally,* No. 04 C 3936; *Rosenberg v. Bally,* No.
> 04 C 4342; and *Eads v. Bally,* No. 04 C 4697. A tenth case, *Ladenheim v. Bally,* No. 04 C
> 4125, had been consolidated with the others as well, but was voluntarily dismissed on
> September 27, 2004.

For the reasons explained below, we appoint Cosmos Investment Company, LLC, managed by Dr.
Lokesh Sharma, as lead plaintiff and reserve ruling on the appointment of counsel.
BACKGROUND
Defendant Bally is a corporation that operates hundreds of fitness centers throughout North America
with approximately four million members. Bally's securities are publicly traded on the New York Stock
Exchange. During the time period relevant to this action, defendant John W. Dwyer was Bally's Chief

Financial Officer, Executive Vice President, and a member of Bally's Board of Directors (the "Board");
defendant Lee S. Hillman was Chief Executive Officer, President, and Chairman of the Board.
Defendant Paul A. Toback is Bally's current Chief Executive Officer, President, and Chairman of the
Board. Plaintiffs allege that defendants violated federal securities laws by publicly disseminating false
and misleading corporate reports, financial statements, and press releases.
On May 20, 2004, plaintiff Gladys Petkun filed the first of the related cases on behalf of all purchasers
of Bally common stock on the open market during the period of May 17, 1999 through and including
April 28, 2004. [FN2] Five days later, on May 25, plaintiff Carlos Marcano filed his complaint. On that
same day, Marcano's attorneys published notice on the PR Newswire, a news and information
distributing service, advising members of the proposed class of their right to move to serve as lead
plaintiff or plaintiffs no later than sixty days from the issuance of the notice (July 26, 2004). [FN3]

> FN2. The *Petkun* complaint and the complaints in the *Salzmann, Koehler,* and *Rosenberg*
> actions allege a class period beginning on May 17, 1999, whereas the complaints in the
> *Marcano, Garco, Rovner, Strougo,* and *Eads* actions allege a class period beginning on
> August 3, 1999.

> FN3. Evidently, Petkun's attorneys did not file a notice publicizing the pendency of the
> action before Marcano's attorneys did so.

On July 26, 2004, motions to serve as the lead plaintiff(s) and for approval of their chosen counsel
were filed by five groups of plaintiffs: (1) the Genesee County Employees' Retirement System
("Genesee"); (2) David and Dodie Carlton (the "Carltons"); (3) the Cosmos Group, consisting of
Cosmos Investment Co., LLC (managed by Lokesh Sharma) and Robert Rovner; (4) the Chesson
Group, consisting of Earl G. Chesson, Richard J. Jaffke, and Timothy Weise; and (5) the Pitcher
Group, consisting of Sam Pitcher, Shelomoh and Sablheh Sameyah, Marlyn Slenn, and Jacob
Gerstenfeld. After their initial motions, neither the Carltons nor the Pitcher Group filed any responsive
briefs, but we will still consider their motions on the merits because they have not been withdrawn.

## DISCUSSION

**\*2** In 1995, Congress enacted the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §
78u-4 *et seq.,* "to curb abuse in securities suits, particularly shareholder derivative suits in which the
only goal was a windfall of attorney's fees, with no real desire to assist the corporation on whose
behalf the suit was brought." *Green v. Ameritrade, Inc., 279 F.3d 590, 595 (8th Cir.2002).* The PSLRA
requires that the court "appoint as lead plaintiff the member or members of the purported plaintiff
class that the court determines to be most capable of adequately representing the interests of class
members ... referred to as the 'most adequate plaintiff.' ' 15 U.S.C. § 78u-4(a)(3)(B)(i).
There is a presumption under the PSLRA that the "most adequate plaintiff" is the "person or group of
persons" who "has either filed the complaint or made a motion in response to a notice;" [FN4] "in the
determination of the court, has the largest financial interest in the relief sought by the class;" and
"otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §
78u-4(a)(3)(B)(iii)(I). This presumption may be rebutted, however, "upon proof by a member of the
purported plaintiff class that the presumptively most adequate plaintiff will not fairly and adequately
protect the interests of the class or is subject to unique defenses that render such plaintiff incapable
of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

> FN4. All of the proposed lead plaintiffs have filed timely motions in response to the notice
> described *supra,* so this factor is satisfied and we need not discuss it further.

### A. *Artificial Groups as Lead Plaintiff*
We will deal first with the fact that three of the five lead plaintiff motions--those of the Cosmos
Group, the Chesson Group, and the Pitcher Group-- are brought by groups of investors who have

nothing in common other than their investment in Bally securities. On this issue, we adopt the analysis of Judge Hamilton in *Sakhrani v. Brightpoint, Inc.,* 78 F.Supp.2d 845 (S.D.Ind.1999):

The specific problem is whether a number of investors who have nothing in common other than their investment in a defendant's securities may aggregate their individual losses to form a "group of persons" with the greatest financial interest in the case so that, as a group, they are presumed under the PSLRA to be the most adequate representative(s) of the proposed class.

The PSLRA by its terms authorizes appointment of a "group of persons." 15 U.S.C. § 78u-4(a)(3)(B) (iii)(I). Such an appointment may be entirely appropriate where the group consists of investors who have prior relationships independent of the lawsuit, such as family members who manage investments jointly, or affiliated pension funds or mutual funds under common management. Where the members of the group do not share business or other relationships independent of the lawsuit, however, this court concludes that appointment of such an artificial group of persons as lead plaintiffs should be rare under the PSLRA.

The plain language of the PSLRA does not require such appointments, and in most situations the appointment of an artificial group as lead plaintiffs will tend to undermine the goals of the PSLRA. Some courts have held otherwise, however, and have given substantial or even controlling weight to the aggregation of losses by large, artificial groups of investors. The unintended results have been to generate a flurry of otherwise pointless activity that adds nothing to the prompt and fair resolution of disputes, and to create powerful incentives for lawyers competing to represent the class to solicit clients and to create misleading forms of notice under the PSLRA that prompt plaintiffs to "volunteer" as lead plaintiffs when they think they are merely providing notice to preserve their claims.

**\*3** The PSLRA simply does not require courts to reward lawyers' efforts to aggregate the losses of scores, hundreds, or even thousands of class members as proposed artificial "groups" of lead plaintiffs. Courts should give such efforts no weight in selecting lead plaintiffs under the PSLRA, including selections of smaller "subgroups" as representatives of much larger artificial groups. There is certainly no reason to make such an appointment of an artificial group or subgroup as lead plaintiff in this case.

...

Th[e] provisions of the PSLRA were designed to avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him. The PSLRA was enacted with the explicit hope that institutional investors, who tend to have by far the largest financial stakes in securities litigation, would step forward to represent the class and exercise effective management and supervision of the class lawyers.

...

Relying on the PSLRA provision permitting appointment of a "group of persons" as lead plaintiff, enterprising counsel have competed with one another to collect scores, hundreds, sometimes even thousands of volunteers to serve as class representatives as each law firm tries to assemble the largest possible group with the largest possible aggregate losses.

...

[S]electing as "lead plaintiff" a large group of investors who have the largest aggregate losses but who have nothing in common with one another beyond their investment is not an appropriate interpretation of the term "group" in the PSLRA. Such an interpretation rewards lawyers who solicit plaintiffs and can produce an unmanageably large group of scores, hundreds, or perhaps even thousands of "lead plaintiffs." Such groups could not effectively manage the litigation and oversee class counsel for the benefit of the class. The "subgroup" solution to that oversight problem merely acknowledges the problem while clearly evading application of the statutory standard: which person or group of persons who can effectively oversee the case "has the largest financial interest in the relief sought by the class?" Having a subgroup represent an unmanageably large group, which in turn "represents" an even larger class is not consistent with the structure and purpose of the PSLRA, and it is certainly not required by the language of the PSLRA.

In addition, appointment of such artificial groups or subgroups is likely to generate the same agency cost and collective action problems that led to enactment of the PSLRA in the first place. *See In re Telxon Corp. Securities Litigation,* 67 F.Supp.2d at 816. The incentives created by the broad interpretation of the term "group" tend to generate a great deal of truly useless activity (the premature collection of forms from investors) and controversy that adds nothing to the fair or prompt resolution of the case, or to the adequate representation of the class. In fact, some of the proposed groups of "lead plaintiffs" (like the original Sakhrani Group in this case) are themselves large enough

to satisfy numerosity requirements for class actions under Rule 23(a). Nothing in the language of the PSLRA specifically requires courts to reward and encourage such enterprise with appointment of absurdly large, artificial, and unmanageable groups of "lead plaintiffs."

**\*4** As the court pointed out in *In re Oxford Health Plans,* the lead plaintiff decision "must be made on a case-by-case basis, taking account of the unique circumstances of each case." 182 F.R.D. at 49; accord, *Advanced Tissue Sciences,* 184 F.R.D. at 352; *Chill v. Green Tree Financial Corp.,* 181 F.R.D. at 409. Thus, there may well be a few situations in which a small group might provide more effective oversight of class counsel than any single investor. The PSLRA gives courts the discretion to take such an approach if that seems reasonable based on the information the court has about the volunteers for lead plaintiff or perhaps because of significant differences of claims arising at different times in a longer class period. Nevertheless, this court sees no benefit in giving any weight to a mechanical aggregation of the losses of investors as a "group of persons" whose only connection is their common losing investment.
*Id.* at 846-47, 850, 851, 853. [FN5] Although the proposed groups of unrelated investors in the instant case are not very large--none consists of more than five persons or entities--Judge Hamilton's well-reasoned analysis applies nonetheless. As in *Sakhrani,* there is no reason here to give weight to a "mechanical aggregation" of unconnected investors assembled largely for their lawyers' benefit. Accordingly, we will consider the individual investors in the groups separately as lead plaintiff candidates, but we will not recognize the artificial aggregations of the Cosmos Group, the Chesson Group, or the Pitcher Group. [FN6]

> FN5. *But see In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir.2001) (disagreeing with the *Sakhrani* court and other courts that have held that a group of unrelated individuals usually cannot serve as
>
> lead plaintiff).
>
>
>
> FN6. For convenience, we will still refer to those individuals' arguments as being advanced by the specific group of which they claim to be members.

B. *Appointment of Lead Plaintiff*
The PSLRA does not specify exactly how we should decide which plaintiff has the "largest financial interest" in the relief sought by the class, and the parties make much of what "test" we should use. Many courts simply determine which potential lead plaintiff claims the greatest total approximate losses. *See, e.g., Taubenfeld v. Career Educ. Corp.,* No. 03 C 8884, 2004 WL 554810, at *2 (N.D.Ill. Mar.19, 2004); *In re Motorola Secs. Litig.,* No. 03 C 287, 2003 WL 21673928, at *3 (N.D.Ill. July 16, 2003); *Singer v. Nicor, Inc.,* No. 02 C 5168, 2002 WL 31356419, at *2-3 (N.D.Ill. Oct.17, 2002); *Sofran v. LaBranche & Co.,* 220 F.R.D. 398, 401-02 (S.D.N.Y.2004); *In re Gemstar-TV Guide Int'l, Inc. Secs. Litig.,* 209 F.R.D. 447, 450 (C.D.Cal.2002). Not surprisingly, some of the lead plaintiff candidates who are in the middle of the pack in terms of losses--particularly the Chesson Group-- contend that we should also examine factors such as the number of shares purchased, the number of net shares purchased, and the total net funds expended by the plaintiff during the class period, citing *Lax v. First Merchants Acceptance Corp.,* No. 97 C 2715, 1997 WL 461036, at *5 (N.D.Ill. Aug.11, 1997) (adopting a plaintiff's suggestion to examine these "factors" along with approximate losses suffered). It is not self-evident, though, what weight these factors should be given in relation to the amount of loss, or even why we should consider them at all, and the Chesson Group provides no explanation. We believe that the best yardstick by which to judge "largest financial interest" is the amount of loss, period. The inquiry need not and should not be complicated by also considering the number of shares or the net expenditures involved because those statistics do not advance the ball.
**\*5** The approximate losses claimed by the plaintiffs seeking to be appointed lead plaintiff, rounded to the nearest thousand, are as follows: (1) Genesee, $359,000; (2) the Cosmos Group, $203,000 (Cosmos Investment Co., LLC, $112,000; Robert Rovner, $91,000); (3) the Chesson Group, $175,000 (Earl G. Chesson, $94,000; Richard J. Jaffke, $40,000; Timothy Weise, $40,000); (4) the

Pitcher Group, $126,000 (Sam Pitcher, $68,000; Shelomoh and Sabiheh Sameyah, $29,000; Marlyn Slenn, $17,000; Jacob Gerstenfeld, $12,000); and (5) the Carltons, $107,000. Genesee, an institutional investor, claims the greatest losses and therefore has the largest financial interest in the relief sought by the class.

As stated supra, the next question is whether Genesee "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23 allows a member of a class to sue as a representative of the class only if (1) joinder of all members is impractical because the class is so numerous, (2) questions of law or fact are common to the class, (3) the representative's claims are typical of those of the class, and (4) the representative will fairly and adequately protect the interests of the class. See Fed.R.Civ.P. 23(a). "In selecting the lead plaintiff under the PSLRA, however, typicality and adequacy of representation are the only relevant considerations." In re Motorola, 2003 WL 21673928, at *3.

Typicality exists if the plaintiff's claim arises from the same events or course of conduct giving rise to the other class members' claims and is based on the same legal theory. See id. To meet the adequacy requirement, a plaintiff must demonstrate that "(1) his claims are not antagonistic or in conflict with those of the class; (2) he has sufficient interest in the outcome of the case to ensure zealous advocacy; [and] (3) he is represented by competent, experienced counsel who will be able to prosecute the litigation vigorously." Id. at *4.

It appears that Genesee is both typical and adequate under Rule 23(a). Its claims arise from the same alleged conduct and are based on the same theories as other class members. Moreover, there is no indication that Genesee's claims conflict with those of the class; [FN7] it has sufficient interest in the outcome to ensure zealous advocacy; and its chosen counsel seems to be competent and experienced. Indeed, neither the Cosmos Group nor the Chesson Group, the groups challenging Genesee's appointment as lead plaintiff, develops any argument that Genesee does not meet these requirements.

> FN7. Assuming that being subject to a "unique defense" is not part of this initial typicality or adequacy inquiry, as the structure of the PSLRA implies.

The statutory presumption thus favors Genesee as lead plaintiff. The Cosmos Group and the Chesson Group, however, attempt to rebut this presumption by arguing that Genesee is subject to a unique defense and thus cannot adequately represent the class. According to the Cosmos Group and the Chesson Group, Genesee may not be able to prove loss causation because it is an "in-and-out" trader that purchased and then sold all of its stock during the class period, many months before the alleged fraud was first revealed. Genesee purchased and sold all of its shares of Bally by September 2002 and therefore did not hold any shares in April 2004, when the alleged fraud became public.
*6 Plaintiffs suing under the PSLRA must prove that the defendant's purported fraudulent statement or omission was the cause of their loss. See 15 U.S.C. § 78u-4(b)(4). The Cosmos Group and the Chesson Group cite case law indicating that in-and-out traders like Genesee face difficulties in attributing the decline in the price of their stock to the alleged fraudulent conduct. See In re Cable & Wireless, PLC, Secs. Litig., 217 F.R.D. 372, 379 (E.D.Va.2003) (denying motion for appointment as lead plaintiff in part because movant sold all of its shares before the alleged fraud was revealed to the public); Arduini/Messina P'ship v. National Med. Fin. Servs. Corp., 74 F.Supp.2d 352, 360-61 (S.D.N.Y.1999) (dismissing securities fraud claim because plaintiffs failed to allege loss causation; plaintiffs had sold all their stock before disclosure of purported fraud). [FN8]

> FN8. Bally has also submitted a brief in response to the lead plaintiff motions. Bally states that it does intend to assert a loss causation defense against in-and-out trader plaintiffs such as Genesee.

Genesee asserts that it will be able to establish loss causation and cites case law for the proposition that in-and-out traders can prove loss causation. The PSLRA, though, provides that we ask simply whether Genesee is likely to be "subject to" the unique defense regarding loss causation; we do not

have to determine that the defense is likely to succeed. And it does appear that Genesee would have to use considerable resources to establish that even though it was an in-and-out trader, its losses nevertheless were caused by the alleged fraudulent statements. Our concern is that the time and attention Genesee would be required to devote to the loss causation issue (not to rebut a defense, but to prove its case) would distract it from the claims of the rest of the class. This would not be the case with the other prospective lead plaintiffs. Accordingly, we find that Genesee's status as presumptive lead plaintiff has been rebutted.

After Genesee, the individual investor claiming the next largest total losses is Cosmos Investment Co., LLC ("Cosmos"), with $112,000. [FN9] Cosmos is an investment vehicle through which Dr. Lokesh Sharma makes investments on behalf of himself, his wife, and his parents. Cosmos is managed by Cosmos Capital Group, Inc., which in turn is managed by Dr. Sharma. (Declaration of Douglas Risen in Support of Cosmos's Motion, Ex. A, Certification of Lokesh Sharma; Cosmos's Reply at 10-11.)

> FN9. As stated *supra*, we will not recognize the artificial aggregations of the Cosmos Group, the Chesson Group, or the Pitcher Group.

Cosmos satisfies the typicality and adequacy requirements. Its claim arises from the same alleged conduct as the other class members, is based on the same theory, and does not conflict with that of the class; Cosmos has sufficient interest in the outcome of the case; and Cosmos appears to be represented by competent, experienced counsel. Moreover, there is no indication that Cosmos would not fairly and adequately protect the interests of the class or is subject to a unique defense. [FN10]

> FN10. The Chesson Group contends that there is an "obvious conflict of interest" with respect to Robert Rovner, who is the other member of the proposed (and now rejected) Cosmos Group. Robert Rovner is married to Sherrie Savett, a partner in Berger & Montague, the law firm that is Cosmos's proposed lead counsel. The Chesson Group and Genesee argue that Rovner's personal interests, due to his wife's role as class counsel, would necessarily conflict with his duty to the class as lead plaintiff. We agree that this would constitute a conflict that would preclude Rovner from fairly and adequately protecting the interests of the class.
>
> The Chesson Group takes the conflict argument a step further, objecting to Cosmos/Dr. Sharma's adequacy on the same basis and arguing that "Mr. Sharma should attest to whether his counsel alerted him to the conflict and if he gave informed consent to waive the conflict prior to filing his motion." (Chesson's Reply at 6.) We are unpersuaded.

We will appoint Cosmos, as managed by Dr. Sharma, to serve as lead plaintiff.

C. *Appointment of Lead and Liaison Counsel*

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Cosmos has selected Berger & Montague, P.C. ("Berger & Montague") as lead counsel and Much Shelist Freed Denenberg Ament & Rubenstein, P.C. ("Much Shelist") as liaison counsel. Both firms have substantial experience in securities class action litigation. (Declaration of Douglas Risen in Support of Cosmos's Motion, Exs. D & E, Firm Biographies.)

*7 Cosmos's motion, however, contains no information regarding the anticipated staffing of this case or proposed attorneys' fees for lead and liaison counsel. Courts in this district have taken these factors into account in the decision to approve counsel selected by a lead plaintiff. See *Taubenfeld*, 2004 WL 554810, at *5 (citing cases). Accordingly, counsel for lead plaintiff is instructed to submit a memorandum on anticipated staffing and attorneys' fees for the court's consideration. Among the matters the memorandum should address is the need for separate counsel to serve as "liaison." We will have to be persuaded that lead counsel is unable to perform all functions that are necessary to

the efficient representation of the class. The fact that it has been customary to appoint liaison counsel in class actions is not a reason to do it here. We have stopped doing it, with no discernible ill effects. The memorandum should also discuss the question of whether the fee should be based on a percentage of recovery, rather than "lodestar," and, if so, what percentage(s).

*CONCLUSION*

The motion of the Cosmos Group for appointment as lead plaintiff is denied in part, to the extent that it seeks appointment of the Cosmos Group as a whole, and granted in part, to the extent that the court appoints Cosmos Investment Company, LLC, managed by Dr. Lokesh Sharma, as lead plaintiff. The court reserves ruling on the appointment of class counsel. Cosmos is directed to submit a brief that addresses proposed staffing and attorneys' fees by April 4, 2005. If Bally wishes to comment, it may do so by April 15, 2005.

The motions of Genesee, the Carltons, the Chesson Group, and the Pitcher Group are denied.

A status hearing in this case is set for April 20, 2005, at 10:30 a.m.

N.D.Ill.,2005.

In re Bally Total Fitness Securities Litigation

2005 WL 627960 (N.D.Ill.)

### Motions, Pleadings and Filings (Back to top)

• 2004 WL 2817018 (Trial Motion, Memorandum and Affidavit) Amended Reply Memorandum of Law in Further Support of Motion to Appoint Earl G. Chesson, Richard J. Jaffke and Timothy Weise as Lead Plaintiffs and to Approve Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel (Oct. 14, 2004)

• 2004 WL 2817012 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law of the Genesee County Employees' Retirement System in Further Support for Its Motion for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Oct. 13, 2004)

• 2004 WL 2817028 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Cosmos Group's Motion for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to the Other Motions (Oct. 13, 2004)

• 2004 WL 2817035 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of Motion to Appoint Earl G. Chesson, Richard J. Jaffke and Timothy Weise as Lead Plaintiffs and to Approve Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel (Oct. 13, 2004)

• 2004 WL 2816998 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of Motion Appoint Earl G. Chesson, Richard J. Jaffke and Timothy Weise as Lead Plaintiffs, to Approve Lead Plaintiff' Selection of Lead Counsel and Liaison Counsel, and in Opposition to Competing Motions (Sep. 29, 2004)

• 2004 WL 2817005 (Trial Motion, Memorandum and Affidavit) Memorandum of Law of the Genesee County Employees' Retirement System in Opposition to Competing Motions for Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel (Sep. 29, 2004)

• 2004 WL 2816962 (Trial Motion, Memorandum and Affidavit) Defendants' Response to Motions for the Appointment of Lead Plaintiff (Aug. 30, 2004)

• 2004 WL 2816977 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further Support of the Cosmos Group's Motion for Consolidation, for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and in Opposition to the Other Motions (Aug. 16, 2004)

• 2004 WL 2817862 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Laws (Jul. 19, 2004)

• 2004 WL 1608748 (Trial Pleading) Class Action Complaint & Jury Trial Demand (Jun. 09, 2004)

• 2004 WL 2817705 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (Jun. 07, 2004)

• 2004 WL 2817430 (Trial Pleading) Class Action Complaint for Violations of the Federal Securities Laws (Jun. 04, 2004)

• 2004 WL 2814848 (Trial Pleading) Class Action Complaint (Jun. 02, 2004)

• 2004 WL 2818203 (Trial Pleading) Class Action Complaint for Violations of Federal Securities Laws (May. 25, 2004)

• 2004 WL 2237645 (Trial Pleading) Class Action Complaint (May. 20, 2004)

• 2004 WL 2816949 (Trial Pleading) Class Action Complaint (May. 20, 2004)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# 2

2002 WL 356760 (W.D.Wash.), Fed. Sec. L. Rep. P 91,682

**Motions, Pleadings and Filings**

United States District Court, W.D. Washington.
Connie D. CRAWFORD, on behalf of herself and all other similarly situated,
Plaintiffs,
v.
ONYX SOFTWARE CORPORATION, et al., Defendants.
No. C01-1346L.
Jan. 10, 2002.

ORDER APPOINTING LOUISIANA SHERIFF'S PENSION & RELIEF FUND AS LEAD PLAINTIFF

LASNIK, District J.
*1 This matter comes before the Court on "The Louisiana Sheriff's Pension & Relief Fund's Motion for Appointment as Lead Plaintiff and for Appointment of Lead Counsel" and the "Motion of John R. Peterson to Consolidate Related Actions, to Appoint Lead Plaintiff and to Appoint Lead and Liaison Counsel." The two plaintiffs' groups seek appointment as lead plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PLSRA"), which requires that the Court determine which member or members of the plaintiff class is most capable of adequately representing the absent class members' interests. 15 U.S.C. §§ 77z-1 and 78u-4. Having reviewed the competing motions for appointment as lead plaintiff, considered the arguments of counsel in open court on January 10, 2002, and made certain oral findings on the record which are hereby incorporated, the Court finds as follows:
(1) Consolidation of all claims arising out of the sale of Onyx Software Corporation stock between January 10, 2001, and August 10, 2001, inclusive, is appropriate. Pursuant to Fed.R.Civ.P. 42(a) and 15 U.S.C. § 78u-4(a)(3)(B)(ii), the following actions are hereby consolidated for all purposes:
*Crawford v. Onyx Software Corporation, et al.,* C01-1346L;
*Little v. Onyx Software Corporation, et al.,* C01-1509L;
*Gordon v. Onyx Software Corporation, et al.,* C01-1556L;
*Skirball v. Onyx Software Corporation, et al.,* C01-1567L;
*Weinstein v. Onyx Software Corporation, et al.,* C01-1601L; and
*Capelli v. Onyx Software Corporation, et al.,* C01-1690L.
Every pleading filed in this consolidated action shall bear the following caption:

```
      UNITED STATES DISTRICT COURT
    WESTERN DISTRICT OF WASHINGTON
            AT SEATTLE

----------------------    )
                          )
IN RE: ONYX SOFTWARE,     )  No. C01-1346L
CORPORATION               )
                          )
                          )
----------------------
```

Counsel shall make efforts to identify all cases, other than those listed above, which might properly be consolidated as part of this action, whether the cases are currently pending before the Court or are later filed in or transferred to this district.
(2) If any other actions on behalf of a class asserting substantially the same claim or claims against Onyx Software Corporation are identified, lead counsel shall notify the Court and serve a copy of this Order on the attorneys for plaintiff(s) and any new defendant(s) in the newly identified case. The case shall then be consolidated under Cause No. 01-1346L and the terms of this Order shall apply unless a party in the newly identified case files, within ten (10) days after the date upon which a copy of this Order is served on them, an application for relief from this Order or any provision herein and the Court deems it appropriate to grant such application.
(3) Pursuant to 15 U.S.C. §§ 77z-1(a)(3)(A)(i) and 78u-4(a)(3)(A)(i), plaintiff in the action entitled

*Crawford v. Onyx Software Corp., et al.,* published a notice of pendency of the action over the
*Business Wire* on August 30, 2001.
**\*2** (4) Pursuant to 15 U.S.C. §§ 77z-1(a)(3)(A)(i)(II) and 78u-4(a)(3)(A)(i)(II), the LSPRF, John
Peterson, and the Skirball Group filed timely applications to be appointed lead plaintiff(s).
(5) The alleged losses suffered by LSPRF are approximately $77,400 and are greater than the losses
suffered by either John Peterson (approximately $60,000) or the Skirball Group (approximately
$25,000).
(6) Plaintiffs Peterson, Skirball, and Wunsch's aggregation of their claims in an attempt to show that
they have the largest financial interest in this litigation is not convincing in light of the purposes of the
PSLRA. A loose group of investors whose relationship was forged only in an effort to win appointment
as lead plaintiff has no real cohesiveness, is less likely to be in control of the litigation, and is subject
to all of the obstacles that normally make group action difficult. Even though the Peterson Group
consists of only three individuals, their decision making requires either (a) levels of coordination,
negotiation, and collective action which far exceed that which would be necessary of an individual
litigant or (b) undue control by their lawyer-representatives.
(7) Whether plaintiffs Peterson, Skirball, and Wunsch could satisfy the typicality requirement of
Fed.R.Civ.P. 23 is doubtful. None of the individual plaintiffs purchased stock directly in Onyx'
secondary offering. Their claims for violation of Sections 11 and 12(2) of the Securities Act of 1933
may, therefore, be susceptible to defenses not applicable to other class members, such as LSPRF.
(8) Pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B) and 78u-4(a)(3)(B), LSPRF is most capable of
adequately representing the interests of absent class members and is hereby appointed as lead
plaintiff in the consolidated actions.
(9) Pursuant to 15 U.S.C. §§ 77z-1(a)(3)(B)(v) and 78u-4(a)(3)(B)(v), LSPRF has selected the law
firms of Bernstein Litowitz Berger & Grossman LLP and Hagens Berman LLP to act as co-lead counsel.
Those selections are hereby approved.
(10) Lead counsel shall have the following responsibilities and duties, to be carried out either
personally or through counsel whom lead counsel shall designate:
a. to coordinate the briefing and argument of any and all motions;
b. to coordinate the conduct of any and all discovery proceedings;
c. to coordinate the examination of any and all witnesses in depositions;
d. to coordinate the selection of counsel to act as spokesperson at all pretrial conferences and
hearings;
e. to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to
time;
f. to coordinate all settlement negotiations with counsel for defendants;
g. to coordinate and direct the pretrial discovery proceedings, the preparation for trial, the trial, and
the post-trial proceedings in this matter;
h. to coordinate the preparation and filings of all pleadings; and
i. to supervise all other matters concerning the prosecution or resolution of the consolidated actions.
**\*3** (11) No motion, discovery request, or other pretrial proceedings shall be initiated or filed by any
plaintiff without the approval of lead counsel, so as to prevent duplicative pleadings or discovery by
plaintiffs. No settlement negotiations shall be conducted without the approval of lead counsel.
(12) Lead counsel shall be the contact between plaintiffs' counsel and defendants' counsel, as well as
the spokesperson for all plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs'
counsel.
(13) Lead counsel shall be the contact between the Court and plaintiffs and their counsel.
(14) Lead counsel shall have the responsibility of receiving and disseminating Court orders and
notices. Defendants shall effect service of papers on plaintiffs by serving copies on both lead counsel
by overnight delivery service, telecopy, or hand delivery. Plaintiffs shall effect service of papers on
defendants by serving copies on each of their counsel by overnight delivery service, telecopy, or hand
delivery.
For all of the foregoing reasons, "The Louisiana Sheriff's Pension & Relief Fund's Motion for
Appointment as Lead Plaintiff and for Appointment of Lead Counsel" is GRANTED and the "Motion of
John R. Peterson to Consolidate Related Actions, to Appoint Lead Plaintiff and to Appoint Lead and
Liaison Counsel" is DENIED. The Clerk of Court is directed to consolidate and alter caption as
described in paragraph (1) of this Order.
W.D.Wash.,2002.
Crawford v. Onyx Software Corp.

2002 WL 356760 (W.D.Wash.), Fed. Sec. L. Rep. P 91,682

## Motions, Pleadings and Filings (Back to top)

• 2:01CV01346 (Docket) (Aug. 30, 2001)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.



Tools

3

Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 19517**

*2000 U.S. Dist. LEXIS 19517, *; Fed. Sec. L. Rep. (CCH) P91,318*

IN RE: E.SPIRE COMMUNICATIONS, INC., SECURITIES LITIGATION

CIVIL NO. H-00-1140 (Consolidated)    | 2000 U.S. Dist. LEXIS 19517 |

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND

2000 U.S. Dist. LEXIS 19517; Fed. Sec. L. Rep. (CCH) P91,318

August 15, 2000, Decided
August 15, 2000, Filed

**DISPOSITION: [*1]** Gleason's motion granted, Matasea Group's motion denied, and Tawfik Movants' motion denied.

## CASE SUMMARY

**PROCEDURAL POSTURE:** In a consolidated class action by shareholders claiming securities fraud, three separate motions for the appointment of a lead plaintiff and for the approval of the selection of lead counsel were presented to the court.

**OVERVIEW:** Ten putative class action suits asserting securities fraud claims against defendant corporation were consolidated into one action. Three shareholder plaintiffs separately moved for appointment of lead plaintiff. The court ordered the appointment of the plaintiff who alleged the largest individual loss and who was represented by a single law firm. The court determined that this particular plaintiff was the most adequate plaintiff to represent the interests of the class and that he satisfied the requirements of the Private Securities Litigation Reform Act. For lead counsel, the court ordered the appointment of the law firm who represented this particular plaintiff.

**OUTCOME:** The court appointed lead plaintiff status to the plaintiff who alleged the largest individual loss and who was represented by a single law firm.

**CORE TERMS:** lead counsel, investor, appointment, largest, financial interest, unrelated, appoint, coordinate, aggregate, class action, aggregation, liaison, appointed, law firm, stock, securities fraud, consolidated, Exchange Act, shareholders, serving, delivery, referred to collectively, rebuttable presumption, exercise control, reasons stated, artificial, enacting, retainer, lawsuit, aligned

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Securities Law > Bases for Liability > Private Securities Litigation 🔎

*HN1* ⤴ The Private Securities Litigation Reform Act (PSLRA) directs the court to appoint as lead plaintiff the member or members of the purported class that the court determines to be most capable of adequately representing the interests of the class. 15 U.S.C.S. § 78u-4 (a) (3) (B) (i). The PSLRA creates a rebuttable presumption that the most adequate plaintiff is the person or group of persons that - (aa) has either filed the complaint or made a motion in response to a notice; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a) (3) (B) (iii) (I). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN2* ⊥ The Private Securities Litigation Reform Act (PSLRA) states that a court shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the class. 15 U.S.C.S. § 78u-4(a) (3) (B) (i). Moreover, when choosing the lead plaintiff, the court should appoint the "person or group of persons" that meets the rebuttable presumption requirements. 15 U.S.C.S. § 78u-4(a) (3) (B) (iii) (I). The PSLRA permits but does not require the appointment of multiple plaintiffs to manage PSLRA litigation. Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. A "rule of reason" should prevail.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN3* ⊥ The Private Securities Litigation Reform Act provides that the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(v).  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN4* ⊥ Congress included in the Private Securities Litigation Reform Act the provision creating the rebuttable presumption that the person or groups of persons with the largest financial interests in the relief sought by the class would be the most adequate lead plaintiff.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN5* ⊥ Both the context and the structure of the Private Securities Litigation Reform Act demonstrate that a group of persons, within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN6* ⊥ Multiple investors serving as lead plaintiff, although permissive, is a suboptimal result when compared to having a single investor serve as lead plaintiff.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN7* ⊥ The larger the number of proposed lead plaintiffs, the greater the dilution of control that those plaintiffs can maintain over the conduct of the putative class action.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN8* ⊥ The presumption may be rebutted with evidence that such lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(II).  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation 🔍

*HN9* ⊥ Pursuant to the Private Securities Litigation Reform Act the lead plaintiff has the right to select class counsel, subject to the approval of the court. 15 U.S.C.S. § 78u-4(a)(3)(B)(v).  More Like This Headnote

**COUNSEL:** For MITCHELL KRANES, plaintiff: Robert A. Rohrbaugh, Law Office, Rockville, MD. Robert I. Harwood, Wechsler Harwood Halebian and Feffer LLP, New York, NY. Jeffrey Block, Berman, DeValerio & Pease, LLP, Boston, MA. Frederick W. Gerkens, III, Matthew M. Houston, Wechsler Harwood Halebian and Feffer LLP, New York, NY. Joshua G. Gerstin, Law Office, Boca Raton, FL.

For PAT EDWARD PIRRAGLIA, VINCENT MATASSA, DOUGLAS SCHIESSWOHL, RICHARD LA GRECA, RICHARD S. INGARDIA, consolidated plaintiffs: Robert A. Rohrbaugh, Law Office, Rockville, MD.

For CHARLES P. DANIELS, consolidated plaintiff: Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD. Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman and Herz, New York, NY.

For PHILIP Z. ANDREWS, GARY KULAK, consolidated plaintiffs: Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD. Jeffrey Block, Berman, DeValerio & Pease, LLP, Boston, MA.

For CHAIM KLEIN, consolidated plaintiff: Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For EZREIL TAUBER, FREDERIC M. HESSER, **[*2]** STEPHEN HESSER, consolidated plaintiffs: Robert A. Rohrbaugh, Law Office, Rockville, MD. Joseph H. Weiss, Law Office, New York, NY.

For MARKET STREET SECURITIES, INC., consolidated plaintiff: Fred Taylor Isquith, Wolf, Haldenstein, Adler, Freeman and Herz, New York, NY. Burton Finkelstein, Finkelstein, Thompson & Loughran, Washington, DC. Donald J. Enright, Finkelstein, Thompson & Loughran, Washington, DC.

For ANTHONY J. POMPLIANO, defendant: Andrew Marc Herscowitz, Brobeck Phleger & Harrison, LLP, Washington, DC. John B. Missing, Brobeck Phleger & Harrison, Washington, DC. Ronit Setton, Law Office, New York, NY. Brian D. Roche, Law Office, Chicago, IL. Randi B. Guest, Law Office, New York, NY.

For DAVID L. PIAZZA, DOUGLAS R. HUDSON, E. SPIRE COMMUNICATIONS, INC., defendants: Andrew Marc Herscowitz, Brobeck Phleger & Harrison, LLP, Washington, DC. John B. Missing, Brobeck Phleger & Harrison, Washington, DC. Ronit Setton, Law Office, New York, NY. Randi B. Guest, Law Office, New York, NY.

For PATRICIA TAWFICK, JACK TAWFIK, movants: John B. Isbister, Tydings and Rosenberg, Baltimore, MD. Robert B. Weiser, Law Office, Bala Cynwyd, PA.

For THOMAS GLEASON, movant: **[*3]** Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD.

For ING EQUITY PARTNERS, L.P.I., BENJAMIN P. GIESS, OLIVER L. TROUVEROY, defendants: Joseph De Simone, Richard Spehr, Ryan Farley, Law Office, New York, NY.

**JUDGES:** Alexander Harvey, II, Senior United States District Judge.

**OPINIONBY:** Alexander Harvey, II

**OPINION:** MEMORANDUM OPINION

Pending in this Court are 10 putative class action suits asserting securities fraud claims against E.Spire Communications, Inc. ("E.Spire") and certain of its officers and/or directors.

Suit has been brought on behalf of shareholders of E.Spire who are seeking damages for violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended, 15 U.S.C. § 78t(a) and 78j(b), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. Jurisdiction is alleged to exist pursuant to 28 U.S.C. § 1331. An Order has recently been entered by the Court consolidating these actions for all purposes pursuant to Rule 42(a), F.R.Civ.P.

Currently before the Court at this early stage of these proceedings are three separate motions for the appointment of a lead plaintiff [*4] or lead plaintiffs and for the approval of the selection of lead counsel, pursuant to § 21D(a)(3) of the Exchange Act, as amended, 15 U.S.C. § 78u-4(a)(3). One motion has been filed by class member Thomas Gleason both on his own behalf and on behalf of his wife, Anna Powers (referred to collectively as "Gleason"). A second motion has been filed by five class members, namely, Vincent Matassa, Douglas Schiesswohl. Chaim Klien, Richard La Greca and Richard Ingardia (referred to collectively as the "Matassa Group"). A third motion has been filed by two class members, namely, Jack Tawfik and his wife Patricia Tawfik (referred to collectively as the "Tawfik Movants"). Memoranda and exhibits in support of and in opposition to the motions have been filed. A hearing on the motions has been held in open court. For the reasons stated herein, this Court will grant Gleason's motion, will deny the Matassa Group's motion, and will deny the Tawfik Movants' motion.

I

Procedural History

On April 19, 2000, plaintiff Mitchell Kranes filed the first of these ten securities fraud class action suits in this Court against E.Spire and certain of its officers and directors (collectively [*5] the "defendants"), alleging violations of Sections 10(b) and 20(a) of the Exchange Act and Rule 10b-5. These suits were brought on behalf of individuals purchasing E.Spire stock between August 12, 1999 and March 30, 2000 (the "Class Period").

Pursuant to 15 U.S.C. § 78u-4(a)(3)(A)(i), notices that these class actions had been initiated against the defendants were published over widely circulated national business oriented wire services, advising members of the proposed class of their right to move this Court to serve as lead plaintiff no later than 60 days from April 19, 2000. Three separate motions for the appointment of lead plaintiff or lead plaintiffs have now been filed. The first of these motions was filed by Gleason, n1 the second by the Matassa Group, and the third by the Tawfik Movants. On August 8, 2000, this Court consolidated the ten pending class actions which now comprise one consolidated class action. n2

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -

n1 Although Thomas Gleason and his wife Anna Powers both purchased E.Spire stock during the Class Period, Thomas Gleason controls Anna Powers' account, and, under such circumstances, only Thomas Gleason has moved to be appointed lead plaintiff. [*6]

n2 The civil action numbers of the ten class actions are as follows: Civil Nos. H-00-1140, H-00-1169, H-00-1212, H-00-1371, H-00-1373, H-00-1420, H-00-1421, H-00-1556, H-00-1833, and H-00-1924. The cases have been consolidated as Civil No. H-00-1140.

- - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

II

Background Facts

E.Spire is a Delaware Corporation whose principal place of business during most of the Class Period was Annapolis, Maryland. On February 24, 2000, E.Spire moved its headquarters to Virginia. E.Spire is a facilities-based integrated communications provider to businesses in thirty-five markets around the United States.

Plaintiffs have alleged that during the Class Period, the defendants engaged in a scheme and course of conduct to defraud or deceive investors by utilizing improper accounting methods to overstate E.Spire's earnings for the fiscal year 1999. It is alleged that E.Spire's actual earnings were substantially overstated, causing plaintiffs and other class members to purchase E.Spire common stock at artificially inflated prices. During the Class Period, Gleason and his wife purchased 98,500 shares of E.Spire stock, **[*7]** members of the Matassa Group purchased an aggregate number of 63,800 shares of E.Spire stock, and the Tawfik Movants purchased 55,000 shares of E.Spire stock.

On March 30, 2000, E.Spire announced that it was reducing its stated 1999 revenues by $ 12,300,000 "to comply with prevailing accounting principles." E.Spire also announced at that time that it was not in compliance with certain debt covenants. Following these announcements, E.Spire's stock dropped by thirty-eight percent over a two-day period. As the result of defendants' actions, Gleason has alleged that he and his wife suffered losses amounting to $ 401,700, the Matassa Group has alleged aggregate losses of $ 520,704, n3 and the Tawfik Movants have alleged losses of $ 270,376.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - -


n3 Although the Matassa Group did not specify the losses suffered by each of its members individually, it did note that Vincent Matassa suffered the greatest loss, estimated at $ 152,382, and that Richard Ingardia suffered the smallest loss, estimated at $ 69,608. The Matassa Group has further indicated that each of the five individuals comprising the Matassa Group lost an average of $ 104,141.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - - **[*8]**

III

Applicable Principles of Law

In 1995, Congress enacted the Private Securities Litigation Reform Act (the "PSLRA"), the purpose of which was to remedy perceived abuses in securities class action litigation. In re Milestone Scientific Secs. Litig., 183 F.R.D. 404, 411 (D.N.J. 1998) (citations omitted). Among other things, Congress was concerned that the lead plaintiff in class action lawsuits was being determined by a race to the courthouse undertaken by plaintiffs' lawyers. See S.Rep. No. 104-98 (1995), reprinted in 1996 U.S.C.C.A.N. at 679. In enacting the PSLRA, Congress intended to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection of counsel." See H.R.Rep. No. 104-369, at 32 (1995), reprinted in 1996 U.S.C.C.A.N. at 731.

*HN1*⚓The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported class that the court determines to be most capable of adequately representing the interests of the class." See 15 U.S.C. § 78u-4 **[*9]** (a) (3) (B) (i). The PSLRA creates a

"rebuttable presumption . . . that the most adequate plaintiff . . . is the person or group of persons that - (aa) has either filed the complaint or made a motion in response to a notice . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." See 15 U.S.C. § 78u-4(a) (3) (B) (iii) (I).

It appears that courts applying the PSLRA are divided over whether multiple class members may aggregate their losses in order to satisfy the statutory requirement that the lead plaintiff be "the person or group of persons . . . [with] the largest financial interest in the relief sought by the class." Compare In re Donnkenny, Inc. Secs. Litig., 171 F.R.D. 156, 157-58 (S.D.N.Y. 1997) (concluding that the single plaintiff with the largest financial interest in the action should be appointed lead plaintiff) with In re Advanced Tissue Sciences Sec. Litig., 184 F.R.D. 346, 353 (S.D.Cal. 1998) (allowing the aggregation of six plaintiffs) and In re Oxford Health Plans, Inc. Secs. Litig., 182 F.R.D. 42, 45-48 (S.D.N.Y. 1998) **[*10]** (appointing three plaintiffs as lead plaintiffs). Courts permitting the aggregation of claims by multiple plaintiffs have done so because the PSLRA allows a court to appoint more than one lead plaintiff. In pertinent part, $^{HN2}$ the PSLRA states that a court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing" the class. See 15 U.S.C. § 78u-4(a) (3) (B) (i). Moreover, when choosing the lead plaintiff, the court should appoint the "person or group of persons" that meets the rebuttable presumption requirements. See 15 U.S.C. § 78u-4(a) (3) (B) (iii) (I). It is thus apparent that the PSLRA permits but does not require the appointment of multiple plaintiffs to manage PSLRA litigation. Because the PSLRA does not recommend or delimit a specific number of lead plaintiffs, the lead plaintiff decision must be made on a case-by-case basis, taking account of the unique circumstances of each case. In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 49. A "rule of reason" should prevail. Chill v. Green Tree Financial Corp., 181 F.R.D. 398, 409 (D. Minn. 1998); **[*11]** In re Milestone Scientific Sec. Litig., 183 F.R.D. at 417.

Some courts have recognized the inherent tension between the PSLRA's express purpose of preventing lawyer-driven securities litigation and the express language of the statute. In Yousefi v. Lockheed Martin, 70 F. Supp. 2d 1061 (C.D.Cal. 1999), the court discussed this very issue, stating:

> Although the legislative history [of the PSLRA] stresses the need to place control of securities class actions in a small and finite number of plaintiffs, the statute's language explicitly provides for more than one lead plaintiff, altogether failing to limit the number of lead plaintiffs a court may employ . . . This tension's import is that Congress desired the Act to mitigate abusive litigation tactics, in contrast to serving as an antidotal measure. Examining the Act through its palliative lense, the Court finds that it contemplates the aggregation of unrelated plaintiffs as a permissible, albeit suboptimal, result. (Emphasis added).

Id. at 1068 (citations omitted).

Similarly, in In re Telxon Corp. Secs. Litig., 67 F. Supp. 2d 803, (N.D.Ohio 1999), **[*12]** the court stated:

This Court agrees that the context and structure of the PSLRA evince an intent
that a "group" [of persons] consist of more than a mere assemblage of unrelated
persons who share nothing in common other than the twin fortuities that (1) they
suffered losses and (2) they entered into retainer agreements with the same
attorneys. The PSLRA does allow more than one person to serve as lead plaintiff;
it would be inconsistent with the PSLRA's facial disapproval of multiple plaintiffs,
and its persistent use of the singular terms person and plaintiff, however, to
allow a melange of unrelated persons to serve as the lead plaintiff . . . (Emphasis
in original).

Id. at 813.

In Sakhrani v. Brightpoint, Inc., 78 F. Supp. 2d 845, 846 (S.D.Ind. 1999), the Court noted
that "where the members of the group do not share business or other relationships
independent of the lawsuit, however, this court concludes that appointment of such an
artificial group of persons as lead plaintiffs should be rare under the PSLRA."

$^{HN3}$The PSLRA also provides that "the most adequate plaintiff shall, subject to the approval
of the court, select and **[*13]** retain counsel to represent the class." See 15 U.S.C. § 78u-4
(a)(3)(B)(v).

IV

Discussion

The Matassa Group contends that it satisfies all the requirements of the PSLRA with regard to
the Court's selection of a lead plaintiff or lead plaintiffs and that the members of its group are
the best candidates to serve as lead plaintiffs. Noting that it has the largest aggregate
financial stake in the case of all the parties seeking appointment as lead plaintiff, the Matassa
Group claims that its members are precisely the sort of lead plaintiffs envisioned by the
PSLRA, namely a small and manageable group of financially motivated investors who will
vigorously prosecute the pending actions against the defendants. According to the Matassa
Group, the PSLRA expressly allows for the aggregation of the amount of losses suffered by
individual investors and that, as a result of such aggregation, the Matassa Group possesses a
larger financial interest in the relief being sought than the other two competing groups
seeking appointment as lead plaintiff.

The Tawfik Movants in turn argue that they satisfy all the requirements of the PSLRA with
regard to the selection **[*14]** of lead plaintiffs and that they are best suited to serve in this
capacity. They object to the Court's selection of the Matassa Group, noting that the size of
that group's financial stake is solely the result of an artificial grouping of unrelated investors
by attorneys for the sole purpose of being appointed lead counsel. According to the Tawfik
Movants, such a grouping is in direct contravention to the intention of Congress in enacting
the PSLRA.

Gleason maintains that he should be selected as the most adequate lead plaintiff. He notes
that he has the largest financial interest of any single investor in the relief sought by the
class, having suffered losses of $ 401,700. Gleason contends that he should be found to be
the more adequate lead plaintiff over the Tawfik Movants since they suffered losses of only $
270,376. According to Gleason, the Matassa Group consists of five unrelated investors who
were randomly brought together through the actions of two different law firms. Gleason
argues that such an aggregation is contrary to the intent of Congress in passing the PSLRA

which sought to curb the proliferation of lawyer-driven securities fraud litigation. As a single investor with **[*15]** the largest financial stake, Gleason argues that he should be preferred over the Matassa Group.

Applying the principles of the PSLRA and the many pertinent decisions construing it, this Court has concluded that the Gleason motion should be granted and that the motions of the Matassa Group and the Tawfik Movants should be denied. The circumstances here are quite different from those present in many cases cited by the parties. Here, only individual investors are involved. Counsel for the Matassa Group argue that the overwhelming majority of courts addressing the issue have appointed groups of lead plaintiffs in securities fraud actions. The Court would note that Congress has expressed its preference that securities fraud litigation be directed by large institutional investors. Gluck v. Cellstar Corp., 976 F. Supp. 542, 548 (N.D. Tex. 1997). Most of the cases relied upon by the Matassa Group involve the appointment of multiple lead plaintiffs in which one or more of the group selected was an institutional investor. See e.g., In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 45; In re Milestone Scientific Sec. Litig., 183 F.R.D. at 406; **[*16]** Zaltzman v. Manugistics Group, Inc., 1998 U.S. Dist. LEXIS 22867 at *18. Since only individual investors are involved in this consolidated case, the determinations made in those cases are inapposite.

The primary issue presented by the pending motions concerns the statutory presumption that the most adequate plaintiff is the "person or group of persons that. . .has the largest financial interest in the relief sought." § 78u-4(a) (3) (B) (iii) (I). Clearly, the Tawfik Movants are not the most adequate plaintiffs because they do not possess the largest financial interest in the relief sought. The Tawfik Movants, who are husband and wife investors in E.Spire, have alleged losses of $ 270,376. Gleason has alleged losses of $ 401,700. Whether or not the Matassa Group is deemed by this Court to possess the largest financial interest in this action because their aggregate losses amount to $ 520,704, it is clear that Gleason, as a single investor, must be presumed more adequate than the Tawfik Movants, since Gleason's losses were greater than those of the Tawfik Movants. Accordingly, this Court's choice as to lead plaintiff must essentially be made between Gleason and the **[*17]** Matassa Group.

As previously noted, the PSLRA was enacted by Congress to remedy certain perceived abuses in securities class action litigation. In re Milestone Scientific Sec. Litig., 183 F.R.D. at 411. Specifically, Congress sought by enacting the PSLRA to "increase the likelihood that parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the selection of counsel." See H.R.Rep. No. 104-369, at 32. To this end, *HN4*Congress included in the PSLRA the provision creating the rebuttable presumption that the person or groups of persons with the largest financial interests in the relief sought by the class would be the most adequate lead plaintiff.

By its inclusion of the phrase "group of persons," it is apparent that Congress did not intend to preclude multiple plaintiffs in securities class actions from aggregating their losses to satisfy the "largest financial interest" prong of the PSLRA presumption concerning the most adequate lead plaintiff. In re Advanced Tissue Sciences, 184 F.R.D. at 353; In re Oxford Health Plans, Inc. Sec. Litig., 182 F.R.D. at 45-48. **[*18]** Nevertheless, by allowing any group of plaintiffs to aggregate their losses to satisfy the "largest financial interest" prong of the presumption, a court runs the risk that attorneys will seek to put together a group of unrelated plaintiffs for the sole purpose of having that group qualify as the group with the "largest financial interest," in turn leading to such attorneys' appointment as lead counsel. Recognizing this risk and its inconsistency with the PSLRA, courts have held that *HN5*both the context and the structure of the PSLRA demonstrate that a "group of persons," within the meaning of the statute, should consist of more than a mere assemblage of unrelated persons who share nothing other than the fact that they suffered losses and entered into retainer agreements with the same attorneys. In re Texlon Corp. Sec. Litig., 67 F. Supp. 2d at 813;

see also <u>Sakhrani, 78 F. Supp. 2d at 846.</u>

With these principles in mind, this Court will appoint Gleason as lead plaintiff, even though the Matassa Group's aggregate losses of $ 520,704 surpass those of Gleason. The Matassa Group was formed when one set of unrelated plaintiffs who were represented by the law **[*19]** firm of Finkelstein, Thompson & Lougham decided to aggregate their losses with another set of unrelated plaintiffs represented by the law firm of Wechsler Harwood Halebian & Feffer, LLP. Other than the fact that all five individual investors have suffered losses and have signed retainer agreements with the aforementioned law firms, the record here does not indicate that the members of the Matassa Group share any business or other relationships independent of this lawsuit.

This Court concludes that the Matassa Group is the precise type of group whose appointment as lead plaintiffs "should be rare." <u>Sakhrani, 78 F. Supp. 2d at 846.</u> As formed, the Matassa Group is an artificial one, and it has not been shown that the members share business or other relationships. Had the Matassa Group been able to show that its members had a relationship with each other based upon factors independent of this class action, there would then be more support for their argument that they should be presumed to be the most adequate lead plaintiff. However, they have failed to show that they are a "cohesive group," foreclosing their appointment as the most adequate lead plaintiffs. <u>In re Milestone Scientific Sec. Lit., 183 F.R.D. at 417.</u> **[*20]**

In this action, Gleason, an individual investor represented by a single law firm, has asked to be appointed lead plaintiff. He satisfies all the statutory requisites for such appointment, having suffered substantial losses. The fact that Gleason alone has suffered over $ 400,000 in losses, $ 250,000 more than the losses claimed by any one individual investor in the Matassa Group, ensures that he will vigorously prosecute this consolidated action against defendants. Furthermore, Gleason's interests in this action are likely to be similar to those of the other class members because, as Congress has noted, "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, [are more likely to] participate in the litigation and [to] exercise control over counsel." See H.R.Rep. No. 104-369, at 32.

While the Matassa Group claims that the appointment of a small group of individual investors as lead plaintiffs is preferred by courts over the appointment of a single lead plaintiff, the case law supporting such a proposition is entirely lacking. In none of the cases cited by the Matassa Group has a court appointed multiple individual **[*21]** investors as lead plaintiffs rather than one individual investor who sought the appointment. Quite to the contrary, it has been held that <sup>HN6</sup> multiple investors serving as lead plaintiff, although permissive, is a "suboptimal" result when compared to having a single investor serve as lead plaintiff. <u>Yousefi, 70 F. Supp. 2d at 1068.</u>

The assertion can reasonably be made that <sup>HN7</sup> the larger the number of proposed lead plaintiffs, the greater the dilution of control that those plaintiffs can maintain over the conduct of the putative class action. <u>In re Milestone Scientific Sec. Litg., 183 F.R.D. at 417</u> (citing <u>Chill, 181 F.R.D. at 409).</u> Such dilution of control can be readily expected in a consolidated case like this one in which members of the Matassa Group have retained two separate law firms to represent them. Particularly in this case, multiple lead plaintiffs like members of the Matassa Group would be hampered in their collective ability to supervise the conduct of counsel. Id. Not only is its group diverse, but the Matassa Group has evidenced that it is either "unable or unwilling to agree on a single counsel to act on its behalf and **[*22]** serve as its voice." <u>In re Telxon Corp. Secs. Litig., 67 F. Supp. 2d at 815.</u> Furthermore, where more than one person is involved as lead plaintiff, additional costs must be incurred for intragroup communication and monitoring. This Court is not persuaded that a larger group, which claims to have suffered the largest loss because of a mechanical aggregation of those losses and which is represented by two different law firms, should be

preferred over a single investor, who has alleged the largest individual loss and who is represented by a single law firm.

The arguments presented by the Matassa Group in support of their contention that this Court should not appoint a single lead plaintiff are conjectural. Nothing in the record here supports the assertion that Gleason might be unwilling or potentially unable at a later date to vigorously prosecute this action on behalf of a class of plaintiffs. Taken to their logical extreme, arguments of this sort, if accepted by a court, would essentially result in determinations that groups should always be preferred over a single investor, even where the single investors had a larger financial interest in the litigation than the group. **[*23]** There is no objective support in the record for any of these arguments which are totally speculative and will be rejected.

This Court finds and concludes that, as the individual coming forward as a lead plaintiff who has suffered the largest individual loss, Thomas Gleason is entitled to the statutory presumption of appointment as lead plaintiff. *HN8*⊀This presumption may be rebutted with evidence that such lead plaintiff will not fairly and adequately protect the interests of the class or is subject to unique defenses that render him incapable of adequately representing the class. See 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Neither the Matassa Group nor the Tawfik Movants have offered evidence rebutting Thomas Gleason's ability to represent the class fairly and adequately. Accordingly, the Court is satisfied that the statutory presumption has not been rebutted.

The Court further concludes that as lead plaintiff Thomas Gleason satisfies the requirements of Rule 23. See § 78u-4(a)(3)(B)(iii)(I)(cc). There is no need for the Court to require any more than a preliminary showing at this stage of the case. Such a showing has been made by Thomas Gleason. A wide **[*24]** ranging analysis under Rule 23 is not appropriate at this initial stage of the litigation and should be left for the Court's later consideration of a motion for class certification. In re Milestone Scientific Sec. Litig., 183 F.R.D. at 414.

*HN9*⊀Pursuant to the PSLRA, the lead plaintiff has the right to select class counsel, "subject to the approval of the Court." 15 U.S.C. § 78u-4(a)(3)(B)(v). Plaintiff Thomas Gleason has selected and retained the law firm of Berman, DeValerio and Pease, L.L.P. as lead counsel and the law offices of Charles J. Piven, P.A. as liaison counsel. On the record here, this Court concludes that plaintiff Thomas Gleason has chosen competent and experienced lead counsel and liaison counsel. These attorneys have extensive experience in class action securities cases like this one. Indeed, there has been no challenge to the decision of plaintiff Thomas Gleason to retain such counsel. Accordingly, this Court will approve the selection of lead counsel and liaison counsel made by plaintiff Thomas Gleason.

For all the reasons stated, the motion of Thomas Gleason for appointment of lead plaintiff and to appoint lead counsel will **[*25]** be granted, the motion of the Matassa Group for appointment as lead plaintiffs and approval of lead counsel will be denied, and the motion of plaintiffs Jack Tawfik and Patricia Tawfik to be appointed lead plaintiffs and for the approval of proposed lead plaintiffs' selection of lead counsel and liaison counsel will be denied. An appropriate Order will be entered by the Court.

Alexander Harvey, II

Senior United States District Judge

DATED: August 15, 2000

ORDER

For the reasons stated in the Court's Memorandum Opinion of today, it is this 15th day of

August, 2000 by the United States District Court of the District of Maryland,

ORDERED:

1. The Court hereby determines that Thomas Gleason is the "most adequate plaintiff" and that he satisfies the requirements of the PSLRA. The Court accordingly hereby appoints plaintiff Thomas Gleason to be lead plaintiff to represent the interests of the class in this litigation. The motion of Thomas Gleason for Appointment of Lead Plaintiff and to Appoint Lead Counsel is hereby granted; the Motion of the Matassa Group for Appointment as Lead Plaintiffs and Approval of Lead Counsel is hereby denied; and the Motion of Jack Tawfik and **[\*26]** Patricia Tawfik to be Appointed Lead Plaintiffs and for the Approval of Proposed Lead Plaintiffs' Selection of Lead Counsel and Liaison Counsel is hereby denied.

2. The lead plaintiff, pursuant to § 21D(1) (3) (B) (v) of the Exchange Act, has selected and retained the law firm of Berman, DeValerio & Pease L.L.P. as lead counsel ("Lead Counsel"), as well as The Law Offices of Charles J. Piven, P.A., as liaison counsel ("Liaison Counsel"). The Court approves lead plaintiff's selection of lead and liaison counsel.

3. Lead Counsel shall have the following responsibilities and duties, to be carried out either personally or through counsel whom Lead Counsel shall designate:

   a. to coordinate the briefing and argument of any and all motions;
   b. to coordinate the conduct of any and all discovery proceedings;
   c. to coordinate the examination of any and all witnesses in depositions;
   d. to coordinate the selection of counsel to act as the spokesperson at all pretrial conferences;
   e. to call meetings of the plaintiffs' counsel as they deem necessary and appropriate from time to time;
   f. to coordinate all settlement negotiations with counsel for defendants;
   g. to coordinate and direct **[\*27]** the pretrial discovery proceedings and the preparation for trial and the trial of this matter and to delegate work responsibilities to selected counsel as may be required;
   h. to coordinate the preparation and filings of all pleadings; and
   i. to supervise all other matters concerning the prosecution or resolution of the consolidated action.

4. No motion, request for discovery or other pretrial proceedings shall be initiated or filed by any plaintiffs without the approval of Lead Counsel, so as to prevent duplicative pleadings or discovery by plaintiffs. No settlement negotiations shall be conducted without the approval of the Lead Counsel.

5. Lead Counsel shall have the responsibility of receiving and disseminating Court orders and notices.

6. Lead Counsel shall be the contact between plaintiffs' counsel and defendants'

counsel, as well as the spokesperson for plaintiffs' counsel, and shall direct and coordinate the activities of plaintiffs' counsel. Lead Counsel shall be the liaison between the Court and plaintiffs and their counsel.

7. All counsel for plaintiffs shall submit to Lead Counsel detailed time reports reflecting the hours of work expended by each attorney, their **[*28]** billing rate and the subject matter of the work. Time reports shall be submitted on a quarterly basis with the first report due no later than October 31, 2000. Subsequent reports shall be transmitted to Lead Counsel and shall continue for each subsequent quarter thereafter. Failure to timely submit such reports to Lead Counsel shall result in the disqualification of such unreported time from being reimbursed from any common fund which may be created in these consolidated actions.

8. Defendants shall effect service of papers on plaintiffs by serving a copy of same on Lead Counsel by overnight delivery service, telecopy or hand delivery. Plaintiffs shall effect service of papers on defendants by serving a copy of same on defendants' counsel by overnight delivery service, telecopy or hand delivery.

9. Lead Counsel shall file a consolidated amended complaint in this action within 30 days.


Alexander Harvey, II

Senior United States District Judge


Service: **Get by LEXSEE®**
Citation: **2000 U.S. Dist. LEXIS 19517**
View: Full
Date/Time: Thursday, June 23, 2005 - 5:11 PM EDT

* Signal Legend:
🌐 - Warning: Negative treatment is indicated
[Q] - Questioned: Validity questioned by citing refs
⚠ - Caution: Possible negative treatment
◆ - Positive treatment is indicated
Ⓐ - Citing Refs. With Analysis Available
Ⓘ - Citation information available
* Click on any *Shepard's* signal to *Shepardize®* that case.

About LexisNexis | Terms and Conditions


Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

4

2004 WL 3314943 (N.D.Ohio)

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Ohio, Eastern Division.
**In re**: THE **GOODYEAR TIRE** & RUBBER COMPANY SECURITIES LITIGATION
No. 5:03 CV 2166.
May 12, 2004.

Jack Landskroner, Cleveland, OH, for Plaintiff.
Jack Morrison, Jr., Thomas R. Houlihan, Akron, OH, Jacob B. Radcliff, Jerome S. Hirsch, Jonathan
Lerner, Lauren Aguiar, New York, NY, John T. Billick, Cleveland, OH, for Defendants.

MEMORANDUM OPINION & ORDER
[Resolving Docs. 13, 16, 17 in case # 5:03CV2166 and Doc. 12 in case
# 5:03CV2210]
I. Introduction

ADAMS, J.
***1** The above-captioned case is an action for securities fraud brought on behalf of shareholders of
The Goodyear Tire & Rubber Company (the "Shareholders") against Defendants The Goodyear Tire &
Rubber Company (Goodyear), Robert J. Keegan, Robert W. Tieken, Samir G. Gibara, Stephanie W.
Bergeron, John W. Richardson, and Richard J. Kramer, (collectively referred to as "Defendants"). The
Shareholders base their claims on violations of Section 10(b) of the Securities and Exchange Act of
1934, Section 20(a) of the Securities Exchange Act of 1934, and Rule 10b-5, which was promulgated
thereunder. The action was filed as a class action, excluding from the class Defendants, directors and
officers of Goodyear, their families and affiliates.
On December 31, 2003, this Court entered an order consolidating all individual actions related to this
matter. Shortly thereafter certain individual movants filed motions requesting appointment as lead
plaintiff in the consolidated action. The first group of movants consists of the Alaska Electrical Pension
Fund and the Central States, Southeast and Southwest Areas Pension Fund (the "Institutional
Funds"). [FN1] The second group of movants consist of funds A57, C16 and NK1, which are part of
the fund family managed by Capital Invest, die Kapitalanlagegesellschaft der Bank Austria
Creditanstalt Gruppe GmbH, a fund management company located in Vienna, Austria (Capital Invest).
[FN2] The last movant is Flamina Holdings, AG (Flamina Holdings.). [FN3] Flamina Holdings is a
holding entity for two individual investors, Mr. Michael May and Ms. Christina May.

FN1. ECF Doc. 16.

FN2. ECF Doc. 17.

FN3. Flamina's motion was filed as ECF Doc. 12 in case 5:03CV2210.

On February 10, 2004, the Court held a hearing at which time counsel for each of the proposed lead
plaintiffs had an opportunity to present their arguments. Counsel for the Institutional Funds, Capital
Invest and Flamina were present at the hearing. [FN4] The Court has reviewed the parties' motions,
responses, and replies thereto. It has also fully considered the arguments presented at the hearing.

FN4. The Court notes that a motion filed by movant Richard Berman is still pending on its docket. Mr. Berman was not represented by counsel at the hearing. Therefore, the Court deems his motion withdrawn. Even if the Court seriously considered Mr. Berman's motion, however, it would not appoint him as lead plaintiff in this action. By Mr. Berman's own admission, he has lost only $54,730, which is much less than the losses the other movants allegedly suffered. (Berman, Mot. for Lead Plf. at 9).

## II. The Alleged Losses

The Institutional Funds request appointment as lead plaintiff based on their alleged loss of more than $3.7 million in connection with the purchase of over 188,000 shares of Goodyear securities between the time of October 13, 1998 and October 22, 2003 (the "Class Period"). The Institutional Funds also request approval of their selection of lead counsel, William S. Lerach and Tor Gronborg of Milberg, Weiss, Bershad, Hynes & Lerach LLP and Landskroner-Grieco, Ltd. as liaison counsel.

Likewise, Capital Invest requests appointment as lead plaintiff based on its loss of approximately $1.2 million in connection with its acquisition of 83,100 shares of Goodyear common stock during the class period. Capital Invest also requests approval of its selection of lead counsel the law firm of Bernstein, Litowitz, Berger & Grossman, LLP (Bernstein Litowitz) and the law firm Climaco, Lefkowitz, Peca, Wilcox & Garofoli Co., LPA (Climaco Lefkowitz) as liaison counsel.

*2 Flamina Holdings requests appointment as lead plaintiff based on its alleged loss of $2 million in connection with its acquisition of common stock and options. Flamina Holdings also requests approval of its selection of lead counsel the law firm of Scott & Scott and the law firm Tzangas, Plakas, Mannos, & Recupero as liaison counsel. However, Flamina Holdings' stated losses are based on its losses plus the losses of Goodyear Tireworkers Independent Unity of the USWA Local 307 Topeka (GTWIU), who no longer seeks appointment as lead plaintiff. GTWIU was originally a co-movant with Flamina Holdings. However, it subsequently withdrew from the motion. [FN5] At the hearing on this matter, Flamina Holdings represented that its loss alone was only $885,000.

FN5. ECF Doc. 32, filed in case 5:03CV2166.

## III. Capital Invest is Appointed as Lead Plaintiff

The Private Securities Litigation Reform Act (PSLRA) sets forth the procedure that governs appointment of the lead plaintiff in actions arising under the Securities and Exchange Act of 1934 when such an action is brought as a class action under the Federal Rules of Civil Procedure. See generally 15 U.S.C. § 78u-4(a)(1) and (a)(3)(B)(i). This procedure first requires that the plaintiff who files the initial action, within 20 days of filing, publish a notice to the class informing the class members of their right to file a motion for appointment as lead plaintiff. Id. at § 78u-4(a)(3)(A)(I). [FN6]

FN6. Here, the first notice of pendency was published over *The Business Wire* on October 23, 2003. Consistent with the PSLRA, the notice

advised potential class members of the pendency of the action, the claims asserted therein, the purported class period, and that any member may, within 60 days from the date of the notice, move the Court to serve as lead plaintiff in the action. Id. at § 78u-4 (a)(3)(A)(I).

The PSLRA also provides that within 90 days after publication of notice, the district court shall consider the class members' motions and shall appoint as lead plaintiff the member or members of the class that the Court determines most capable of adequately representing the interests of the class members. [FN7] Id. at § 78u-4(3)(B)(I). When making the determination of "most adequate plaintiff," the PSLRA states that:

FN7. The Court acknowledges that this Order designating lead Plaintiff was not issued within 90 days after publication of notice. However, the Court was not able to comply with the 90-day provision in this case. Based on the Court's trial schedule it was not able to hold the hearing before expiration of the 90-day period. Accordingly, the Court did not have the requisite information on which to base its decision. *In re PRI Automation, Inc. Securities Litigation,* 145 F.Supp.2d 138, 144-45 (D.Mass.2001) (noting that compliance with the 90-day provision in some cases would require a district judge to make an uninformed decision and

finding the 90-day provision to be an unconstitutional intrusion on judicial functions). Moreover, the Court needed time after the hearing to appropriately consider the parties' motions and focus on selecting the lead plaintiff and lead counsel best suited to adequately and fairly represent the interests of the plaintiff class in this case. *See id.*

[T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under [the PSLRA] is the person or group of persons that -
(aa) has either filed the complaint or made a motion in response to a notice ...;
(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. *Id.* § 78u-4 (3)(B)(iii)(I)(aa)-(cc). The above presumption may only be rebutted by proof that the presumptive lead plaintiff (1) will not fairly and adequately protect the interests of the class, or (2) is subject to "unique defenses" that render such plaintiff incapable of adequately representing to the class. *Id.* § 78u-4(a)(3)(B)(iii)(II)(aa)-(bb). The lead plaintiff selected by the Court has the discretion to retain counsel of its choice to represent the class, subject to court approval. *Id.* § 78u-4(a)(3)(B) (v).
Here, all movants have timely filed their motions to be appointed lead plaintiff in this action. Accordingly, the Court now turns to its determination of the movants' relative financial interests in the relief sought by the class.

### IV. Largest Financial Interest

**\*3** The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." *See id.* 78(u)(a)(3)(B)(iii)(I)(bb). This Court will calculate financial interest employing a four-factor inquiry recognized by a host of other district courts. *See, e.g., In re Olsten Corp. Sec. Litig.,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998); *In re Nice Sec. Litig.,* 188 F.R.D. 206, 217 (D.N.J.1999); *In re Cable & Wireless, PLC, Sec. Litig.,* 217 F.R.D. 372, 375 n. 4 (E.D.Va.2003); *In re Comedisco Sec. Litig.,* 150 F.Supp.2d 943, 945 (N.D.Ill.2001). The four factors relevant to the calculation are: (1) the number of stock shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered during the class period. The Court separately addresses each movant's financial interest in light of these factors, subject to the caveat that this discussion is limited to resolving the lead plaintiff motions, and is not an ultimate determination of liability and damages.

### A. *Flamina Holdings*

Under the foregoing analysis, Flamina Holdings has not demonstrated the most significant financial interest in this litigation. Flamina Holdings purchased and sold 65,000 shares of Goodyear stock during the Class Period, for a net purchase of zero shares. The company expended $1,550,000 and received $665,400, incurring a total loss of $884,600. The record thus indicates that, of the three movants for lead plaintiff, Flamina Holdings expended the least amount of funds and purchased the fewest (total) shares of Goodyear stock during the Class Period. As the Court discusses below, Flamina Holdings' $884,600 loss is not the greatest loss incurred by the movants. Accordingly, Flamina Holdings is not the best candidate for lead plaintiff.
Flamina Holdings' motion is denied on the additional ground that the movant is a holding company for two individual investors and thus is not an "institutional investor." The legislative history of the PSLRA reflects a preference for institutional investors in the lead plaintiff role. *See In re Telxon Corp. Sec.*

*Litig.,* 67 F.Supp.2d 803, 821 (N.D.Ohio 1999).

Flamina Holdings' alternative request for appointment as a co-lead plaintiff also is denied. A co-lead plaintiff appointment is not warranted under the circumstances present in this case and likely would result in increased costs and duplication of efforts.

B. *The Institutional Funds*

The Institutional Funds' motion also is denied on the ground that the Institutional Funds do not have the most significant financial interest in this litigation based on damages incurred from purchases and sales of Goodyear securities during the Class Period. Although the movants' respective representations of loss seem to indicate that the Institutional Funds suffered the greatest damages by a considerable margin, the Institutional Funds' claimed $3.7 million loss is illusory.

**\*4** The Institutional Funds have calculated their purported $3.7 million loss based solely on a first-in-first-out (FIFO) methodology, ignoring the four-pronged inquiry set forth above. In this situation, FIFO grossly inflates the Institutional Funds' damages because the Institutional Funds are a "net seller" of Goodyear stock. The Institutional Funds sold 202,714 more Goodyear shares during the Class Period than they purchased, and received more profits from the sale of Goodyear stock during the Class Period than losses on the purchase of Goodyear securities.

Application of the four-factor test reveals FIFO's inaccuracy under the circumstances present here. The Institutional Funds purchased 188,675 shares of Goodyear stock during the Class Period and sold 391,389 shares for a net *sale* of 202,714 shares. A determination of net expenditures, or total monies received from sales ($12,910,959.72) of Goodyear stock less total funds expended on purchases ($5,299,423.81), verifies that the Institutional Funds received a total of $7,611,535.91 in net *proceeds* as a result of their high-volume Goodyear stock sales during the Class Period. The Institutional Funds may have benefitted from the alleged fraud in view of the fact that they earned millions of dollars on net sales of Goodyear stock during the Class Period. Accordingly, the Institutional Funds cannot establish the largest financial interest in the relief sought by the class. Similarly, Central States and Alaska both are net sellers. Central States profited in the amount of $8,460,217.87 from its sales of Goodyear Stock during the Class Period. Although Alaska expended $848,681.96 more than it received, its loss is not even half as great as that claimed by Capital Invest. As such, the Court rejects the Institutional Funds' contention that they have incurred a greater financial interest in this litigation than any other lead plaintiff applicant. *See Weisz v. Calpine Corp.,* No. C 02-1200 SBA, Slip. Op. At 12 (N.D.Cal. Aug. 19, 2002) (rejecting motion of lead plaintiff movant who was a net seller and, as a result, "may have actually profited, not suffered losses as a result of the allegedly artificially inflated stock price"); *Comdisco,* 150 F.Supp. at 945-46 (same). *See also In re McKesson HBOC Sec. Litig.,* 97 F.Supp.2d 993, 996-97 (N.D.Cal.1999) ("[a] net purchaser will, presumably, have a greater interest in the litigation, because he or she was induced by the fraud to purchase shares, and has been left 'holding the bag' when the fraudulent inflation is revealed.") Even if the Court ignores the flaws inherent in the Institutional Funds' FIFO methodology, the Institutional Funds are not an acceptable lead plaintiff as they may be subject to unique defenses. Alaska sold all of its shares of Goodyear stock prior to the disclosure of the alleged fraud. Likewise, it appears that Central States sold the significant majority of its shares prior to the disclosure. Thus, both Alaska and Central States undoubtedly will face motions to dismiss and/or for judgment as a matter of law on the ground that certain losses suffered by them were not caused by the alleged fraud. *See In re Cable & Wireless,* 217 F.R.D. at 379 (stating that the lead plaintiff movant who sold its shares "before the fraud ... was revealed to the public ... could not have suffered any loss as result of the Defendants' alleged fraud"); *In re MicroStrategy Inc. Sec. Litig.,* 110 F.Supp.2d 427, 437 n. 23 (E.D.Va.2000) (holding that a lead plaintiff movant who sold shares in the subject company prior to the disclosure of the fraud also may be subject to "unique defenses based on the timing of its loss"); *Arduini/Mesina P'ship v. Nat'l Med. Fin. Servs. Corp.,* 74 F.Supp.2d 352, 361-62 (S.D.N.Y.1999) (granting the defendants' motion to dismiss the plaintiff's claims where plaintiff sold all of his shares in the subject company prior to disclosure of the fraud and could not demonstrate that his damages were caused by the defendants' fraudulent statements).

**\*5** Moreover, the Institutional Funds' motion is denied in light of this Court's previous ruling that lead plaintiff movants must have a pre-existing relationship and basis for acting as a collective unit to qualify under the PSLRA as a viable lead plaintiff group. *In re Telxon,* 67 F.Supp.2d at 823 (O'Malley, J.). At the February 10, 2004 hearing, counsel for the Institutional Funds admitted that Central States and Alaska have no relationship pre-dating this litigation and were joined solely for the purpose of prosecuting this case. As such, the Institutional Funds have improperly aggregated their losses for the purpose of their lead plaintiff motion.

C. *Capital Invest*

Having denied the competing lead plaintiff applications, the Court now turns to Capital Invest's motion. Capital Invest has the most significant financial interest in this litigation. It purchased the most shares of Goodyear Stock during the Class Period and sold no shares, for a net purchase of 83,100 shares, a net expenditure of $1,779,900.36, and a claimed loss of approximately $1,200,000. Thus, Capital Invest is the presumptive lead plaintiff subject to the requirements of Rule 23 (discussed *infra*.)

Capital Invest's qualifications for lead plaintiff status are not susceptible to the Institutional Funds' challenges. The Court briefly examines said challenges below.

Contrary to the Institutional Funds' contention, Capital Invest possesses standing to assert securities fraud claims on behalf of the clients for whom it purchases and sells securities. A number of district courts have held that an investment manager has standing to bring securities claims on its clients' behalf if it is the clients' attorney-in-fact and has specific authority to recover its clients' investment losses. *See, e.g., Weingberg v. Atlas Air Worldwide Holdings, Inc.,* 216 F.R.D. 248, 255 (S.D.N.Y.2003) (stating that "when the investment advisor is also the attorney-in-fact for its clients with unrestricted decision making authority, the investment advisor is considered the 'purchaser' under the federal securities laws with standing to sue in its own name"); *In re DaimlerChrysler AG Sec. Litig.,* 216 F.R.D. 291, 299 (D.Del.2003) (same); *In re Rent-Way Sec. Litig.,* 218 F.R.D. 101, 106-09 (W.D.Pa.2003) (same); *EZRA Charitable Trust v. Rent-Way, Inc.,* 136 F.Supp.2d 435 (W.D.Pa.2001) (same). Capital Invest's Declaration provides, "Capital Invest controls and manages the Funds and acts as attorney-in-fact for them. Capital Invest has full and complete authority to purchase and sell securities for each of the funds, and to institute legal action on their behalf." Based on the Declaration, the other evidence of record, and the caselaw cited above, Capital Invest has standing to bring suit and serve as lead plaintiff in this litigation.

The Institutional Funds' attempt to discredit Capital Invest on the ground that it is a non-domestic (Austrian) investment firm, and therefore an uncommitted and uncontrollable candidate for lead plaintiff, is insupportable. Capital Invest has testified in its Declaration and through its attorneys at the February 10, 2004 hearing that it has vast resources, that it is committed to working to obtain the best possible recovery for the plaintiff class, and that its representatives will be available in person to the Court. Further, the Institutional Funds' comment that Capital Invest is located almost 4500 miles from the Court lacks a measure of ingenuousness given that Alaska itself is located over 4000 miles away and has not provided the Court with any proof that it is willing to make its representatives available to the Court as necessary. Further, Austrians are, by treaty, expressly entitled to the same rights and privileges before United States courts as United States citizens. *See* Treaty between the United States of America and Austria of Friendship, Commerce and Consular Rights, June 19, 1928, U.S.-Aus., art. IX, 47 Stat. 1876, 1931 WL 29977 (U.S. Treaty). Even in the absence of a treaty, to exclude a foreign investor from lead plaintiff status on nationality grounds would defy the realities and complexities of today's increasingly global economy.

**\*6** For all of the foregoing reasons, Capital Invest has the greatest financial interest in this case and is the presumptive lead plaintiff subject to the strictures and requirements of Rule 23. The Court now turns to its Rule 23 analysis.

V. Adequacy & Typicality Under Rule 23(a)

Having determined that Capital Invest is the largest stakeholder does not end this Court's analysis. The PSLRA requires that the lead plaintiff also satisfy the requirements of Federal Rule 23. [FN8] Here, the Court must find that Capital Invest would satisfy Rule 23's typicality and adequacy requirements before it can appoint Capital Invest as lead plaintiff. [FN9] *See In re Century Business Services Sec. Litig.,* 202 F.R.D. 532, 539 (N.D.Ohio 2001) (analyzing the typicality and adequacy requirements of Rule 23 in a securities class action governed by the PSLRA); *See also In re Telxon,* 67 F.Supp.2d at 807 n. 10 (noting that class action analysis under Rule 23 in securities actions hinges on the typicality and adequacy requirements of the rule). Based on the evidence before it, this Court finds that Capital Invest would satisfy the typicality and adequacy requirements of Rule 23.

FN8. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are satisfied:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are

questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.


FED. R. CIV. P. 23(a).


FN9. Upon motion to certify this action as a class action, the Court will undertake the "rigorous analysis" necessary for a determination of whether the complete prerequisites of Rule 23 are met. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996) (citing *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)). As the Sixth Circuit has noted, "[a] class is not maintainable as a class action by virtue of its designation as such in the pleadings." *Id.* Because, in this case, a consolidated complaint has not been filed, the Court will reserve the issue of whether a class will be certified for a later date.


Typicality is governed by Rule 23(a)(3), which requires that the claims or defenses of the representative party be typical to the claims or defenses of the class. Fed. R. Civ. P. 23(a)(3). In other words, a sufficient relationship must exist between the injury to the named representative and the conduct affecting the class. *In re American Medical Sys. Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (quoting 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3-13, at 3-76 (3d ed.1992)). "Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory ." *Id.*

Capital Invest satisfies the typicality requirement. It seeks to represent a class of purchasers of Goodyear securities who have non-competing and non-conflicting interests. All class members purchased or acquired Goodyear stock during the Class Period and allegedly suffered a loss as the result of Defendants' conduct in connection therewith. As Capital Invest aptly notes, its claims deal with the same issues that pertain to the claims of the other class members. Namely, these issues are (1) whether Goodyear issued false and misleading statements during the Class period, (2) whether Defendants acted knowingly and/or with deliberate recklessness in issuing these allegedly false and misleading statements, (3) whether the market price of Goodyear stock was artificially inflated during the Class Period because of Defendants' allegedly wrongful conduct, and (4) whether the members of the class have sustained damages, and the amount of such damages. Because Capital Invest's claims deal with the same issues that pertain to the other class members, its interests are clearly aligned with those of the class. *Id.*

**\*7** Adequacy is governed by Rule 23(a)(4), which allows certification of a class only if the class representative will fairly and adequately protect the interest of the class. Fed. R. Civ. P. 23(a)(4). The Sixth Circuit has set forth two criteria for determining adequacy. First, the class representative must have common interests with those unnamed class members. *In re American Medical Systems, Inc.,* 75 F.3d 1069, 1082 (6th Cir.1996) (citation omitted). Second, it must appear that the class representative will vigorously prosecute the action with the assistance of qualified counsel. *Id.* According to the circuit, "[t]he adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentive to pursue the claims of the other class members." *Id.*

Here, Capital Invest has common interests with the unnamed members of the class. Both Capital Invest and the other class members seek to recover their losses in connection with Defendants' alleged conduct. There is nothing to indicate that Capital Invest, as the class representative, would not vigorously prosecute the interests of the class. Clearly, Capital Invest has the need seek to recovery for its own losses. As such, there is no reason for this Court to find that Capital Invest would not just as vigorously prosecute and protect the interests of the class. As Capital Invest notes, there is no evidence before the Court of any antagonism between the interests of Capital Invest and the interests of the class members. Therefore, the Court sees no reason why Capital Invest cannot or

would not vigorously prosecute the class members' claims.

There is also no evidence that the proposed lead counsel, Bernstein Litowitz, is not qualified counsel. In making this determination, the Court must consider whether the proposed counsel are qualified, experienced, and generally able to conduct the litigation. *See* <u>Stout v. J.D. Byrider,</u> 228 F.3d 709, 717 (6th Cir.2000). Having reviewed the resume of Bernstein Litowitz, proposed lead counsel in this action, the Court notes that the firm's litigation practice concentrates in the area of securities class actions. The firm also markets itself as "the nation's leading firm in representing institutional investors in securities fraud class action litigation." [FN10]

FN10. See Capital Invest, Mot. to Consolidate at Exh. D.

A review of the firm's resume reveals that it is qualified in securities class action lawsuits. Other courts have found this as well. *See, e.g.* <u>Piven v. Sykes Enterprises, Inc.,</u> 137 F.Supp.2d 1295, 1306 (M.D.Fla.2000) (finding Bernstein Litowitz experienced in litigating class action lawsuits); <u>Osher v. Guess?, Inc.,</u> No. CV01-00871LGB, 2001 WL 861694 at *4 (C.D.Cal.2001) (unreported) (finding Bernstein Litowitz experienced in litigating complex securities actions after reviewing the firm's resume); <u>Armour v. Network Assoc., Inc.,</u> 171 F.Supp.2d 1044, 1052 (noting that "[t]he firm resume of Bernstein Litowitz reveals its competence to provide class representation in a securities class action."). In fact, the firm's literature boasts numerous statements from various district court judges across the country who have commented on the outstanding performance of Bernstein Litowitz in various actions where excellent results have been achieved for plaintiff class members. On the whole, there is nothing that would indicate to this Court that Bernstein Litowitz is anything but qualified, experienced, and generally able to conduct the litigation in this case.

VI. Conclusion

**\*8** For the reasons stated above, Capital Invest's motion for appointment as lead plaintiff is granted. In keeping, its request appoint the law firm of Bernstein Litowitz as lead counsel and the law firm of Climaco Lefkowitz as liaison counsel is granted. All other pending motions are hereby denied.
IT IS SO ORDERED.
N.D.Ohio,2004.
In re Goodyear Tire & Rubber Co. Securities Litigation
2004 WL 3314943 (N.D.Ohio)

## Motions, Pleadings and Filings (Back to top)

• 2004 WL 3145065 (Trial Motion, Memorandum and Affidavit) Defendants' Memorandum of Law in Support of their Motion to Dismiss the Consolidated Amended Class Action Complaint (Nov. 15, 2004)
• 2004 WL 3144420 (Trial Motion, Memorandum and Affidavit) Reply Memorandum of Law in Further Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21D(a)(3) (B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class and in Opposit ion to the Motions of the Central States Group and Flamina (Feb. 09, 2004)
• 2004 WL 3152998 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Reply in Further Support of their Motion for Appointment as Lead Plaintiff and for Approval of their Selection of Lead Counsel (Feb. 09, 2004)
• 2004 WL 3146524 (Trial Motion, Memorandum and Affidavit) The Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Consolidated Opposition to the Competing Motions for Appointment as Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counse (Jan. 29, 2004)
• 2003 WL 23998043 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003)
• 2003 WL 23998246 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003)
• 2003 WL 23999273 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension

Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003)

• 2003 WL 23999846 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003)

• 2003 WL 24001167 (Trial Motion, Memorandum and Affidavit) Class Action (Dec. 24, 2003)

• 2003 WL 24002678 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants' Motion to Adopt Defendants' Case Management Proposal (Dec. 24, 2003)

• 2003 WL 23998026 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southeast Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23998035 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23998040 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23998092 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23998253 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23998849 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23999134 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23999263 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23999268 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23999333 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23999343 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their Selection of Lead Counsel (Dec. 22, 2003)

• 2003 WL 23999748 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23999957 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 24001165 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 24001174 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and

Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and
Southwest Areas Pension Fund's Motion to Consolidate Related Actions (Dec. 22, 2003)

• 2003 WL 23999790 (Trial Motion, Memorandum and Affidavit) Plaintiffs Alaska Electrical Pension
Fund's and Central States, Southeast and Southwest Areas Pension Fund's Opposition to Defendants'
Motion to Adopt Defendants' Case Management Proposal (Oct. 24, 2003)

• 2003 WL 23998348 (Trial Pleading) Complant for Violation of the Federal Securities Laws (Oct. 23,
2003)

• 5:03CV02166 (Docket) (Oct. 23, 2003)

• 2003 WL 24002679 (Trial Motion, Memorandum and Affidavit) Memorandum of Law in Further
Support of the Motion of Capital Invest to be Appointed Lead Plaintiff Pursuant to Section 21d(a)(3)
(B) of the Securities Exchange Act of 1934, for Approval of its Choice of Lead Counsel for the Class
and in Opposition to all other Competing Motions (Jan. 29, 2003)

• 2003 WL 23998875 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and
Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and
Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their
Selection of Lead Counsel (2003)

• 2003 WL 24001166 (Trial Motion, Memorandum and Affidavit) Memorandum of Points and
Authorities in Support of the Alaska Electrical Pension Fund and Central States, Southeast and
Southwest Areas Pension Fund's Motion for Appointment of Lead Plaintiff and Approval of their
Selection of Lead Counsel (2003)

END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

5

2000 WL 33999467 (S.D.Tex.)
Only the Westlaw citation is currently available.

United States District Court,
S.D. Texas, Houston Division.
In re LANDRY'S SEAFOOD RESTAURANT, INC. Securities Litigation,
Carter LANEY, On Behalf of Himself and All Others Similarly Situated, Plaintiff
v.
LANDRY'S SEAFOOD RESTAURANTS, INC., et al., Defendants
Earl NEWTON, On Behalf of Himself and All Others Similarly Situated, Plaintiff
v.
LANDRY'S SEAFOOD RESTAURANTS, INC., et al., Defendants
Daniel MAZZOCCO, et al., On Behalf of Himself and All Others Similarly
Situated, Plaintiff
v.
LANDRY'S SEAFOOD RESTAURANTS, INC., et al., Defendants
Michael W. DURNIN, On Behalf of Himself and All Others Similarly Situated,
Plaintiff
v.
LANDRY'S SEAFOOD RESTAURANTS, et al., Defendants
No. Civ.A. H-99-1948, Civ.A. H-99-2279, Civ.A. H-99-2318, Civ.A. H-99-2408.
March 30, 2000.

*ORDER*

HARMON, J.
**\*1** Pending before the Court in the above referenced consolidated, putative class action alleging
securities fraud in Defendants' false and misleading statements about Landry's Seafood Restaurants,
Inc. to the investing public between December 19, 1997 and September 18, 1998, [FN1] is
Defendants Banc of America Securities L.L.C./Nationsbanc Montgomery Securities, L.L.C., J.C.
Bradford & Company, Morgan Stanley Dean Witter, Piper Jaffray, Inc. and Sanders Morris Mundy's
("the Underwriter Defendants" ') motion for reconsideration (# 77) in opposition to appointment of
multiple plaintiffs without necessary connection as Lead Plaintiff Group under the Private Securities
Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(3). [FN2]

FN1. Specifically Plaintiffs allege that all Defendants except James E. Masucci and Joe
Max Taylor violated §§ 10(b) and 20 of the Securities Exchange Act of 1934, as amended
by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. §§ 78j(b)
and 78t and SEC

Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5. They further allege that all
Defendants except Richard E. Ervin violated §§ 11 and 15 of the Securities Act of 1933,
as amended by the PSLRA.


FN2. Plaintiffs' complaint alleges the following. In 1995 Landry commenced an aggressive
expansion program that by 1997 aimed at opening 45 to 50 restaurants per year. To
finance the expansion Defendants sought large amounts of capital. In 1997 they made
their largest equity offering ever, but had to raise the per-share price of their stock to
complete the large offering without diluting the value of existing shares of stock. The
stock price on December 19, 1997 was $17.00. To inflate the stock price, Defendants
allegedly misrepresented Landry's as having a strong existing business model, with
strong same-stores sales numbers, and growth potential. Defendants emphasized their
success in clustering openings of Joe's Crab Shack restaurants to save administrative and
advertising costs and urged that the Joe's Crab Shack restaurant concept was a high
growth vehicle and that the restaurants' seasoned management team assured high

quality service and high return of customers. These misrepresentations pushed Landry's stock price up to $29 7/8 on March 13, 1998. At that time Defendants completed their secondary offering at $28.50 per share, which provided $103 million to fund Landry's expansion and allowed stockholders

to sell off nearly $40 million of Landry stock. In addition, the underwriter Defendants received more than $7.5 million in proceeds from the secondary offering.

Plaintiffs contend that Defendants' misrepresentations about the restaurants was the reason for this substantial cash infusion. In actuality the clustering of Joe's Crab Shack restaurant openings damaged Landry's overall growth because sales at the new restaurants cannibalized business from Landry's existing restaurants. Because of a high turnover of restaurant managers, restaurant operations materially deteriorated, causing customer dissatisfaction, fewer return visits, and softening sales, in particular at Joe's Crab Shack restaurants. Nevertheless Defendants continued in making their misrepresentations.

Nevertheless, on June 23, 1998 Defendants were forced to reveal that Landry's Second Quarter 1998 revenues would be well below the levels they had previously represented to the market. As a result, Landry's stock fell from $21 3/8 on June 22, 1998 to $17 3/4 on June 23, 1998. With additional bad news about the restaurants reaching the market, the stock price continued to sink until by July 16, 1998 it slid to $12 1/8. The stock never recovered. At the end of August 1999 the stock was trading at around $10 per share.

Under Sections 27(a) of the Securities Act of 1933 ("Securities Act") and 21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4, counsel for Plaintiffs filed a stipulation and request for appointment of Karen Hartzheim, Douglas M. Kauffman, Vincent and Rosemary Pino, and Herbert S. Stone as Lead Plaintiffs, and the law firms of Milberg Weiss Bershad Hynes & Lerach LLP and Weiss & Yourman as Co-Lead Counsel, with the law firms of Greenberg, Peden, Siegmyer & Oshman, P.C. and Hoffner, Bilek & Eidman as Co-Liaison Counsel. Unaware of any opposition, the Court originally granted the request (# 74), but after the Underwriter Defendants submitted a letter, which the Court construed as a motion for reconsideration (# 77), asserting their opposition, filed as # 75, the Court vacated its order pursuant to Plaintiffs' stipulation (# 78). Thus the Court addresses the motion for reconsideration based on the Underwriter Defendants' opposition to appointment of Lead Plaintiffs and Lead Counsel agreed to by Plaintiffs.
Essentially the issues presented here are whether Underwriter Defendants have standing to assert opposition to Plaintiffs' stipulated choice of Lead Plaintiff, whether Plaintiffs can choose a group and aggregate their losses to qualify as Lead Plaintiff, and whether a stipulated group of allegedly unconnected Plaintiffs can serve as Lead Plaintiff.
Under the PSLRA, 15 U.S.C. § 78u-4(a)(3)(B)(i), "the court shall consider any motion made by a purported class member" in determining the adequacy of a proposed lead plaintiff. Furthermore, "the presumption [of the adequacy of the plaintiff with the largest financial interest [FN3] in the outcome of the litigation] described in [15 U.S.C. § 78u-4(a)(3)(B)(iii)(I) ] may be rebutted only upon proof by a member of the purported plaintiff class" that the proposed individual or entity will not fairly and adequately protect the interests of the class or is subject to unique defenses that render it incapable of adequately representing the class. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II). Thus from the express language of the statute, courts have concluded that defendants lack standing to challenge the adequacy or typicality of the proposed lead plaintiffs at this early stage of the litigation. See, e.g., Takeda v. Turbodyne Technologies, Inc., 67 F.Supp.2d 1129, 1138 (C.D.Cal.1999); Gluck v. CellStar Corp., 976 F.Supp. 542, 550 (N.D.Tex.1997); Greebel v. FTP Software, Inc., 939 F.Supp. 57, 60-61 (D.Mass.1996); Fischler v. AmSouth Bancorporation, 1997 WL 118429, *2 (M.D.Fla.1997); Zuckerman v. Foxmeyer Health Corp., 1997 WL 314422, *2 (N.D.Tex.1997). Therefore, this Court

concludes that Underwriter Defendants do not have standing to question Plaintiffs' choice of Lead Plaintiff Group.

> FN3. The PSLRA does not delineate a procedure for determining the "largest financial interest" among the proposed class members. A four-

> factor inquiry has been developed by the district court in *Lax v. First Merchants Acceptance Corp.,* 1997 WL 461036, *5 (N.D.Ill. Aug. 11, 1997)*, and recognized in *In re Olsten Corp. Securities Litigation,* 3 F.Supp.2d 286, 295 (E.D.N.Y.1998). and in *In re Nice Securities Litigation,* 188 F.R.D. 206, 217 (D.N.J.1999). The four factors relevant to the calculation are (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *Id.*

**\*2** Nevertheless, this Court may and does *sua sponte* raise the same matters in evaluating the adequacy of the proposed group of five as Lead Plaintiff. *Takeda,* 67 F.Supp. at 1138; *Sakhrani,* 78 F.Supp.2d at 854 (court has independent responsibility to consider appointment of lead counsel). It is clear that "[t]he PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation." *In re Oxford Health Plans, Inc. Securities Litigation,* 182 F.R.D. 42, 45 (S.D.N.Y.1998). Because Underwriter Defendants lack standing, the Court denies their motion to reconsider. Nevertheless, the Court *sua sponte* undertakes its own evaluation of the particular facts of this case in order to effectuate the aims of the PSLRA.
Under the relevant portions of 15 U.S.C. § 78u-4(a)(3)(B)(i) and (iii)(I), after national notice [FN4] and after consolidation of parallel actions, a district court

> FN4. Under § 21D of the Exchange Act, 15 U.S.C. § 78u-4(a)(3)(A)(i), a plaintiff seeking to represent the class ˙

> Shall cause to be published in a widely-circulated national business-oriented publication or wire service, a notice advising members of the purported class--

> (I) of the pendency of the action, the claims asserted therein, and the purported class period;

> (II) that, not later than 60 days after the date on which the notice is published, any member of the purported class may move the Court to serve as lead plaintiff of the purported class.

> Thus being first to file is no longer a guarantee of the lead plaintiff position. Section 21 (D)(a)(3)(B)(i), 15 U.S.C. § 78u-4(a)(3)(B)(i) provides,

> Not later than 90 days after the date on which a notice is published ... the court shall consider any motion made by a purported class member in response to the notice, including any motion by a class member who is not individually named as a plaintiff in the complaint or complaints, and shall appoint as lead plaintiff the member or members of the purported plaintiff

> class that the class determines to be most capable of adequately representing the interests of the class member....

shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members (hereafter in this paragraph referred to as the "most adequate plaintiff") in accordance with this subparagraph. Furthermore under Section 21D(a)(3)(B) of the amended Exchange Act of 1934 requires the Court to adopt a rebuttable presumption that

the most adequate plaintiff in any private action arising under this chapter is the person or group of persons that

(aa) has either filed the complaint or made a motion in response to a notice ...;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The statutory presumption of appointment as lead plaintiff may be rebutted with evidence that the lead plaintiff "will not fairly and adequately protect the interests of the class" or is "subject to unique defenses that render such plaintiff incapable of adequately representing the class ." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

Under Section 21D(a)(3)(B) of the Exchange Act, the lead plaintiff or plaintiffs must possess not only the largest financial interest in the outcome of the litigation, but must also meet the requirements of Federal Rule of Civil Procedure 23. Rule 23(a) provides that a party may serve as a class representative only if the following four requirements are met:

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Typicality and adequacy are directly relevant to the choice of the class representative and Lead Plaintiff in securities fraud cases. *See, e.g., In re Oxford Health Plans, Inc. Securities Litig.,* 182 F.R.D. 42, 49 (S.D.N.Y.1998); *Gluck,* 976 F.Supp. at 546; *Fischler,* 1997 WL 118429 *2. The Court observes that while Underwriter Defendants lack standing to challenge Plaintiffs' motion to appoint certain among them as Lead Plaintiff, Underwriter Defendants do have the right subsequently in a class certification hearing to object to those Plaintiffs as typical of and adequate representatives of the proposed class. *In re Nice Systems Securities Litig.,* 188 F.R.D. 206, 218 n. 11 (D.N.J.1999); *Zuckerman,* 1997 WL 314422 at *2); *Gluck,* 976 F.Supp. at 547); *Greebel,* 939 F.Supp. at 60-61; *In re Cephalon Securities Litig.,* 1996 WL 515203 (E.D. Aug. 27, 1996).

**\*3** Under the PSLRA, the lead plaintiff, subject to court approval, is to select and retain lead counsel. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the [plaintiff] class." 15 U.S.C. § 78u-4(a)(3)(B)(iii) (II)(aa).

In passing the PSLRA in December 1995, Congress was reacting to significant evidence of abusive practices and manipulation by class action lawyers of their clients in private securities lawsuits. H.R. Conf. Rep. No. 104-369, 104th Cong., 1st Sess. at 31 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730 at 731 ("Conf.Report") (Ex. A to # 38). One response by Congress was the requirement that the Court appoint as "lead plaintiff" in each securities class action the shareholder, preferably an institutional investor, [FN5] with the largest financial interest in the litigation in order to encourage institutional investors to come forward to manage and supervise the class lawyers. 15 U.S.C. § 78u-4(a)(3)(B); Conf. Report No. 104-369 at 733-34. The Conference Report at 34 explained, "Throughout the process, it is clear that the plaintiff class has difficulty exercising any meaningful direction over the case brought on its behalf.... Because class counsels' fees and expenses sometimes amount to one-third or more of the recovery, class counsel frequently has a significantly greater interest in the litigation than any individual member of the class."

> FN5. Conference Report No. 104-67 at 34-35; Sen. Rep. No. 104-98 at 10-11, *reprinted in* 1995 U.S.C.A.A.N. 679, 689-90. *Sakhrani v. Brightpoint,* 78 F.Supp.2d 845, 850 (S.D.Ind.1999); *Gluck v. CellStar Corp.,* 976 F.Supp. 542, 548 (N.D.Tex.1997); *In re Baan Co. Securities Litig.,* 186 F.R.D. 214, 218 (D.D.C.1999) (appendix).

Courts have diverged in deciding whether the losses of individual plaintiffs may be aggregated into a group loss to create a lead plaintiff group with the "greatest financial interest" in the outcome of the litigation. *Aronson v. McKesson HBOC, Inc.,* 79 F.Supp. 1146, 1152-53 (N.D. Cal 1999) (and cases cited therein). Some courts have read literally the statute dealing with determining who is the most adequate plaintiff, which employs the phrase, "the person or group of persons" that meet the designated criteria. 15 U .S.C. § 78u-4(a)(3)(B)(iii)(I). *Id.* at 1153 & n. 8, *citing* as published opinions of courts allowing aggregation of unrelated plaintiffs into a Lead Plaintiff Group, *In re Olsten Corp.,* 3 F.Supp.2d 286 (E.D.N.Y.1998); *Switzenbaum v. Orbital,* 187 F.R.D. 246 (E.D.Va.1999); *(n re Milestone Scientific,* 193 F.R.D. 404 (D.N.J.1998); *In re Cedant,* 182 F.R.D. 144 (D.N.J.1998); *In re Oxford,* 182 F.R.D. 43; *Chill v. Green Tree Financial,* 181 F .R.D. 398 (D.Minn.1998); *Gluck,* 976 F.Supp. 542; *In re Donnkenny, Inc. Securities Litig.,* 171 F.R.D. 156 (S.D.N.Y.1997); *Greebel,* 939 F.Supp. 57. *See also Yousefi v. Lockheed Martin Corp.,* 70 F.Supp.2d 1061, 1067-68 (C.D.Cal.1999) (recognizing tension between PSLRA' language permitting aggregation of claims and its emphatic purpose of placing control of securities class actions in hands of a small and finite number of plaintiffs, but finding that it contemplates the aggregation of unrelated plaintiffs as a permissible, if suboptimal, result).

**\*4** Other judges have allowed aggregation where necessary to represent varying class periods or to guarantee effective control and supervision of the lawyers. *Aronson,* 79 F.Supp. at 1153, *citing Wenderhold v. Cylink Corp.,* 188 F.R.D. 577, 585-86 (N .D. Cal.1999). *See also In re Baan Co. Sec. Litig.,* 186 F.R.D. 214, 224 (D.D.C.1999) ("a court generally should only approve a group that is small enough to be capable of effectively managing the litigation and the lawyers").

Some courts have rejected aggregation of "unrelated" Plaintiffs and permit a group Lead Plaintiff only where it involves "a small number of members that share such an identity of characteristics, distinct from those of almost all other class members, that they can almost be seen as being the same person." *Aronson,* 79 F.Supp. at 1153-54, *citing In re Telxon Corp. Securities Litig.,* 67 F.Supp.2d 803, 809-13 (N.D.Ohio 1999) (contrasting a "group" with a "melange of unrelated persons"). *Aronson* characterizes this approach as defining a "group" under the PSLRA as having "a meaningful relationship preceding the litigation, and ... united by more than the mere happenstance of having bought some securities. The classic example of such a restrictive group would be a partnership, which has no separate legal identity, but shares in both assets and liabilities. Other such groups might be the various subsidiaries of a corporation or members of a family." *Id.* at 1153-54. The *Aronson* court, faced with groups of plaintiffs as large as 4,000 competing for lead plaintiff, adopted this strict approach. *Id.* at 1154. *Aronson* emphasizes that such a narrow view accords with several dictionary definitions and is consistent with the legislative intent to increase investors'/clients' control over appointed counsel, since any ambiguity in the statute should be resolved by a determination of the drafters' intent. *See also In re Network Associates,* 76 F.Supp.2d at 1026) (a group of plaintiffs should be appointed as lead plaintiff only where they can effectively control the litigation; aggregations of unaffiliated persons or entities whose only connection is the litigation do not satisfy this requirement); *In re Donkenny Securities Litigation,* 171 F.R.D. 156, 157-58 (S.D.N.Y.1997) (denied plaintiff's motion to appoint two institutional investors and four individuals as lead plaintiff group because "[t]o allow an aggregation of unrelated plaintiffs to serve as lead plaintiffs defeats the purpose of choosing a lead plaintiff.... To allow lawyers to designate unrelated plaintiffs as a 'group' and aggregate their financial stakes would allow and encourage lawyers to direct the litigation."); *Sakhrani,* 78 F.Supp.2d at 853 (the PSLRA gives court discretion to appoint a single plaintiff or a small group with effective oversight of class counsel and with a greater connection than their common losing investment as lead counsel, based on facts of particular case).

**\*5** It appears to this Court that too loose a definition of "group" would result in the manipulation and manufacturing of enormous groups of unrelated investors by attorneys in order to obtain appointment of lead plaintiff and lead counsel, a lucrative role. *Sakhrani,* 78 F.Supp.2d at 851-52 (and cases cited therein); *In re Network Associates,* 76 F.Supp. at 1022. In the instant case part of the original dispute about Weiss & Yourman's notice to potential class members and about the initially large number of proposed lead plaintiffs suggests attempted recruitment of numerous, widespread, disparate investors who would have little cohesiveness, less incentive to monitor, and unwieldy administration of and minimal control over the lawyers and the litigation. After a careful review of the case law, this Court finds that the strictest approach, requiring at maximum a small group with the largest financial interest in the outcome of the litigation and a pre-litigation relationship based on more than their losing investment, satisfies the terms of the PSLRA and serves the purpose behind its enactment.

Plaintiffs urge that five proposed Lead Plaintiffs, drawn from both or the original Landry and Durnin Plaintiffs' groups, are necessary because of the nature of their allegations under two, quite different statutes, the 1933 Securities Act and the 1934 Exchange Act, for misrepresentations made between December 19, 1997 and June 32, 1998 as opposed to others made in connection with Landry's March 13, 1998 Secondary Offering Registration Statement and Prospectus. These statutes, urge Plaintiffs, have different burdens of pleading and of proof and different standing requirements . [FN6] They insist that proposed Lead Plaintiffs Karen Hartzheim and Vincent and Rosemary Pino purchased securities pursuant to the Offering, while Douglas M. Kauffman and Herbert S. Stone did not. They further claim that the five proposed Lead Plaintiffs have worked with counsel to put together a group that best reflects the issue in this action.

> FN6. Specifically Plaintiffs assert that to prevail under the 1933 Act, a class member must have purchased shares pursuant to, or reasonably traceable to, an offering of securities, such as the Offering in this action. The 1934 Act does not require an offering. Moreover while the 1933 Act imposes "a stringent standard of liability on defendants, under the
>
> 1934 Act plaintiffs must show that the defendants acted with scienter. The 1933 Act does not require the plaintiffs to show reliance, but only that they purchased pursuant to or traceable to the offering, but under the 1934 the plaintiffs have a presumption of reliance.

While the proposed Lead Plaintiff Group has been restricted to five, the Court needs more specific information about their interrelationship, the comparative extent of financial interest of each in this litigation, and, on a preliminary basis, the ability of each to satisfy Rule 23's requirements of typicality and adequacy. The Court also wishes to be informed whether there is any institutional investor that would qualify as a Lead Plaintiff because it has the largest financial interest in the outcome of the litigation. Without benefit of additional and more specific information, it appears that two of the previously stipulated individuals could serve Plaintiffs' class as Lead Plaintiff.
Provided that some or all of proposed Lead Plaintiffs Group can make an adequate showing of their qualifications and that an ultimately approved Lead Plaintiff selects each of the two proposed lead counsel, the Court finds no reason not to appoint the two law firms as Co-Lead Counsel. Both clearly have broad experience in prosecuting such actions. The Court will place as a condition on that appointment that they insure that there is no duplication of services or unnecessary increase in fees. _In re Oxford,_ 182 F.R.D. at 50; _Donnkenny,_ 171 F.R.D. at 158. The Court believes that the two firms can more efficiently pursue the case together, as well as share the substantial risk of such putative class actions. _Sakhrani,_ 78 F.Supp.2d at 854.
**\*6** Accordingly, for reasons indicated above, the Court
ORDERS that Defendants' motion to reconsider is DENIED because they lack standing to challenge Plaintiffs' choice of lead counsel. Nevertheless, _sua sponte,_ the Court
ORDERS that Plaintiffs shall submit within twenty days an amended motion for appointment of Lead Plaintiff(s) and of Lead Counsel, supported by additional information about those matters identified by the Court.
S.D.Tex.,2000.
In re Landry's Seafood Restaurant, Inc.
2000 WL 33999467 (S.D.Tex.)
END OF DOCUMENT

(C) 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

6

Service: **Get by LEXSEE®**
Citation: **2001 U.S. Dist. LEXIS 3437**

*2001 U.S. Dist. LEXIS 3437, \*; Fed. Sec. L. Rep. (CCH) P91,364*

ROBERT WINN, JAMES WINN and MARVIN GILL on behalf of themselves and all other similarly situated, Plaintiffs, vs. SYMONS INTERNATIONAL GROUP, INC., GORAN CAPITAL INC., G. GORDON SYMONS, ALAN G. SYMONS, DOUGLAS H. SYMONS, PRICEWATERHOUSECOOPERS, LLP and SCHWARTZ LEVITSKY FELDMAN, LLP, Defendants.

IP 00-0310-C-B/S

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF INDIANA, INDIANAPOLIS DIVISION

2001 U.S. Dist. LEXIS 3437; Fed. Sec. L. Rep. (CCH) P91,364

March 21, 2001, Decided

**DISPOSITION: [\*1]** Plaintiffs' Motion for Appointment of Lead Plaintiffs and Lead Counsel GRANTED. Plaintiff's Motion for Class Certification DENIED and Defendant's Motion to Defer Plaintiff's Motion for Class Certification DENIED as moot. Plaintiffs leave to reassert their Motion for Class Certification within fourteen (14) days of the Court's ruling on Defendants' motions to dismiss GRANTED.

## CASE SUMMARY

**PROCEDURAL POSTURE:** Plaintiffs moved to be appointed lead plaintiff and moved for appointment of lead counsel, as well as for class certification.

**OVERVIEW:** Plaintiffs filed suit against defendants, various individuals and corporations, alleging violations of §§ 10(b) and 20(a) of the Securities Exchange Act of 1934, and of various other Securities and Exchange Commission regulations. Plaintiffs moved for appointment of lead plaintiff and lead counsel, and for class certification. Defendants had moved to dismiss. The court granted plaintiff's motion to appoint lead plaintiff and counsel, but denied class certification, pursuant to the provision of the Private Securities Litigation Reform Act which stayed such proceedings during the pendency of any motion to dismiss. Plaintiffs were appointed lead counsel, where (1) they filed the complaint, (2) they had a significant financial interest in the litigation, (3) they met the requirements of Fed. R. Civ. P. 23, and (4) the presumption that they would be the best lead plaintiffs was not rebutted. Their selection of counsel was made into lead counsel, upon the court's noting of counsel's capable representation.

**OUTCOME:** Plaintiffs were appointed lead plaintiffs, and their selection of counsel was appointed lead counsel. Motion for class certification was denied because of the pendency of defendants' motion to dismiss.

**CORE TERMS:** class certification, lead counsel, motions to dismiss, appoint, purported, appointed, appointment, financial interest, largest, class action, adequately protect, notice, stock, reassert, moot, rebuttable presumption, following resolution, false and misleading, motion to dismiss, securities fraud, noted earlier, nunc pro tunc, time period, set forth, pre-existing, adversarial, appointing, typicality, aggregate, fulfilled

## LexisNexis(R) Headnotes ✦ Hide Headnotes

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN1* ⬇ The Private Securities Litigation Reform Act instructs courts to appoint a lead
plaintiff no later than 90 days after proposed lead plaintiff gives publication notice
advising potential class members of the purported plaintiff class. 15 U.S.C.S. §
78u-4(a)(3)(B)(i). Courts are directed to adopt a presumption that the most
suitable lead plaintiff is a person or group of persons who fulfilled various filing
requirements, has the largest financial interest in the relief sought by the class, and
otherwise satisfies the requirements of Fed. R. Civ. P. 23. 15 U.S.C.S. § 78u-4(a)
(3)(B)(iii)(I). Because courts must appoint the lead plaintiff in a relatively short
period of time, courts generally regard the appointment of lead plaintiff as a
threshold determination. More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN2* ⬇ 15 U.S.C.S. § 78u-4(b)(3)(B) stays all discovery and other proceedings during the
pendency of any motions to dismiss, subject to some exceptions. Courts generally
do not regard class certification proceedings as one of the
exceptions. More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN3* ⬇ The Private Securities Litigation Reform Act envisions a mixed
inquisitorial/adversarial model for developing a record to make the lead plaintiff
decision and that when defendants and competing plaintiffs are unavailable to fulfill
their adversarial roles, courts must step into a gatekeeping
role. More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN4* ⬇ The Private Securities Litigation Reform Act states that courts are directed to
appoint as lead plaintiff the member or members of the purported plaintiff class
that the court determines to be most capable of adequately representing the
interests of the class members. 15 U.S.C.S. § 78u-4(a)(3)(B)
(i). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN5* ⬇ The Private Securities Litigation Reform Act requires the plaintiffs who file a
complaint to publish, in a widely circulated national business-oriented publication or
wire service, a notice advising members of the purported class that a claim has
been filed covering those who invested during a certain time period and that any
member of the purported class may move to serve as lead plaintiff as long as they
do so within sixty days of the publication of the notice. 15 U.S.C.S. § 78u-4(a)(3)
(A)(i). More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN6* ⬇ Since the reform of procedures for securities class action litigation, courts have
struggled with the question of how many persons is too many persons in the
"group of persons" that the language of 15 U.S.C.S. § 78u-4(a)(3)(B)(iii)(I)
permits to be selected as lead plaintiff. More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⬅ALL

*HN7* ⬇ Most courts are comfortable with permitting a group of persons to serve as lead
plaintiff as long as the individuals in the group have some relationship pre-existing
the litigation other than simply having purchased stocks that lost
value. More Like This Headnote

Civil Procedure > Class Actions > Prerequisites ⬅ALL

*HN8* ± Under Fed. R. Civ. P. 23(a), a party may sue on behalf of all others only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⟵ₐₗₗ
*HN9* ± To appoint lead plaintiffs in a Private Securities Litigation Reform Act case, courts examine only typicality and adequacy from the list of prerequisites to a class action set forth in Fed. R. Civ. P. 23(a).  More Like This Headnote

Civil Procedure > Class Actions > Prerequisites ⟵ₐₗₗ
*HN10* ± For purposes of class action litigation, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.  More Like This Headnote

Civil Procedure > Class Actions > Prerequisites ⟵ₐₗₗ
*HN11* ± Adequacy of representation in the class action litigation context is shown where (1) the class has sufficient interest in the outcome of the case, (2) the class members do not have interests that are antagonistic to others, and (3) class counsel is qualified, experienced, and able to conduct the litigation.  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⟵ₐₗₗ
Civil Procedure > Class Actions > Prerequisites ⟵ₐₗₗ
*HN12* ± The presumption, once established, that a particular plaintiff should be appointed lead counsel in the private securities class action litigation context can be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--will not fairly and adequately protect the interests of the class; or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. 15 U.S.C.S. § 78u-4 (a)(3)(B)(iii) (II).  More Like This Headnote

Securities Law > Bases for Liability > Private Securities Litigation ⟵ₐₗₗ
*HN13* ± The Private Securities Litigation Reform Act provides for selection of lead counsel along with appointment of lead plaintiff. Specifically, the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C.S. § 78u-4(a)(3)(B)(v).  More Like This Headnote

**COUNSEL:** For WINN, ROBERT, WINN, JAMES, GILL, MARVIN, plaintiffs: LANCE W WONDERLIN, ATTORNEY AT LAW, INDIANAPOLIS, IN.

For WINN, ROBERT, WINN, JAMES, GILL, MARVIN, plaintiffs: WILLIAM R WEINSTEIN, LOWEY DANNENBURG BEMPORAD & SELINGER, WHITE PLAINS, NY.

For SYMONS INTERNATIONAL GROUP INC, GORAN CAPITAL INC, SYMONS, G GORDON, SYMONS, ALAN G, SYMONS, DOUGLAS H, defendants: JAMES H HAM III, BAKER & DANIELS, INDIANAPOLIS, IN.

For SYMONS INTERNATIONAL GROUP INC, SYMONS, G GORDON, SYMONS, ALAN G, SYMONS, DOUGLAS H, defendants: CHRISTOPHER H MCGRATH, BROBECK PHELGER &

HARRISON, SAN DIEGO, CA.

For PRICEWATERHOUSECOOPERS LLP, defendant: LEE B MCTURNAN, MCTURNAN & TURNER, INDIANAPOLIS, IN.

For PRICEWATERHOUSECOOPERS LLP, defendant: EMILY NICKLIN, KIRKLAND & ELLIS, CHICAGO, IL.

For SCHWARTZ LEVITSKY **[*2]** FELDMAN LLP, defendant: TODD J KAISER, OGLETREE DEAKINS NASH SMOAK & STEWART P C, INDIANAPOLIS, IN.

**JUDGES:** SARAH EVANS BARKER, JUDGE, United States District Court, Southern District of Indiana.

**OPINIONBY:** SARAH EVANS BARKER

### OPINION: ORDER GRANTING PLAINTIFFS' MOTION TO APPOINT LEAD PLAINTIFF AND LEAD COUNSEL AND DEFERRING DECISION ON CLASS CERTIFICATION

On February 23, 2000, Plaintiffs Robert Winn, James Winn and Marvin Gill (collectively "Plaintiffs") filed this case against various corporations and individuals alleging violations of Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and of various other statutes and regulations promulgated by the Securities and Exchange Commission ("SEC"). Defendants include two related corporations, Symons International Group, Inc. ("Symons") and Goran Capital, Inc. ("Goran"), involved in the business of providing nonstandard passenger automobile insurance and agricultural crop insurance. Plaintiffs also sued G. Gordon Symons, Alan G. Symons, and Douglas H. Symons, officers and board members of Symons and/or Goran. PriceWaterhouseCoopers LLP and Schwartz Levitsky Feldman, LLP, accounting firms that provided various **[*3]** services to Symons and/or Goran, are the remaining defendants. The Court GRANTS Plaintiffs' Motion for Appointment of Lead Plaintiffs and Lead Counsel. In addition, we DENY Plaintiff's Motion for Class Certification and DENY, as moot, Defendants' Motion to Defer Plaintiff's Motion for Class Certification. The Court also GRANTS Plaintiffs leave to reassert their Motion for Class Certification within fourteen (14) days of the Court's ruling on Defendants' motions to dismiss. n1

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -


n1 The various motions to dismiss filed in this case are under consideration by the Court and will be ruled upon at a later date.


- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Procedural Background

This case has a complicated procedural history. We accept our own responsibility for inadvertently derailing the progress of this litigation and move now to set the case back on the right track. On April 20, 2000, Plaintiffs filed a motion asking the Court to appoint lead plaintiff and lead counsel. In June, the Court issued an order requiring Plaintiffs to file a motion **[*4]** for class certification and to show cause why their motion for appointment of lead plaintiff and lead counsel should not be taken under advisement, pending a decision of the issue of class certification. Court Order of June 15, 2000 ("6/15/00 Court Order") at 1-2. The 6/15/00 Court Order is entirely consistent with Local Rule 23.1(b), which requires plaintiffs who filed a class action complaint to move for class certification within ninety (90)

days from the filing of their complaint. This rule facilitates efficient adjudication of the typical class action case.

However, the case before the Court is not entirely typical. As noted earlier, the Winns and Mr. Gill are suing for relief for their losses and those of a purported class of plaintiffs arising out of alleged securities fraud. Special procedures governing such a suit are set forth in the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4. *HN1* This statute instructs courts to appoint a lead plaintiff no later than ninety (90) days after proposed lead plaintiff gives publication notice advising potential class members of the purported plaintiff class, as Plaintiffs here did on February 23, 2000. **[*5]** 15 U.S.C. § 78u-4(a)(3)(B)(i). Courts are directed to adopt a presumption that the most suitable lead plaintiff is a person or group of persons who fulfilled various filing requirements, has the largest financial interest in the relief sought by the class, and "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Because courts must appoint the lead plaintiff in a relatively short period of time, courts generally regard the appointment of lead plaintiff as a threshold determination. See, e.g., Gluck v. CellStar Corp., 976 F. Supp. 542, 546 (N.D. Tex. 1997) (finding that proposed lead plaintiff need only make a "preliminary showing" that it satisfies Rule 23 requirements for class certification); Sakhrani v. Brightpoint, Inc., 78 F. Supp. 2d 845, 847 (S.D. Ind. 1999) (finding that "pursuant to the PSLRA, the next phase of the case is selection of a lead plaintiff" without addressing class certification). Hence, in May 2000, the Court should have appointed lead plaintiff and lead counsel, rather than order Plaintiffs to file a motion **[*6]** for class certification.

While the *nunc pro tunc* appointment of Plaintiffs as lead plaintiff (as addressed below) will partially correct our earlier error, the filing of motions to dismiss by Defendants makes a ruling on class certification inappropriate at this time under the PSLRA. This statute is a response to concerns in Congress that corporations were being held hostage to abusive and frivolous shareholder suits and that the procedures governing securities class litigation contributed significantly to the problem. See, e.g., Gluck, 976 F. Supp. at 544 (citing Conference Report on Securities Litigation Reform, H.R.Rep. No. 369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 730). One measure introduced to ameliorate these concerns is 15 U.S.C. § 78u-4(b)(3)(B). *HN2* This provision stays "all discovery and other proceedings . . . during the pendency of any motions to dismiss," subject to some exceptions. 15 U.S.C. § 78u-4(b)(3)(B). Courts generally do not regard class certification proceedings as one of the exceptions. See, e.g., Schlagel v. Learning Tree Int'l, 1999 WL 672306, at *2 (C.D. Cal. Feb. 23, 1999) **[*7]** (in recounting of case's procedural history, noting decision to delay ruling on motion for class certification until after ruling on motion to dismiss); In re Valujet, Inc., Sec. Litig., 984 F. Supp. 1472, 1481-82 (N.D. Ga. 1997) (lifting stay on class certification proceedings following resolution of motion to dismiss). For this reason, the Court DENIES, with leave to reassert following resolution of the motions to dismiss, Plaintiffs' Motion for Class Certification. n2 Therefore, we also DENY, as moot, Defendants' Motion to Defer Plaintiffs' Motion for Class Certification.

- - - - - - - - - - - - - - Footnotes - - - - - - - - - - - - - - - -

N2 The ruling here is consistent with a scheduling order issued on July 27, 2000, in which the Court granted Defendants' request to schedule briefing on class certification and other case management issues after decision on the motions to dismiss.

- - - - - - - - - - - - End Footnotes- - - - - - - - - - - - - -

Appointment of Lead Plaintiff

The above resolution of the procedural issue returns our attention to the substantive matters raised by Plaintiffs' motion to appoint **[*8]** lead plaintiff and lead counsel. Plaintiffs ask that Robert Winn and James Winn, who are brothers, be appointed lead plaintiff along with Marvin Gill, a long-time friend of the Winns. Defendants do not oppose Plaintiffs' Motion and, unlike many securities fraud cases, no other group of plaintiffs has come forward seeking appointment. See, e.g., Gluck, 976 F. Supp. at 545 (describing the process through which competing plaintiffs groups sought to be appointed lead plaintiff or co-lead plaintiff); Sakhrani, 78 F. Supp. 2d at 847-49 (describing competing groups of plaintiffs). Nonetheless, the Court must determine whether the Winns and Mr. Gill are suitable for the job of serving as lead plaintiff. In In re Baan Co. Sec. Litig., 186 F.R.D. 214, 215 (D.D.C. 1999), the D.C. District Court stated that [HN3]"the PSLRA envisions a mixed inquisitorial/adversarial model for developing a record to make the Lead Plaintiff decision" and that when defendants and competing plaintiffs are unavailable to fulfill their adversarial roles, courts must step into a "gatekeeping" role.

[HN4]Courts are directed to appoint as lead plaintiff "the member or members of **[*9]** the purported plaintiff class that the court determines to be most capable of adequately representing the interests of the class members." 15 U.S.C. § 78u-4(a)(3)(B)(i). As introduced above, the lead plaintiff must satisfy three broad requirements:

> the most adequate plaintiff [to serve as lead plaintiff] . . . is the person or group of persons that:

>> (aa) has . . . filed the complaint . . . ;
>> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). If Plaintiffs satisfy these requirements, the Winns and Mr. Gill will have created a rebuttable presumption that they should be appointed lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)-(II).

Filing the Complaint

The Winns and Mr. Gill easily satisfy the first requirement. They filed the complaint in this case on February 23, 2000. They also fulfilled the duties that go along with initiating the lawsuit under the PSLRA. [HN5]The statute requires the **[*10]** plaintiffs who file the complaint to publish, "in a widely circulated national business-oriented publication or wire service, a notice advising members of the purported class" that a claim has been filed covering those who invested during a certain time period and that any member of the purported class may move to serve as lead plaintiff as long as they do so within sixty days of the publication of the notice. 15 U.S.C. § 78u-4(a)(3)(A)(i). The Winns and Mr. Gill satisfied this requirement on the day they filed the complaint, through publication of the above information over the Business Wire.

Financial Interest

The Winns and Mr. Gill also meet the second criterion, although this factor is relatively easy to satisfy when no other group of persons has moved to be named lead plaintiff. The Winns and Mr. Gill are the only group of persons to have submitted their applications, so to speak, for this position. Therefore, they have the "largest" financial interests in the relief sought by the class. However, the Court must make some inquiries under this prong. Namely, the Court

needs to ensure that plaintiffs have an incentive to take an active role in the **[\*11]** case, as seems to be the purpose behind the second requirement. See Sakhrani, 78 F. Supp. 2d at 850 ("These provisions of the PSLRA were designed to avoid situations in which a named class representative has a minimal financial stake in the case and acts primarily as a tool of the lawyers who may well have recruited him."). We know that through their acquisitions of Symons and Goran stock during the relevant time period, the Winns and Mr. Gill lost more than $ 1.5 million, an amount that the Court assumes, in the absence of argument to the contrary, is sufficient to motivate prosecution of the case. Weinstein Aff., Ex. 7.

In addition, the information available to the Court is sufficient to allay concerns about a problem that often arises in like cases. *HN6*⚡Since the reform of procedures for securities class action litigation, courts have struggled with the question of how many persons is too many persons in the "group of persons" that the language of 15 U.S.C. § 78u-4(a)(3)(B)(iii) (I) permits to be selected as lead plaintiff. In In re Baan, 186 F.R.D. at 217, the court ruled that a class of over 400 unrelated individuals and institutions **[\*12]** could not aggregate their losses so as to be the "group of persons" with "the largest financial interest in the relief sought by the class," as the statute sets forth. The Sakhrani court similarly chose one individual as lead plaintiff over a group of plaintiffs who suffered larger aggregate losses on the grounds that the statute should not be read to permit a "group" of over 100 plaintiffs to serve as lead plaintiff. Sakhrani, 78 F. Supp. 2d at 853-54. Here we have a group of only three plaintiffs. This relatively small number clearly limits the inefficiencies that arise with a large, unwieldy leadership group. See In re Baan, 186 F.R.D. at 216-17 (discussing potential that "multiple lead plaintiffs will be unable to control the litigation, effectively negotiate retention agreements, and supervise the conduct of counsel" as the PSLRA intended).

The relationship between the Winns and Mr. Gill also alleviates the other significant concern that arises when courts consider motions to appoint lead plaintiff in PSLRA cases. Uncertainty exists as to the qualitative meaning of the word "group" in the statutory language. It is clear that Congress wanted **[\*13]** to eliminate the aggregation of unrelated plaintiffs when it passed the PSLRA. See In re Baan, 186 F.R.D. at 222-23 (discussing relationship between limiting number of lead plaintiffs and Congress's intent to make securities litigation less "lawyer-driven"). However, there are a number of interpretations of what "group" means. See Aronson v. McKesson HBOC, Inc., 79 F. Supp. 2d 1146, 1152-53 (N.D. Cal. 1999) (discussing three interpretations of "group" adopted by various courts). Fortunately, the exact meaning of this term need not be decided here. *HN7*⚡Most courts, including this one, are comfortable with permitting a group of persons to serve as lead plaintiff as long as the individuals in the group have some relationship pre-existing the litigation other than simply having purchased stocks that lost value. See, e.g., In re Conseco, Inc. Sec. Litig., 120 F. Supp. 2d 729, 733 (S.D. Ind. 2000) ("While a lead plaintiff 'group' may be permissible, this District Court has stressed that aggregating parties 'that have nothing in common beyond their investment is not an appropriate interpretation of the term 'group' in the PSLRA.") (quoting Sakhrani, 78 F. Supp. 2d at 853); **[\*14]** In re Milestone Scientific Sec. Litig., 183 F.R.D. 404, 418 (D.N.J. 1998) (appointing as lead plaintiff group consisting of three family members and their associated investment groups). As noted earlier, the Winns are brothers, which fits even the literal meaning of pre-existing "relationship." Furthermore, Mr. Gill has had a personal and professional relationship with the Winn brothers for 20 years or more. Complaint, P6. Such relationships between these Plaintiffs suggest that these Plaintiffs could "function as a unified whole . . . speaking with a collective voice" as some courts have interpreted the PSLRA to require. In re Telxon Corp. Sec. Litig., 67 F. Supp. 2d 803, 813 (N.D. Ohio 1999) (appointing two brothers to serve as lead plaintiffs). For these reasons, we find that the Winns and Mr. Gill satisfy the second requirement for being lead plaintiff.

Rule 23 Requirements

The final issue concerns whether they "otherwise satisfy the requirements of Rule 23 of the

Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). *HN8*⇗Under Rule 23 (a), a party may sue on behalf of all others only if:  **[*15]**

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). Rule 23(b) includes further requirements. However, as explained earlier, at this stage of the litigation, the inquiry into whether Plaintiffs meet Rule 23 requirements is only preliminary. Gluck, 976 F. Supp. at 546. *HN9*⇗To appoint lead plaintiffs, courts examine only typicality and adequacy from the list of "prerequisites to a class action" set forth in Rule 23(a). Aronson, 79 F. Supp. 2d at 1158; Gluck, 976 F. Supp. at 546; Charles Dechter Family Trust v. Anicom, Inc., 2000 U.S. Dist. LEXIS 14949, 2000 WL 1499279, at *1 (N.D. Ill. Oct. 3, 2000).

Plaintiffs claims satisfy the typicality requirement. *HN10*⇗A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based **[*16]** on the same legal theory." Keele v. Wexler, 149 F.3d 589, 595 (7th Cir. 1998) (quoting De La Fuente v. Stokely-Van Camp, Inc., 713 F.2d 225, 232 (7th Cir. 1983). Here, all plaintiffs, purchased Symons and/or Goran common stock during the class period at prices they allege were artificially inflated by false and misleading statements. See In re Nanophase Technologies Corp. Litig., 1999 U.S. Dist. LEXIS 16171, 1999 WL 965468, at *3 (N.D. Ill. Sept. 30, 1999) (claims typical when all proposed class members owned or acquired certain types of stock during time period in which defendants allegedly made false and misleading statements); In re Telxon Corp., 67 F. Supp. 2d at 824 (same).

*HN11*⇗Adequacy is shown where "(1) the class has sufficient interest in the outcome of the case, (2) the class members do not have interests that are antagonistic to others, and (3) class counsel is qualified, experienced, and able to conduct the litigation." Charles Dechter Family Trust, 2000 U.S. Dist. LEXIS 14949, 2000 WL 1499279, at *2. Thus far, Plaintiffs have vigorously pursued their case, filing timely motions and briefs. Their prior performance and their economic losses permit **[*17]** the conclusion that they are very interested in the outcome of the case. No argument has been made that the interests of Plaintiffs are not in line with the other putative class members. As discussed below, their choice of counsel exhibits solid qualifications. We find that Plaintiffs have demonstrated that they will fairly and adequately protect the interests of the class. We also find that Plaintiffs have satisfied the preliminary showing that they "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc).

Presumption Not Rebutted

Under 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Plaintiffs have created a rebuttable presumption that they should be appointed lead plaintiff. *HN12*⇗This presumption can be rebutted:

> only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--
>
> > (aa) will not fairly and adequately protect the interests of the class; or
> > (bb) is subject to unique defenses that render such plaintiff incapable

of adequately representing the class.


15 U.S.C. § 78u-4 **[*18]** (a)(3)(B)(iii)(II). No other putative class member has offered any evidence on these points. The Winns and Mr. Gill have successfully completed the last of the intricate steps necessary to be appointed lead plaintiff.

## Appointment of Lead Counsel

*HN13* The PSLRA provides for selection of lead counsel along with appointment of lead plaintiff. Specifically, "the most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). Plaintiffs ask the Court to approve Lowey Dannenberg Bemporad & Selinger, P.C. ("Lowey Dannenberg") as lead counsel. Plaintiffs also wish to have Backer & Backer ("Backer") and Lance W. Wonderlin, Attorney, P.C. ("Wonderlin") serve as liaison counsel. Lowey Dannenberg, Backer and Wonderlin have proved themselves adequate to the task of conducting the litigation thus far, and the Court sees no reason to expect a significant decline in their performance.

## Conclusion

For the reasons stated above, Plaintiffs' Motion to Appoint Lead Plaintiffs and Lead Counsel is GRANTED *nunc pro tunc* to May 23, 2000. In addition, the Court DENIES Plaintiffs' **[*19]** Motion for Class Certification with leave for Plaintiffs to reassert the motion within fourteen (14) days of the Court's ruling on Defendants' motions to dismiss. Defendants' Motion to Defer Plaintiffs' Motion for Class Certification is DENIED, as moot.

It is so ORDERED this 21st day of March 2001.

SARAH EVANS BARKER, JUDGE

United States District Court

Southern District of Indiana

Service: **Get by LEXSEE®**
Citation: **2001 U.S. Dist. LEXIS 3437**
View: Full
Date/Time: Thursday, June 23, 2005 - 4:55 PM EDT

\* Signal Legend:
- Warning: Negative treatment is indicated
Q - Questioned: Validity questioned by citing refs
- Caution: Possible negative treatment
- Positive treatment is indicated
A - Citing Refs. With Analysis Available
- Citation information available
\* Click on any *Shepard's* signal to *Shepardize®* that case.

Copyright © 2005 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.